# EXHIBIT 1

# Personal messages Alex D'Amico and Teddy Norman III - 2020-10-06 (UTC)

Private 10/6/2020, 1:59 PM
Alex D'Amico and Teddy Norman III

- Teddy Norman III (WTP0V45QS)TN

  Morning - Arthur added you to an important mtg w/ legal at 1:30pm today re: FLSA Arbitration/ Settlement Strategy
  10/6/2020, 1:59 PM
- Alex D'Amico (W014R4R4CGZ)AD

  yup
  10/6/2020, 1:59 PM
  super annoyed about that
  10/6/2020, 1:59 PM
  but i need the debrief to be moved
  10/6/2020, 2:00 PM
- Teddy Norman III (WTP0V45QS)TN

  The time overlaps w/ the Candidate Debrief forAlexandra Ernst and Brooks shared you can just provide feedback directly to Bari and okay for you to miss
  10/6/2020, 2:00 PM
- Alex D'Amico (W014R4R4CGZ)AD

  if i have the time i will
  10/6/2020, 2:00 PM
  i can i have a gap to eat and will give Bari feedback then
  10/6/2020, 2:01 PM
- Teddy Norman III (WTP0V45QS)TN

  you also have a 30min gap from 11:30am - 12 Noon before your 12:30-1pm lunch break too
  10/6/2020, 2:02 PM
- Alex D'Amico (W014R4R4CGZ)AD

  yup
  10/6/2020, 2:05 PM
- Teddy Norman III (WTP0V45QS)TN

  Taylor Shaw is asking for a Friday 1x1
  10/6/2020, 4:47 PM
  do you want to do Mon- Thursday and should she begin a recurring 1x1 on a weekly or bi weekly basis?
  10/6/2020, 4:47 PM
- Alex D'Amico (W014R4R4CGZ)AD

  Recurring for now is fine
  10/6/2020, 5:06 PM

BMC0031228

# EXHIBIT 2

# Personal messages Alex D'Amico and Odette Lindheim - 2020-10-06 (UTC)

Private 10/6/2020, 2:40 PM
Alex D'Amico and Odette Lindheim

- **Alex D'Amico (W014R4R4CGZ)AD**

  was mel's promo not approved?
  10/6/2020, 2:40 PM
  i have to call you
  10/6/2020, 2:43 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

  no it was
  10/6/2020, 3:20 PM
  they all were
  10/6/2020, 3:20 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

  hi
  10/6/2020, 5:36 PM
  did you submit a request for the list of employees by state that they live?
  10/6/2020, 5:36 PM
  or live / work?
  10/6/2020, 5:36 PM
  i saw that you asked for that
  10/6/2020, 5:36 PM
  i may need that too
  10/6/2020, 5:37 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

  yes
  10/6/2020, 5:38 PM
  i can send to you
  10/6/2020, 5:38 PM
  wait but its just states
  10/6/2020, 5:38 PM
  its not who lives where
  10/6/2020, 5:38 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

  ok so not by job
  10/6/2020, 5:38 PM

  - **Odette Lindheim OL**

    nope but by entity
    10/6/2020, 5:39 PM

  - **Alex D'Amico AD**

BMC0031220

kk
10/6/2020, 5:44 PM

- Alex D'Amico (W014R4R4CGZ)AD

can you send me the google form ?
10/6/2020, 5:38 PM
i may have to reask
10/6/2020, 5:38 PM

- Odette Lindheim (W012QDQJQPQ)OL

<https://forms.monday.com/forms/2c33eea4f161f78a94429d3a608502b2>
10/6/2020, 5:39 PM

- Alex D'Amico (W014R4R4CGZ)AD

copy. thank you Odette
10/6/2020, 5:39 PM

- Odette Lindheim (W012QDQJQPQ)OL

np!
10/6/2020, 5:39 PM

- Alex D'Amico (W014R4R4CGZ)AD

we don't have ANY arbitration language to offers right?
10/6/2020, 5:42 PM

- Odette Lindheim (W012QDQJQPQ)OL

nope
10/6/2020, 5:45 PM

- Alex D'Amico (W014R4R4CGZ)AD

kk
10/6/2020, 5:47 PM
i am going to probably add to your scope some additional stuff.
10/6/2020, 5:48 PM
relating to offer / comp materials sign off
10/6/2020, 5:48 PM
basically - plan summary and T&C back on track!
10/6/2020, 5:50 PM
do u have time to chat at like 2:10?
10/6/2020, 5:54 PM

- Odette Lindheim (W012QDQJQPQ)OL

i have my mtng with paul at 2
10/6/2020, 5:54 PM

- Alex D'Amico (W014R4R4CGZ)AD

kk
10/6/2020, 5:54 PM

- Odette Lindheim (W012QDQJQPQ)OL

BMC0031221

but can call you after if it wraps early
10/6/2020, 5:54 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

ping me after.
10/6/2020, 5:54 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

i also have chay at 230 that i can repurpose
10/6/2020, 5:54 PM
ok
10/6/2020, 5:54 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

i havea 2:30
10/6/2020, 5:54 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

theresa scheduled partnerships comp mtng for thurs AM - do you want her to reschedule since I can't join that or leave as is
10/6/2020, 7:02 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

i already tols her to reschedule
10/6/2020, 7:02 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

ok cool
10/6/2020, 7:03 PM
monday ok?
10/6/2020, 7:03 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

Y
10/6/2020, 7:03 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

interview from 5-530 but then can connect on legal stuff if you need
10/6/2020, 8:59 PM
spoke briefly to chay
10/6/2020, 8:59 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

kk
10/6/2020, 9:08 PM
in meetings until i think 7
10/6/2020, 9:08 PM
just text me
10/6/2020, 9:08 PM
i want to chat w. you too so let's make it happen lol
10/6/2020, 9:51 PM

- Odette Lindheim (W012QDQJQPQ)OL

haha ok i texted ya! but keep me posted on when. mtngs are finally over
10/6/2020, 9:57 PM

BMC0031223

# EXHIBIT 3

# Direct message Chayanee Ubol, Odette Lindheim and Sabrina Loiacono - 2020-10-16 (UTC)

Private 10/16/2020, 3:03 PM
Chayanee Ubol, Odette Lindheim and Sabrina Loiacono

- **Sabrina Loiacono (WTRL35F8R)SL**

  hii
  10/16/2020, 3:03 PM
  Chay would you mind sending me an excel spreadsheet with the name and emails of all the people who need to get what in docusign
  10/16/2020, 3:03 PM
  & then whenever completed- plz send over the PDFs that need to be uploaded into docusign too
  10/16/2020, 3:04 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

  the PDFs are being worked on with a paralegal
  10/16/2020, 3:04 PM
  not ready yet unfortunately
  10/16/2020, 3:05 PM

- **Sabrina Loiacono (WTRL35F8R)SL**

  das okie 🙂
  10/16/2020, 3:05 PM

- **Chayanee Ubol (W015QKKBFFS)CU**

  hii
  10/16/2020, 6:17 PM
  the pdfs are ready
  10/16/2020, 6:17 PM
  can we send?
  10/16/2020, 6:17 PM
  they turned into word docs
  10/16/2020, 6:17 PM

- **Sabrina Loiacono (WTRL35F8R)SL**

  can you clairfy
  10/16/2020, 6:17 PM
  which pdfs
  10/16/2020, 6:17 PM
  i thought things were getting sent monday
  10/16/2020, 6:17 PM
  the comp ones i just made all into word docs
  10/16/2020, 6:18 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

  No
  10/16/2020, 6:18 PM
  The retention and release agreements that are not final yet
  10/16/2020, 6:18 PM
  And the SOM incentive terms and conditions
  10/16/2020, 6:18 PM

- **Sabrina Loiacono (WTRL35F8R)SL**

  ok what needs to be sent today and to who
  10/16/2020, 6:18 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

  I don't think anything today
  10/16/2020, 6:19 PM

- **Chayanee Ubol (W015QKKBFFS)CU**

  arent the SOM incentives final
  10/16/2020, 6:21 PM

                                                                      BMC0037956

i onyl need to get SOM out
10/16/2020, 6:21 PM

- Odette Lindheim (W012QDQJQPQ)OL

It is
10/16/2020, 6:31 PM
But don't you have to make 5 cuts
10/16/2020, 6:31 PM

- Sabrina Loiacono (WTRL35F8R)SL

@Chayanee Ubol what email would this be sending from?
10/16/2020, 6:37 PM

Confidential                                                                        BMC0037957

# EXHIBIT 4

PLACEHOLDER DOCUMENT – UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL

# Personal messages Odette Lindheim and Taylor Ednie - 2020-10-16 (UTC)

Private 10/16/2020, 1:39 AM
Odette Lindheim and Taylor Ednie

- Odette Lindheim (W012QDQJQPQ)OL

  anything i can help with?
  10/16/2020, 1:39 AM
- Taylor Ednie (W0154CXGGQ4)TE

  hi
  10/16/2020, 2:05 AM
  omg
  10/16/2020, 2:05 AM
  what a nightmare tonight was
  10/16/2020, 2:05 AM
- Odette Lindheim (W012QDQJQPQ)OL

  Omg what
  10/16/2020, 2:07 AM
  Why!
  10/16/2020, 2:07 AM
- Taylor Ednie (W0154CXGGQ4)TE

  Exec comp
  10/16/2020, 2:11 AM
  Explosion
  10/16/2020, 2:11 AM
  I have basically none of the employee model reconciled
  10/16/2020, 2:11 AM
- Odette Lindheim (W012QDQJQPQ)OL

  That's ok we'll get thru it together
  10/16/2020, 11:25 AM
  So annoyed at exec Comp why can't they wait until we're done?! Who decided to do at same Rome
  10/16/2020, 11:25 AM
  Time *
  10/16/2020, 11:25 AM
  omg
  10/16/2020, 2:53 PM
  legit just spent 2 hrs on with lawyers
  10/16/2020, 2:54 PM
  we scheduled 30
  10/16/2020, 2:54 PM
  i missed 3 mtngs lol
  10/16/2020, 2:54 PM
- Taylor Ednie (W0154CXGGQ4)TE

BMC0037938

that in the hell
10/16/2020, 2:54 PM
what happened
10/16/2020, 2:54 PM

- Odette Lindheim (W012QDQJQPQ)OL

we have to like go fwd with these retention and release agreements
10/16/2020, 2:56 PM
its wild
10/16/2020, 2:56 PM
but for comp - we are moving fwd as if nothing happened
10/16/2020, 2:56 PM
wit bonuses and raises
10/16/2020, 2:56 PM
for UW and IT
10/16/2020, 2:56 PM

- Taylor Ednie (W0154CXGGQ4)TE

ok thats a good resolution
10/16/2020, 2:57 PM

- Odette Lindheim (W012QDQJQPQ)OL

thank you for handling eng
10/16/2020, 3:13 PM

- Taylor Ednie (W0154CXGGQ4)TE

yep np
10/16/2020, 3:15 PM
so what is the plan for IT now
10/16/2020, 4:44 PM

- Odette Lindheim (W012QDQJQPQ)OL

10/16/2020, 4:45 PM

- Taylor Ednie (W0154CXGGQ4)TE

10/16/2020, 4:45 PM

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

BMC0037939

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

BMC0037940

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

  ok
  10/16/2020, 4:49 PM
- Odette Lindheim (W012QDQJQPQ)OL

- Taylor Ednie (W0154CXGGQ4)TE

- Odette Lindheim (W012QDQJQPQ)OL

BMC0037941

- Taylor Ednie (W0154CXGGQ4)TE

  no thats fine then
  10/16/2020, 5:17 PM

- Odette Lindheim (W012QDQJQPQ)OL

  ok cool
  10/16/2020, 5:17 PM
  done.
  10/16/2020, 5:17 PM
  its all going to change anyways
  10/16/2020, 5:17 PM

- Taylor Ednie (W0154CXGGQ4)TE

  ok
  10/16/2020, 5:24 PM
  thx
  10/16/2020, 5:24 PM

- Odette Lindheim (W012QDQJQPQ)OL

  youre an angel
  10/16/2020, 5:25 PM
  thank you 🙏🏼
  10/16/2020, 5:25 PM

- Taylor Ednie (W0154CXGGQ4)TE

  how are you doing
  10/16/2020, 5:29 PM

- Odette Lindheim (W012QDQJQPQ)OL

  ive been better
  10/16/2020, 5:30 PM
  butim ok
  10/16/2020, 5:30 PM
  better than chay is poor girl
  10/16/2020, 5:30 PM

- Taylor Ednie (W0154CXGGQ4)TE

  yeah shes not doing well
  10/16/2020, 5:30 PM

- Odette Lindheim (W012QDQJQPQ)OL

  im trying to help but like she won tlet me
  10/16/2020, 5:30 PM

BMC0037942

- Taylor Ednie (W0154CXGGQ4)TE

  yeah i think she just needed to vent
  10/16/2020, 5:31 PM

- Odette Lindheim (W012QDQJQPQ)OL

  good luck at 3 pm
  10/16/2020, 5:36 PM

- Taylor Ednie (W0154CXGGQ4)TE

  thanks friend

  10/16/2020, 6:06 PM
  also dont worry about final sign off materials
  10/16/2020, 6:06 PM
  I will take care of that
  10/16/2020, 6:06 PM

- Odette Lindheim (W012QDQJQPQ)OL

  Thank you
  10/16/2020, 6:50 PM
  Waiting now.
  10/16/2020, 6:50 PM
  I can help !
  10/16/2020, 6:50 PM

- Taylor Ednie (W0154CXGGQ4)TE

  No i know you have a ton of legal
  10/16/2020, 6:50 PM

- Odette Lindheim (W012QDQJQPQ)OL

  How did it go
  10/16/2020, 8:06 PM
  On my way home now. Should be back for design
  10/16/2020, 8:25 PM

- Taylor Ednie (W0154CXGGQ4)TE

  Ok cool
  10/16/2020, 8:53 PM
  It went surprisingly well
  10/16/2020, 8:53 PM

- Odette Lindheim (W012QDQJQPQ)OL

  Traffic
  10/16/2020, 8:53 PM

- Taylor Ednie (W0154CXGGQ4)TE

  We should connect later

BMC0037943

10/16/2020, 8:53 PM

- ## Odette Lindheim (W012QDQJQPQ)OL

  Losing it
  10/16/2020, 8:54 PM
  Yes
  10/16/2020, 8:54 PM
  I'll call you when home
  10/16/2020, 8:54 PM
  I may be late to design or dial in
  10/16/2020, 8:54 PM

- ## Taylor Ednie (W0154CXGGQ4)TE

  ok cool
  10/16/2020, 8:55 PM

- ## Odette Lindheim (W012QDQJQPQ)OL

  did that give u what you need
  10/16/2020, 9:23 PM
  sorry i was late
  10/16/2020, 9:23 PM
  also want to chat at 6 pm
  10/16/2020, 9:23 PM
  hit em with the passive aggressive smiley, i love it.
  10/16/2020, 9:24 PM

- ## Taylor Ednie (W0154CXGGQ4)TE

  yes it did that was helpful
  10/16/2020, 9:25 PM
  yeah lets chat at 6
  10/16/2020, 9:25 PM

- ## Odette Lindheim (W012QDQJQPQ)OL

  ok cool
  10/16/2020, 9:25 PM

- ## Taylor Ednie (W0154CXGGQ4)TE

  want to call my cell then?
  10/16/2020, 9:26 PM
  im gonna take a break for a few mins
  10/16/2020, 9:26 PM

- ## Odette Lindheim (W012QDQJQPQ)OL

  yes
  10/16/2020, 9:26 PM
  i have mtng at 530
  10/16/2020, 9:26 PM
  ill call u after
  10/16/2020, 9:26 PM
  what about 'we dont have a strike' dont you get CD lol
  10/16/2020, 9:27 PM

BMC0037944

- Taylor Ednie (W0154CXGGQ4)TE

  THESE FINANCE PEOPLE
  10/16/2020, 9:28 PM
  have the least financial knowledge
  10/16/2020, 9:28 PM

- Odette Lindheim (W012QDQJQPQ)OL

  lololol
  10/16/2020, 9:28 PM
  is that true on vesting lol
  10/16/2020, 9:35 PM

- Taylor Ednie (W0154CXGGQ4)TE

  yes
  10/16/2020, 9:35 PM

- Odette Lindheim (W012QDQJQPQ)OL

  ok phew
  10/16/2020, 9:35 PM

- Taylor Ednie (W0154CXGGQ4)TE

  lol i wouldnt promise it
  10/16/2020, 9:35 PM
  but yeah we have always done that
  10/16/2020, 9:35 PM

BMC0037945

# EXHIBIT 5

# REDACTED VERSION – UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL

Direct message Alex D'Amico, Chayanee Ubol and Odette Lindheim - 2020-10-19 (UTC)

Private 10/19/2020, 12:53 PM
Alex D'Amico, Chayanee Ubol and Odette Lindheim

- Alex D'Amico (W014R4R4CGZ)AD

  Morning - should be ready to talk / help w. UW stuff as needed by 9:15. Let me know what i can help with
  10/19/2020, 12:53 PM
  (This is for Odeete but awareness for Chay)
  10/19/2020, 12:53 PM

- Odette Lindheim (W012QDQJQPQ)OL

  thanks! we're on hold until the lawyers get us final docs. chay mentioned the UW mtng is at 2 pm so we shouldnt send until after but i can work to get it set up so we can hit send when needed
  10/19/2020, 1:00 PM

- Chayanee Ubol (W015QKKBFFS)CU

  @Alex D'Amico can you read talking points also?
  10/19/2020, 1:31 PM
  Kristin and Kenna read it this weekend
  10/19/2020, 1:31 PM
  But one final eyes would be great
  10/19/2020, 1:31 PM

BMC0037950

# Today

 **Chay** ⬭ 10:22 AM

hi hi.

post annoucement

are we planning Office Hours for the UWs/

*NEW*

 **kmeyerhoff** 10:48 AM

no

they can come directly to EE team or email the new email group i created

Message Lindsey Volpintesta, kmeyerhoff, McKi... 

                                    

10/19,

2:55 PM
Image from iOS (F01CF2QF1E3)10/19/2020, 2:55 PM
• Odette Lindheim (W012QDQJQPQ)OL

oo what's the email group? we can use that to send via docusign i think.. i will slack her directly.
10/19/2020, 2:56 PM
and can update the deck/plan
10/19/2020, 2:56 PM
done on ppt and word doc
10/19/2020, 2:58 PM
• Alex D'Amico (W014R4R4CGZ)AD

thx
10/19/2020, 2:58 PM
• Chayanee Ubol (W015QKKBFFS)CU

Weird question: who is in the email group distribution?
10/19/2020, 3:34 PM
• Odette Lindheim (W012QDQJQPQ)OL

I'll ask kenna
10/19/2020, 3:35 PM

                                                                                       BMC0037951

- Chayanee Ubol (W015QKKBFFS)CU

  Is the business in jt?
  10/19/2020, 3:35 PM
- Odette Lindheim (W012QDQJQPQ)OL

  actually i think it's just a "sender" group
  10/19/2020, 3:35 PM
  not a distro list
  10/19/2020, 3:35 PM
  like comp@better
  10/19/2020, 3:35 PM
  FYI - SOM T&Cs are being sent now.
  10/19/2020, 4:15 PM
  :fireball: 1
- Chayanee Ubol (W015QKKBFFS)CU

  shared the doc kenna and her team are using today in UW
  10/19/2020, 4:16 PM
  👍👍 1
- Odette Lindheim (W012QDQJQPQ)OL

  I am on Mgmt huddle
  10/19/2020, 5:36 PM
  ❤️ 2
  - Chayanee Ubol CU

    How did it go? Neutral?
    10/19/2020, 6:09 PM
  - Odette Lindheim OL

    yes - no major flags. A question i am adding to the FAQs -are yo eligible if you received a sign on bonus with split payment
    10/19/2020, 6:13 PM
  - Chayanee Ubol CU

    I have to raise this - Bc recruiting did an open ended amount on sign on and megan raised a point that she wanted to treat everyone equally
    10/19/2020, 6:27 PM
  - Odette Lindheim OL

    Meg was on the call
    10/19/2020, 6:34 PM
    i asked Andrew in chat and he confirmed and McKinzey announced
    10/19/2020, 6:34 PM
    and no flags - but lmk
    10/19/2020, 6:34 PM
  - Chayanee Ubol CU

    Sending a note to arthur so recruiting can come back down on the amounts some of these hires have gotten $15-25K sign on
    10/19/2020, 6:35 PM
  - Odette Lindheim OL

    yeah i agree
    10/19/2020, 6:42 PM
    but also even more of an argument to make them ineligible for the retention regardless of pay split
    10/19/2020, 6:42 PM
  - Chayanee Ubol CU

    wait so those that got sign on should not get a retention bonus
    10/19/2020, 6:49 PM
    but you are eligible for release
    10/19/2020, 6:49 PM
  - Odette Lindheim OL

    yes
    10/19/2020, 7:12 PM
    the question was only retention
    10/19/2020, 7:12 PM
    agree
    10/19/2020, 7:20 PM
- Chayanee Ubol (W015QKKBFFS)CU

  i went to the regional one.
  10/19/2020, 5:36 PM
  ✖️ 1
  :clapping-gif: 1
- Odette Lindheim (W012QDQJQPQ)OL

  Employee communication about comp cycle next steps going out soon, FYI
  10/19/2020, 6:08 PM
- Alex D'Amico (W014R4R4CGZ)AD

  Brent just pushed out the October awareness programs FYL (They were late my bad)
  10/19/2020, 6:09 PM
- Odette Lindheim (W012QDQJQPQ)OL

BMC0037952

i saw!
10/19/2020, 6:09 PM

- **Chayanee Ubol (W015QKKBFFS)CU**

That employee one goes to everyone right ?
10/19/2020, 6:09 PM
🗌🗌 1

- **Chayanee Ubol (W015QKKBFFS)CU**

They are not. It's in the agreement under eligibility
10/19/2020, 7:14 PM

    o **Odette Lindheim OL**

    agree
    10/19/2020, 7:20 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

**Update:** At Will Employee Agreement (CA) - SENT.
10/19/2020, 9:07 PM
:clapping-gif: 2
Release and Retention Agreement - SENT.
ON-HOLD - At Will Employee Agreement ( all other states)
10/19/2020, 9:43 PM
:clapping-gif: 1

- **Chayanee Ubol (W015QKKBFFS)CU**

Omg thank you
10/19/2020, 9:53 PM
Interesting constangy is delaying more stuff
10/19/2020, 9:53 PM
@Odette Lindheim have we figured out reporting for docusign? or is it manual?
10/19/2020, 10:06 PM
we got 26 returned release agreements already
10/19/2020, 10:07 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

manual reporting
10/19/2020, 10:07 PM
from the inbo
10/19/2020, 10:07 PM
inbox*
10/19/2020, 10:07 PM
unfortunately
10/19/2020, 10:07 PM
as far as i can tell.
10/19/2020, 10:07 PM

- **Chayanee Ubol (W015QKKBFFS)CU**

<https://support.docusign.com/en/guides/ndse-user-guide-using-reports>
10/19/2020, 10:13 PM
Using Reports - DocuSign eSignature User Guide | DocuSign Support Center
The Reports feature allows users and administrators to run, customize, schedule, and download and print reports for their account.
looks like its quick reporting
10/19/2020, 10:13 PM
do you know the email and password? for uw-inquiries?
10/19/2020, 10:13 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

uw-inquiries@better.com


omg i thought the post mortem was 645 - did i miss it!?
10/19/2020, 10:47 PM

- **Alex D'Amico (W014R4R4CGZ)AD**

all good
10/19/2020, 10:47 PM

- **Odette Lindheim (W012QDQJQPQ)OL**

figured out reporting
10/19/2020, 10:58 PM
im not that useless
10/19/2020, 10:58 PM
🗌
10/19/2020, 10:58 PM

- **Chayanee Ubol (W015QKKBFFS)CU**

Hahah
10/19/2020, 10:58 PM

- **Chayanee Ubol (W015QKKBFFS)CU**

I put labels on them so I can track when we move them to google sheets
10/19/2020, 10:59 PM
🗌🗌 1

                                                                                     BMC0037953

- ○ Odette Lindheim OL

  Oh do you mean folders in the docusign account?
  10/19/2020, 11:03 PM

- Odette Lindheim (W012QDQJQPQ)OL

| Count of Status | Column Labels | | | | |
|---|---|---|---|---|---|
| Row Labels | Completed | Delivered | Sent | Voided | Grand Total |
| Please DocuSign: Better Holdco & Better Mortgage Corp - At-Will Employment Agreement | 16 | 4 | 112 | | 132 |
| Please DocuSign: Better Holdco & Better Mortgage Corp - At-Will Employment Agreement (CA) | 46 | 3 | 64 | 56 | 169 |
| Please DocuSign: Release Agreement | 54 | 24 | 119 | | 197 |
| Please DocuSign: Retention Agreement | 70 | 22 | 126 | | 218 |
| Grand Total | 186 | 53 | 421 | 56 | 716 |

10/19/2020, 11:01 PM

  image.png (F01D9K6BQ0H)10/19/2020, 11:01 PM
  i think some are still being "sent" bc it takes a while...and the #s arent adding up.
  10/19/2020, 11:01 PM
  looking into it!
  10/19/2020, 11:01 PM

- Alex D'Amico (W014R4R4CGZ)AD

  10/19 -

  Follow-Up email to the audience

  Thank you all for the time today discussing these activities in your organization!

  We know it was a lot of information so we wanted to send a recap of the highlights and next steps.

  **Recap:**

  • There is a legal claim that's been raised against Better, alleging that we have misclassified the Underwriting job. This particular claimant believes these roles should be eligible for overtime pay.
  • We talked about the both the lawsuit & the upcoming FLSA audit.
  • We want to give retention bonuses and release bonuses over the several weeks  - and we will be pushing out documents to review & sign in order to receive the bonus.
  **Next Steps:**
  Your Employment Agreement, Retention Agreement, and Release of Claims agreements have been sent to your Work Email (3 separate emails).
  The Employment Agreement is a mandatory document for all employees
  Retention Agreement, and Release of Claims agreements are voluntary but must be signed prior to incentive payout.
  Questions? Reach out to your employee experience team OR uw-inquiries@better.com
  10/19/2020, 11:07 PM

- Odette Lindheim (W012QDQJQPQ)OL

  maybe swap "Highlights" for "Recap"
  10/19/2020, 11:08 PM
  since none of this is particularly positive haha
  10/19/2020, 11:08 PM
  but thats stylistic. otherwise looks good to me. are we linking FAQs or just directing them to EE and the email
  10/19/2020, 11:09 PM

- Chayanee Ubol (W015QKKBFFS)CU

  The Employment Agreement is a mandatory document for all employees
  Retention Agreement, and Release of Claims agreements are voluntary. But for any bonuses to be paid out the employment agreement must be signed and completed at a minimum
  10/19/2020, 11:11 PM

  - ○ Odette Lindheim OL

    good addition
    10/19/2020, 11:12 PM

- Chayanee Ubol (W015QKKBFFS)CU

  Cautious of using incentive since it's discretionary and should be a bonus
  10/19/2020, 11:11 PM

- Alex D'Amico (W014R4R4CGZ)AD

  **Next Steps:**
  Your Employment Agreement, Retention Agreement, and Release of Claims agreements have been sent to your Work Email (3 separate emails).

  The Employment Agreement is a document sent to each employee and requires signature  / acknowledgement.
  Retention Agreement, and Release of Claims agreements are totally voluntary but both this agreement and the above Employment Agreement must be signed prior to the monetary payout.

  Questions? Reach out to your employee experience team OR uw-inquiries@better.com (edited)
  10/19/2020, 11:13 PM
  ☑ 2

- Chayanee Ubol (W015QKKBFFS)CU

  equity girl came back and asked if we could defer her payment
  10/19/2020, 11:49 PM
  bc the bonus would push her to another tax bracket. Given the heavy incentives they get paid... should we look to getting tax FAQ done
  10/19/2020, 11:49 PM

- Alex D'Amico (W014R4R4CGZ)AD

  It's all making sense now
  10/19/2020, 11:49 PM

- Odette Lindheim (W012QDQJQPQ)OL

  We have a payroll faq but we could add to that maybe

Confidential
BMC0037954

10/19/2020, 11:50 PM
- Chayanee Ubol (W015QKKBFFS)CU

she will have the same issue next year
10/19/2020, 11:50 PM
 1



**John J McEniry** 🏠 7:26 PM

Hi Megan, Hope you are doing well and staying safe.  Just wanted to personally thank you for the Retention Bonus.  I have been getting multiple offers daily to leave Better and I have not been interested.  But, it is nice to know that Better understands the Market and made this offer.  Very Thankful and Much Appreciated.

11:52 PM
Image from iOS (3).jpg (F01D37GLT6G)10/19/2020, 11:52 PM
some nice feedback
10/19/2020, 11:52 PM
do we want to offer the split payment as an option?/ bad idea?
10/19/2020, 11:54 PM
- Alex D'Amico (W014R4R4CGZ)AD

We don't defer comp to anyone else
10/19/2020, 11:55 PM
This is a slippery slope
10/19/2020, 11:56 PM
- Chayanee Ubol (W015QKKBFFS)CU

i hear her hesitation to accept, like she wants it...
10/19/2020, 11:56 PM

BMC0037955

EXHIBIT 6

| From: | UW Inquiries <uw-inquiries@better.com> |
|---|---|
| Sent: | Tuesday, October 20, 2020 9:50 AM |
| To: | UW Inquiries <uw-inquiries@better.com> |
| Cc: | Megan Bellingham <mbellingham@better.com>; Joel Graber <jgraber@better.com>; Employee Experience Team <employee-experience-team@better.com>; Chayanee Ubol <cubol@better.com>; Alex D'Amico <adamico@better.com>; Underwriting <underwriting@better.com>; Andrew Bauer <abauer@better.com> |
| Subject: | Recap of yesterday's Underwriting Huddle |

Team,

Thank you all for the time yesterday discussing these activities in your organization!

We know it was a lot of information so we wanted to send a recap of the highlights and next steps.

## Recap

- We want to give **retention bonuses** and **release payments** over the next several weeks  - and we will be pushing out documents to review and sign in order to receive the bonus.  In particular, there are 3 documents we are asking you to review.

  1. The first is a revised **Employment Agreement**.  This will be going out to all Better employees, will replace your current employment contract, and is required that you sign.
  2. The second is the **Retention Agreement**, which covers the terms around the $10,000* retention bonus.
  3. And the third is the **Release Agreement**, which covers the terms around the $5,000* release payment.
     - *Applicable taxes will be applied*

- Regarding the Release, as we discussed, there is a legal claim brought under the Fair Labor Standards Act ("FLSA")  that's been filed against Better, alleging that we misclassified the Underwriting job. This particular plaintiff believes these roles should be eligible for overtime pay.
- We talked about the both the lawsuit & the upcoming FLSA audit.  And we talked about how the $5,000 payment, if you choose to sign, will be in exchange for your release to join that lawsuit and/or bring similar claims.
- We also want to flag for you that the Employment Agreement contains an arbitration provision, which could also limit what claims you could join as part of that lawsuit.

## Next Steps

- Your Employment Agreement, Retention Agreement, and Release of Claims agreements have been sent to your Work Email (3 separate emails from Docusign).
  - The Employment Agreement is a document sent to each employee and **requires** signature  / acknowledgement.
  - The Retention Agreement and the Release of Claims Agreement are totally **voluntary**.
    - You can choose to sign none, one or both of these agreements.  But each of these agreements and the above Employment Agreement must be signed prior to each respective monetary payout.

Questions? Reach out to your employee experience team OR uw-inquiries@better.com

Confidential

--
You received this message because you are subscribed to the Google Groups "Employee Experience Team"
group.
To unsubscribe from this group and stop receiving emails from it, send an email to employee-experience-
team+unsubscribe@better.com.
To view this discussion on the web visit https://groups.google.com/a/better.com/d/msgid/employee-experience-
team/9fabba23-fdbf-4fca-b70e-fc7b4a5b28e0n%40better.com.

Confidential                                                                                        BMC0032566

# EXHIBIT 7

| | |
|---|---|
| **From:** | Alex D'Amico <adamico@better.com> |
| **Sent:** | Tuesday, October 20, 2020 12:12 AM |
| **To:** | Chayanee Ubol <cubol@better.com> |
| **Cc:** | Kenna Meyerhoff <kmeyerhoff@better.com>; Odette Lindheim <olindheim@better.com> |
| **Subject:** | Re: End of the Night Stats! THANK YOU |

Great numbers !!

On Mon, Oct 19, 2020 at 10:42 PM Chayanee Ubol <cubol@better.com> wrote:

Hi team,

I just wanted to share some great stats. When the legals said on Friday they wanted this turned around in a day, it felt impossible. Thank you so much for rallying and getting us to this point even while I'm off.  I couldn't ask for a better team.  You are all a dream.

Thank you, thank you so much.   In the first night we got a great rate of return:

1. 72 Release Returned:  37% response rate
2. 96 Retention Signed: 45% of eligible employees
3. 98 Employment Agreement  : 46% of population

We can send 53 names to payroll for both Release and Retention; 2 names for Release only (they didnt sign the retention).

Tracking Found Here

Thank you again dream team!
Chay
--
ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY

Confidential

# EXHIBIT 8

| | |
|---|---|
| **Subject:** | Underwriting Huddle |
| **Location:** | https://better.zoom.us/j/91921961986?pwd=YUhNTWlNTmRVTStHSDUwT1VsS2gxUT09 |
| **Start:** | 10/19/2020 4:00 PM |
| **End:** | 10/19/2020 4:30 PM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |
| **Meeting Status:** | Not yet responded |
| **Organizer:** | olindheim@better.com |
| **Resources:** | https://better.zoom.us/j/91921961986?pwd=YUhNTWlNTmRVTStHSDUwT1VsS2gxUT09 |

**You have been invited to the following event.**

## Underwriting Huddle

*When*
Mon Oct 19, 2020 4pm – 4:30pm Eastern Time - New York
*Where*
https://better.zoom.us/j/91921961986?pwd=YUhNTWlNTmRVTStHSDUwT1VsS2gxUT09
(map)
*Calendar*
abauer@better.com
*Who*
• olindheim@better.com
- organizer
• abauer@better.com
more details »

_____

Kenna Meyerhoff is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://better.zoom.us/j/91921961986?pwd=YUhNTWlNTmRVTStHSDUwT1VsS2gxUT09

Meeting ID: 919 2196 1986
Passcode: 626542
One tap mobile

BMC0015183

+16465588656,,91921961986# US (New York)
+13017158592,,91921961986# US (Germantown)

Dial by your location
+1 646 558 8656 US (New York)
+1 301 715 8592 US (Germantown)
+1 312 626 6799 US (Chicago)
+1 669 900 6833 US (San Jose)
+1 253 215 8782 US (Tacoma)
+1 346 248 7799 US (Houston)
877 853 5247 US Toll-free
888 788 0099 US Toll-...

Going (abauer@better.com)?
**Yes** -
**Maybe** -
**No**   more options »

Invitation from Google Calendar

You are receiving this email at the account abauer@better.com because you are subscribed for
invitations on calendar abauer@better.com.

To stop receiving these emails, please log in to https://www.google.com/calendar/ and change your
notification settings for this calendar.

Forwarding this invitation could allow any recipient to send a response to the organizer and be added
to the guest list, or invite others regardless of their own invitation status, or to modify your RSVP.
Learn More.

Confidential                                                                  BMC0015184

# EXHIBIT 9

| From: | Google Calendar <calendar-notification@google.com> on behalf of cubol@better.com |
|---|---|
| Sent: | Tuesday, November 17, 2020 2:10 PM |
| To: | kmeyerhoff@better.com; mphillips@better.com; mrodriguez@better.com; msayers@better.com; cubol@better.com |
| Subject: | UW Touch Basis - |

Hi All,

In advance of the meeting, sending along the agenda:
1) Final tally of payments processed and outstanding issues
2) Sign on payments _ addressing those who got less than 10k or were getting split payments.
3) Legal update - not accepting any more release payments
4) Any of questions/concerns.
5) Work together in the future - how can we partner better, things that worked really well and where we needed to provided better support, etc

---

**UW Touch Basis -**

| When | Tue Nov 17, 2020 4pm – 4:25pm Eastern Time - New York |
|---|---|
| Where | https://better.zoom.us/j/93236679533?pwd=ejU2MEtUSmlvRFVuMW9pMDhCc2NRQT09 (map) |
| Who | • cubol@better.com - organizer |
| | • msayers@better.com |
| | • kmeyerhoff@better.com |
| | • mrodriguez@better.com |
| | • mphillips@better.com |

want us to get together and touch basis on the UW Retention & Release. As we wind down and work on next steps... thanks!

_____

Chayanee Ubol is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://better.zoom.us/j/93236679533?pwd=ejU2MEtUSmlvRFVuMW9pMDhCc2NRQT09

Meeting ID: 932 3667 9533
Passcode: 358351

Join by SIP
93236679533@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia)
149.137.40.110 (Singapore)
64.211.144.160 (Brazil)
69.174.57.160 (Canada)
207.226.132.110 (Japan)
Meeting ID: 932 3667 9533
Passcode: 358351

_____

BMC0033941

# EXHIBIT 10

| | |
|---|---|
| **From:** | Alex D'Amico <adamico@better.com> |
| **Sent:** | Wednesday, January 6, 2021 12:59 PM |
| **To:** | Derek Johnson |
| **Subject:** | Re: Handbook & Processes Update for 2021 |

Did you get that meeting confirmed?

I think the issue here that this has been largely run by TA - and then EE and strategy came in to design a policy.

i really don't think there is any strategy around the design and I gave arthur that feedback throughout this process.

Sarah's POV is that it just should be a competitive process and based on the policy we should allow people to apply  and the hiring manager can make the decision.

I think applying for a promotion in a department that is outside of your current reporting line is something we should support and have done historically since launching internal mobility -  so it's important to talk through the root of the EK opinion and determine if it is specific to her / ppl on her team.

A

ALEX D'AMICO | Sr. Director People Teams
Better.com | WFH-NJ/NY

On Wed, Jan 6, 2021 at 12:52 PM Derek Johnson <dejohnson@better.com> wrote:
 Thanks Sara.

 Thanks Elana, I have that one down for us to discuss live next week.

 Derek

 On Wed, Jan 6, 2021 at 9:08 AM Elana Knoller <eknoller@better.com> wrote:
  I still have an issue w being able to get promoted by moving internally but that's it

  Thanks Derek

  On Wed, Jan 6, 2021 at 9:04 AM Sarah Pierce <spierce@better.com> wrote:
   Thanks Derek - no concerns here.

   On Wed, Jan 6, 2021 at 12:02 AM Derek Johnson <dejohnson@better.com> wrote:
    All,

1

BMC0020660

Just want to confirm there are no questions or concerns. We'll be sending communications out tomorrow.

Derek

On Mon, Jan 4, 2021 at 4:11 PM Kenna Meyerhoff <kmeyerhoff@better.com> wrote:
Thanks so much Derek! Super excited to launch this.

@ Team - please let us know if you have any Q's. We won't be asking much of the employee population other than to acknowledge the new handbook and join an info session to learn more/ask any questions they have (which we'll be hosting over the course of two weeks).

-KM

On Mon, Jan 4, 2021 at 4:29 PM Derek Johnson <dejohnson@better.com> wrote:
Hi Team,

As you are aware, we've spent a couple of months reworking the employee handbook. I want to share the email below we're working to send out company-wide on January 6th regarding the Handbook and process changes. I wanted to be sure each of you had a couple of days to digest the new version and equip yourself with the changes. This has been reviewed and approved by Legal and People team leadership. That said, if you are going through and don't feel comfortable with something, please let me know asap so we can discuss any terminology or policy.

Here is a link to access the online version of the Handbook:
https://rise.articulate.com/share/LN1a0CQtCFSmdA9g2LzNQx0fJ-yTjJEC#/

Best,
Derek

---------------------------------------------------------------------------------------------

**Subject: Important 2021 Updates from the People Team!**

Hi Better Team,

The People Team wishes everyone a very warm welcome to 2021!

We want you to be engaged and satisfied while you're here, and we want you to be part of our long-term plans. So we offer an array of programs to empower you to acquire new skills, develop as a leader, and chart a career that will make your friends envious and your family proud. We're excited to announce a few updates to our policies and processes that will impact you.

**What's new?**

1. **Company Handbook:**

   **Here's what you need to know.**

2

Confidential

BMC0020661

We developed a new company Handbook that is a continuation of the 2019 version. Company Handbooks are a crucial part of employment with any organization. To promote a fair, equitable, and productive workplace, we encourage everyone to understand the information in the Handbook. If you appreciate the TLDR versions more, please utilize this briefing and then continue reading the full version via a **KnowBe4** email link provided by the Employee Experience team. For compliance purposes, we will be tracking your acknowledgment that you've read and understood the Handbook.

**What changes have been made to the handbook?**

The main changes in the 2021 company handbook include updates to our:

- **Time Off/Leaves of Absence:** We added a section clarifying the company's philosophy on time off and leaves of absence.
    - We ensured that our policy is clear around medical and family leaves of absence, clarified pay entitlement, and eligibility requirements.
    - For parental bonding, we updated our pay entitlement requirements to be consistent with the following:
        - <90 days of tenure: 4 weeks of pay
        - 90 days to 24 months of tenure: 12 weeks of pay
        - 24 months+ of tenure: 20 weeks of pay
    - We clarified eligibility and pay entitlements for personal leaves of absence.
    - We added additional information and expectations regarding our Flexible PTO policy.
- **Internal Mobility Policy:** We expanded on our criteria for internal transfers and provided additional insight into the process surrounding internal mobility.
- **Open Door Policy & Employee Helpline:** Recently, the compliance team sent out communications notifying employees of our anonymous helpline, Convercent. The new policy contextualizes how to use the helpline and the Employee Experience team's open-door policy.
- **Standards of Conduct:** Building off of the version of the Standards of Conduct, communicated in August of 2020, we streamlined this policy to ensure that our expectations are more explicit for employees. The updated version is in the Handbook.

**Here's what you need to do.**

We designed our Handbook to be more interactive and user-friendly than previous versions. By the end of the day, you will receive an email from KnowBe4 prompting you to complete a handbook training. KnowBe4 is a platform we've used internally for security training, and we'll be using it here to track your acknowledgment that you've read the Handbook. **Please be sure to review and acknowledge the Handbook by January 31st, 2021.** By the end of Q1 2021, the Handbook will also be available to everyone in Workday.

The Employee Experience and People Development teams will be hosting information sessions for employees in early January. Managers will have four attendance options during the week of January 11th. Non-managers will have four attendance options during the week of January 18th. For all, meeting invites will be automatically added to calendars. We strongly encourage employees to attend these sessions.

2. **At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement:**

Confidential

BMC0020662

**Here's what you need to know.**
Depending on when you started your employment with Better, you've likely already signed a similar agreement that was included with your offer letter, addressing items such as your confidentiality obligations, assignment of inventions, and the return of company property. However, those previous agreements' exact terms and conditions varied as there had been multiple versions over the years. To ensure that the Company's interests have consistent protections and ensure employees' obligations are fair and consistent, all employees must sign this new standardized version.

**Here's what you need to do.**
On January 25th, we will send this agreement to you via Workday, where you can review it in its entirety and **sign by February 26th.** If you have questions as you review the agreement, contact the Employee Experience team at people-policies-discuss@better.com, who can also connect you with someone in Legal as necessary.

3. **Touchpoints Program:**

**Here's what you need to know.**

We expect you to give us your best every day, and you can expect the same from us. In exchange for your talent, your energy, and your unique contributions, we will strive to offer you the best employment experience of your career. Designed to increase employee engagement and retention, **the new Touchpoints Program** will collect feedback from the beginning of an employee's time at Better and throughout their journey with the Company.

Our touchpoints are set up at different times throughout the employee lifecycle consisting of conversations, surveys, and focus groups. Our goal is to foster open communication and ensure employees are heard and have the right tools for success. These sessions should also help build a solid understanding of Better's environment and objectives.

The Employee Experience team is always available for open dialogue outside the Touchpoints program. If you'd like to schedule additional time with someone from the Employee Experience team, please reach out to your assigned EE team member directly (list here).

4. **Friendly Reminder: Flexible PTO:**

We do our best to foster an environment where you can thrive. We want to make sure that you're taken care of and feel appreciated so that you can let your passion out and do amazing things. Flexible PTO is a hallmark of our high-performance culture, which trusts and empowers employees to balance their workload by taking time off to recharge when needed (prevent burnout). We encourage employees to have open conversations with their managers when they need time off.

We hope this information is useful, and that you use it as a guide throughout your tenure. As always, if you have any questions, reach out to your Employee Experience contact (list here).

Here's to a wonderful new year!

Derek Johnson and the People Team

4

--

**DEREK JOHNSON** | Head of Employee Experience | Better |
Remote - Denver, CO 80202

# Better

--

**KENNA MEYERHOFF** | Director, Employee Experience | Better | 175 Greenwich St., Fl. 59 New York, NY 10007 | (917) 499-3450 |

--

**DEREK JOHNSON** | Head of Employee Experience | Better |
Remote - Denver, CO 80202

# Better

--

**SARAH PIERCE** | Head of Sales and Operations| Better.com | 516-662-6130

--

**ELANA KNOLLER** | Chief Product Officer | Better Mortgage | 3 World Trade Center, 59th Floor, New York, NY 10012 | (917) 566-0901

--

**DEREK JOHNSON** | Head of Employee Experience | Better |
Remote - Denver, CO 80202

5

Confidential

BMC0020664

EXHIBIT 11

| From: | Derek Johnson <dejohnson@better.com> |
|---|---|
| Sent: | Friday, January 8, 2021 5:28 PM |
| To: | Newyork@better.com; Irvine@better.com; Oakland@better.com; remote_office@better.com |
| Subject: | 2021! Key Updates from the People Team: Handbook and more... |

Hi Better Team,

The People Team wishes everyone a very warm welcome to 2021! We want you to have the very best experience at Better, and we want you to be part of our long-term plans. With that in mind, we're announcing a few updates to our policies and processes that will impact you. Please read below to understand the actions you need to take.

**(1) US Employee Handbook:**

To promote a fair, equitable, and productive workplace, we're asking everyone to read through the updated Handbook. By the end of today, you'll receive an email from the KnowBe4 platform with a link prompting you to complete the handbook training. The email will come from people-policies-discuss@better.com with the Subject: 2021 Better Employee Handbook.

**Please be sure to review and acknowledge the Handbook by January 31, 2021.** To navigate through it, you must click "Continue" once you've read a specific section. We'll track your final acknowledgement when you select "I acknowledge and agree" in the last section titled "Acknowledgement of Receipt and Review Form."  By the end of Q1 2021, the Handbook will also be available to everyone in Workday.

We'll also be hosting information sessions for employees: managers will have four attendance options during the week of January 11, and non-managers will have four attendance options during the week of January 18.

Here are the highlights of the changes we've made to the Handbook:

- We've added **telecommuting - work from home (WFH) / IT remote policies** to help you secure your home work environment.
- We've added a section clarifying our philosophy on **time off/leaves of absence**, ensuring that our policy is clear around all types of leave. Additionally, new pay entitlement requirements for baby bonding are as follows:
    - <90 days of tenure: 4 weeks of pay
    - 90 days to 24 months of tenure: 12 weeks of pay
    - 24 months+ of tenure: 20 weeks of pay
- We expanded our criteria around **internal mobility** and provided additional insight into the process surrounding internal transfers.
- Our new **open door policy & employee helpline** helps clarify how to use our anonymous helpline, Convercent, and the Employee Experience team's open-door policy.
- Building off our **Standards of Conduct**, communicated in August, we streamlined the policy to make more explicit our expectations.

**(2) At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement:**

BMC0020770

You've likely already signed a similar agreement that was included with your offer letter. However, those previous agreements' exact terms and conditions varied as there had been multiple versions over the years. To ensure that the company's interests and employees' obligations are fair and consistent, all employees must sign our new standardized version.

**On January 25, we will send this agreement to you via Workday, where you can review it in its entirety and sign by February 26.** If you have questions as you review the agreement, contact the Employee Experience team at people-policies-discuss@better.com, who can also connect you with someone in Legal as necessary.

**(3) Touchpoints Program:**

Designed to increase employee engagement and retention, **the new Touchpoints Program** will collect feedback from the beginning of an employee's time at Better and throughout their journey here.

Our goal is to foster open communication and ensure employees are heard and have the right tools for success, and we'll do so through conversations, surveys, and focus groups.  That said, you should always feel free to reach out to the Employee Experience outside the Touchpoints program. If you'd like to schedule additional time with someone from the Employee Experience team, please reach out directly to your assigned EE team member.

**(4) Flexible PTO:**

We do our best to foster an environment where you can thrive. Flexible PTO is a hallmark of our high-performance culture, which trusts and empowers employees to balance their workload by taking time off to recharge when needed and prevent burnout. We encourage you to have open conversations with your managers when you need time off.

We hope this information is useful, and that you use it as a guide throughout your tenure. As always, if you have any questions, reach out to your Employee Experience contact.

Here's to a wonderful new year!

Best,
Derek Johnson and the People Team.

--

**DEREK JOHNSON** | Head of Employee Experience | Better |
Remote - Denver, CO 80202



BMC0020771

# EXHIBIT 12

| From: | Derek Johnson <dejohnson@better.com> |
|---|---|
| Sent: | Wednesday, January 27, 2021 4:57 PM |
| To: | remote_office@better.com |
| Cc: | Employee Experience Team <employee-experience-team@better.com>; Senior-Leadership <senior-leadership@better.com> |
| Subject: | [Please Read] Reminder: At-Will Employment Agreement |

All,

As a reminder, you'll receive a task in your Workday inbox today to review and complete the **_At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement_**.

You've likely already signed a similar agreement that was included with your offer letter. However, those previous agreements' exact terms and conditions varied as there had been multiple versions over the years. To ensure that the company's and employees' obligations are fair and consistent, all employees must sign our new standardized version.

**This agreement will be sent via Workday as a task, where you can review it in its entirety and sign by February 26.** If you have questions as you review the agreement, contact the Employee Experience team at people-policies-discuss@better.com, who can also connect you with someone in Legal as necessary.

Lastly, if you haven't done so, this is a reminder to please be sure to review and acknowledge the Employee Handbook by January 31.

Best,
Derek

On Fri, Jan 8, 2021 at 2:32 PM Derek Johnson <dejohnson@better.com> wrote:
Hi Better Team,

The People Team wishes everyone a very warm welcome to 2021! We want you to have the very best experience at Better, and we want you to be part of our long-term plans. With that in mind, we're announcing a few updates to our policies and processes that will impact you. Please read below to understand the actions you need to take.

**(1) US Employee Handbook:**

To promote a fair, equitable, and productive workplace, we're asking everyone to read through the updated Handbook. By the end of today, you'll receive an email from the KnowBe4 platform with a link prompting you to complete the handbook training. The email will come from people-policies-discuss@better.com with the Subject: 2021 Better Employee Handbook.

**Please be sure to review and acknowledge the Handbook by January 31, 2021.** To navigate through it, you must click "Continue" once you've read a specific section. We'll track your final acknowledgement when you select "I acknowledge and agree" in the last section titled "Acknowledgement of Receipt and Review Form."  By the end of Q1 2021, the Handbook will also be available to everyone in Workday.

We'll also be hosting information sessions for employees: managers will have four attendance options during the week of January 11, and non-managers will have four attendance options during the week of January 18.

Here are the highlights of the changes we've made to the Handbook:

- We've added **telecommuting - work from home (WFH) / IT remote policies** to help you secure your home work environment.
- We've added a section clarifying our philosophy on **time off/leaves of absence**, ensuring that our policy is clear around all types of leave. Additionally, new pay entitlement requirements for baby bonding are as follows:
    - <90 days of tenure: 4 weeks of pay
    - 90 days to 24 months of tenure: 12 weeks of pay
    - 24 months+ of tenure: 20 weeks of pay
- We expanded our criteria around **internal mobility** and provided additional insight into the process surrounding internal transfers.
- Our new **open door policy & employee helpline** helps clarify how to use our anonymous helpline, <u>Convercent</u>, and the Employee Experience team's open-door policy.
- Building off our <u>**Standards of Conduct**</u>, communicated in August, we streamlined the policy to make more explicit our expectations.

**(2) At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement:**

You've likely already signed a similar agreement that was included with your offer letter. However, those previous agreements' exact terms and conditions varied as there had been multiple versions over the years. To ensure that the company's interests and employees' obligations are fair and consistent, all employees must sign our new standardized version.

**On January 27, we will send this agreement to you via Workday, where you can review it in its entirety and sign by February 26.** If you have questions as you review the agreement, contact the Employee Experience team at <u>people-policies-discuss@better.com</u>, who can also connect you with someone in Legal as necessary.

**(3) Touchpoints Program:**

Designed to increase employee engagement and retention, **the new Touchpoints Program** will collect feedback from the beginning of an employee's time at Better and throughout their journey here.

Our goal is to foster open communication and ensure employees are heard and have the right tools for success, and we'll do so through conversations, surveys, and focus groups.  That said, you should always feel free to reach out to the Employee Experience outside the Touchpoints program. If you'd like to schedule additional time with someone from the Employee Experience team, please reach out directly to your <u>assigned EE team member</u>.

**(4) Flexible PTO:**

We do our best to foster an environment where you can thrive. Flexible PTO is a hallmark of our high-performance culture, which trusts and empowers employees to balance their workload by

taking time off to recharge when needed and prevent burnout. We encourage you to have open conversations with your managers when you need time off.

We hope this information is useful, and that you use it as a guide throughout your tenure. As always, if you have any questions, reach out to your Employee Experience contact.

Here's to a wonderful new year!

Best,
Derek Johnson and the People Team.


--

**DEREK JOHNSON** | Head of Employee Experience | Better |
Remote - Denver, CO 80202

# Better


--

**DEREK JOHNSON** | Head of Employee Experience | Better |
Remote - Denver, CO 80202

--

You received this message because you are subscribed to the Google Groups "Employee Experience Team" group.
To unsubscribe from this group and stop receiving emails from it, send an email to employee-experience-team+unsubscribe@better.com.
To view this discussion on the web visit https://groups.google.com/a/better.com/d/msgid/employee-experience-team/CAGOeSYvGrcz-wJ-rq1EJeCmLShvUqDBGEXkpUtCAaFpTHfdYFA%40mail.gmail.com.

# EXHIBIT 13

| | |
|---|---|
| **From:** | Jordon Scarlett <jscarlett@better.com> |
| **Sent:** | Wednesday, January 27, 2021 11:25 AM |
| **To:** | Kenna Meyerhoff |
| **Cc:** | McKinzey Sayers; Derek Johnson |
| **Subject:** | Re: Draft Email Comm and FAQ on the At-Will Employment Agreement |
| **Attachments:** | FAQs on At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement.docx |

Sorry, yes, the FAQs will be attached. I have reattached it hereto. It is quite short and mostly a rehashing of what is in the communication. I will add to it if we start to see similar questions on a topic.

On Wed, Jan 27, 2021 at 11:18 AM Kenna Meyerhoff <kmeyerhoff@better.com> wrote:
 Thanks! Are you attaching an FAQ separate from the job aid? I see that in the email comms, but not attached.

 On Wed, Jan 27, 2021 at 11:13 AM Jordon Scarlett <jscarlett@better.com> wrote:
 Hi Kenna and McKinzey,

 Below is the draft comm that will be sent to US employees later today about the At-Will Employment Agreement, barring any further issues.

 If employees report to people-policies-discuss@better.com alias that the document is not showing up or they did not get the email from Workday, the escalation point is to contact Jillian Smith and Joanne Chung who will look into the matter.

 If an employee simply cannot login to Workday, they should submit a Workday Ticket as indicated in the comm.

 As discussed with McKinzey, he is going to start a tracker for questions sent to the alias. He will handle and track questions pertaining to the document is not showing up for me in Workday or I did not get the email from Workday. The escalation point there is to contact Jillian Smith and Joanne Chung who will look into the matter. I will handle the I do not want to sign this questions and Andrew can handle the this is illegal or I absolutely refuse to sign situations.

 Thanks.

 ---------- Forwarded message ---------
 From: **Jordon Scarlett** <jscarlett@better.com>
 Date: Tue, Jan 26, 2021 at 7:28 PM
 Subject: Re: Draft Email Comm and FAQ on the At-Will Employment Agreement
 To: Derek Johnson <dejohnson@better.com>


 Job aid full link below and also now hyperlinked in message below.

 https://docs.google.com/document/d/1atThJeEJPw_VDLZ7kV7P1BW_GEIEE2UK/edit#

1

BMC0031132

On Tue, Jan 26, 2021 at 7:11 PM Jordon Scarlett <jscarlett@better.com> wrote:
Derek,

Below is a draft of the email communication. I am still waiting on the updated job aid to hyperlink in the message where indicated. Also as indicated below, I have attached a short FAQ which would be sent along with the email. Please let me know your thoughts and obviously feel free to tweak.

Team,

Later today you will be sent an At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement via Workday. You've likely already signed a similar agreement that was included with your offer letter. However, those previous agreements' exact terms and conditions varied as there have been multiple versions over the years. To ensure appropriate protections are in place and that employees' obligations are fair and consistent, all employees must sign the new standardized version.

You will receive an email from Workday titled, "A Task Awaits You . . .".  In the email there will be a hyperlink you will click which will take you into Workday.  Once in Workday please click the eSign by DocuSign button to review and sign the agreement. Once signed, you can view the signed agreement by going into your Personal Information in Workday and selecting Worker Documents under the View column. For more specific details on this process and to see screenshots if needed, please reference this job aid.

If you have questions about the agreement, please refer to the FAQs attached hereto or contact the Employee Experience team at people-policies-discuss@better.com, who can also connect you with someone in Legal as necessary.

If you have any issues accessing Workday, please submit a Workday Ticket.

Thank you.


--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY



--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY



--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY



--
**KENNA MEYERHOFF** | Director, Employee Experience | Better | 175 Greenwich St., Fl. 59 New York, NY 10007 | (917) 499-3450 |

Confidential

BMC0031133

\-\-

**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY

Confidential

BMC0031134

# EXHIBIT 14

PLACEHOLDER DOCUMENT – UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL

EXHIBIT 15

REDACTED VERSION –
UNREDACTED VERSION
FILED CONDITIONALLY
UNDER SEAL

| **From:** | Alex D'Amico <adamico@better.com> |
| **Sent:** | Friday, October 16, 2020 1:22 PM |
| **To:** | Arthur Matuszewski <amatuszewski@better.com>; Kevin Ryan <kryan@better.com> |
| **Subject:** | Fwd: Ops Incentive Update |
| **Attach:** | edit[1].dat |

For our chat later today - here is the historical request and approval for the ask, including the
﹍ I am asking for another ﹍﹍ on top based on additional "arbitration release" programs I need to layer
into this event.

See the memo attached **here** for details, - the TLDR:

Otherwise, we hope to proceed with the update today.

Thank you
Alex

ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY

---------- Forwarded message ---------
From: **Kasey Mann** <amann@better.com>
Date: Tue, Sep 22, 2020 at 12:53 PM
Subject: Fwd: Ops Incentive Update
To: Odette Lindheim <olindheim@better.com>

---------- Forwarded message ---------
From: **Vishal Garg** <vgarg@better.com>
Date: Wed, Sep 16, 2020 at 1:13 PM
Subject: Re: Ops Incentive Update
To: Benito Piuzzi <bpiuzzi@better.com>
Cc: Megan Bellingham <mbellingham@better.com>, Viral Shah <vshah@better.com>, Sarah Pierce
<spierce@better.com>, Kasey Mann <amann@better.com>, Bear Strayer <bstrayer@better.com>, Dan Quinn
<dquinn@better.com>, Nate Trumbo <ntrumbo@better.com>, Jay Edwards <jedwards@better.com>

Good with me.

Sent from my iPhone

On Sep 16, 2020, at 11:09 AM, Benito Piuzzi <bpiuzzi@better.com> wrote:

Confidential                                                                 BMC0020459

Attached is the latest

Summary of the request is:

- increase on yearly incentive payments
- in one time expense for retention bonus

Let me know if I can help answer any questions or provide additional details

Benito

On Wed, Sep 16, 2020 at 10:18 AM Megan Bellingham <mbellingham@better.com> wrote:
+Sarah Pierce

Hi team,

Please let me know if you have any questions.

Thanks,

On Wed, Sep 16, 2020 at 9:20 AM Viral Shah <vshah@better.com> wrote:
Bumping this.
Megan, does this cover our conversation yesterday, or is there a more up to date memo on the retention bonus?
**VIRAL SHAH** | Co-Founder & Head of Financial Products | Better | 175 Greenwich St., Fl. 59 New York, NY 10006

On Mon, Sep 14, 2020 at 1:18 PM Kasey Mann <amann@better.com> wrote:
Vishal,

Writing as an FBP of the Ops org., to update you on an underwriter incentive increase                    total,
which we hope to put into motion asap. We've received approval from Viral, Sarah and Arthur, and are
flagging to you in keeping with our revised budget policies (informing you as                    )

**Summary:**

See the memo attached **here** for details, and please reach out if you have any questions. Otherwise, we
hope to proceed with the update today.

All the best,
Kasey

--
Kasey Mann | Finance | Better.com
175 Greenwich St. Fl. 59, New York, NY 10007 | M: 717-606-9756

--
**MEGAN BELLINGHAM** | Head of Operations | Better | NMLS 1317620
*Executive Assistant: Coree Rivers (crivers@better.com)*

--
Benito Piuzzi | Head of Operations Strategy | Better.com | 216-255-1703 | 250 Greenwich Street FL 36, New York, NY 10006

--
Kasey Mann | Finance | Better.com
175 Greenwich St. Fl. 59, New York, NY 10007 | M: 717-606-9756

Confidential

# EXHIBIT 16

PLACEHOLDER DOCUMENT – UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL

# EXHIBIT 17

PLACEHOLDER
DOCUMENT –
UNREDACTED
VERSION FILED
CONDITIONALLY
UNDER SEAL

# EXHIBIT 18



# Underwriting Updates

October 2020

Confidential

BMC0020468

# Agenda

- Retaining our talent
- Compensation updates
- Updates

better

Proprietary and confidential    2

BMC0020469



# Retaining our talent

Confidential

BMC0020470

# Retaining our talent

- We are offering a $10,000 retention bonus to all eligible employees
  - You are eligible if you did not already receive a retention bonus
  - You are eligible if you did not receive a $10,000 sign-on bonus
- Retention agreement details
  - We will offer you $10,000 as part of an affirmation of your continued commitment to Better
  - While you remain an at will employee, signing this document is an acknowledgement that you will not pursue other employment opportunities over the next 6 months
  - Retaining the $10,000 retention bonus is contingent upon adhering to this agreement, the employment agreement and this timeline



**better**

Confidential

BMC0020471



# Compensation updates

Confidential

BMC0020472

# Compensation updates

## At Will Employment Agreement

- Everyone at Better will receive
- Includes updates to our current employment agreements
- Must sign for continued employment
- **When to expect:** 10/19

## Comp Letters & Updates

- Everyone at Better will receive
- Includes updates to compensation coming out of compensation review
- Ensure employees understand how they're getting paid
- **When to expect:** Oct 30th

*Timeline:*

- Comp conversation with managers between Oct 26- Oct 30th
- Comp letters hit inbox Oct 30th

## Incentive Terms & Conditions

- Everyone who has incentive as part of their compensation structure at Better will receive
- Ensure employees understand how they're getting paid
- Acknowledgment required by signature
- **When to expect:** Oct 30th

Confidential                                                                                   BMC0020473



# Release of claims

Confidential

BMC0020474

# Release of claims

- We are reviewing a legal claim against the company, alleging that we've misclassified the Underwriting position – stating UW roles should be eligible for overtime pay. We do not believe this allegation to be true.
- With that, we take this extremely seriously, and are undergoing an FLSA audit to ensure correct classification.
- Today, you'll be receiving a **voluntary** release of claims agreement
  - Signing this (again, VOLUNTARY) will give you the right to voluntarily release Better of all claims as it relates to the lawsuit.
  - If you choose to sign, you're eligible for a release payment of $5K
  - If you choose to sign, please do so by Friday 10/23
- We may make adjustments to compensation and classification as necessary coming out of the FLSA audit findings.
- Our ongoing focus will always be on rewarding your performance and contributions to the company.

**better**

Confidential

BMC0020475

# Timeline

| Documents | Population | Date will be received |
|---|---|---|
| Retention Agreement | All Underwriters & Team Leads , Front Line Managers & Regional | 10/19/2020 |
| At Will Employment Agreement | All US Employees | 10/19/2020 |
| Release Agreement | Underwriters and TL | 10/19/2020 |
| Incentive - Terms and Conditions | All US Employees on Incentive Plan | 10/30/2020 |
| Compensation Letters | All US employees | 10/30/2020 |
| Offer Letter Changes | All New Hires (post 10.1.2020) | 10/30/2020 |

better

Confidential

BMC0020476



# Questions? Reach out to your employee experience team OR uw-inquiries@better.com

Confidential                                                                                                              BMC0020477

# EXHIBIT 19

| From: | Google Calendar <calendar-notification@google.com> on behalf of olindheim@better.com |
|---|---|
| Sent: | Thursday, October 29, 2020 2:00 PM |
| To: | arthur@better.com; adamico@better.com; cubol@better.com; olindheim@better.com; nhelfant@better.com |
| Subject: | Project Square |

Agenda

- Update on Cure language (Nicole)
- Update on FLSA Audit (Chay)
- Update on Dominguez lawsuit (Chay)
- Discuss At Will Employee Agreement rollout (Chay/Odette)

---

**Project Square**

When   Thu Oct 29, 2020 2pm – 2:25pm Eastern Time - New York

Where   https://better.zoom.us/j/97913715684?pwd=aGt1ZU40QjlUdlg4WFh6a3lrTXFTdz09 (map)

Who
- adamico@better.com - organizer
- tnorman@better.com - creator
- arthur@better.com
- cubol@better.com
- olindheim@better.com
- nhelfant@better.com

---

Teddy Norman is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://better.zoom.us/j/97913715684?pwd=aGt1ZU40QjlUdlg4WFh6a3lrTXFTdz09

Meeting ID: 979 1371 5684
Passcode: 140536
One tap mobile
+16465588656,,97913715684# US (New York)
+13017158592,,97913715684# US (Germantown)

Dial by your location
      +1 646 558 8656 US (New York)
      +1 301 715 8592 US (Germantown)
      +1 312 626 6799 US (Chicago)
      +1 253 215 8782 US (Tacoma)
      +1 346 248 7799 US (Houston)
      +1 669 900 6833 US (San Jose)
      833 548 0276 US Toll-free
      833 548 0282 US Toll-free
      877 853 5247 US Toll-free

Confidential                                                                                BMC0020556

888 788 0099 US Toll-free
Meeting ID: 979 1371 5684
Find your local number: https://better.zoom.us/u/auvIDol1q

Join by SIP
97913715684@zoomcrc.com

Join by H.323
162.255.37.11 (US West)
162.255.36.11 (US East)
115.114.131.7 (India Mumbai)
115.114.115.7 (India Hyderabad)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia)
149.137.40.110 (Singapore)
64.211.144.160 (Brazil)
69.174.57.160 (Canada)
207.226.132.110 (Japan)
Meeting ID: 979 1371 5684
Passcode: 140536

2

BMC0020557

# EXHIBIT 20

PLACEHOLDER DOCUMENT – UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL

EXHIBIT 21

REDACTED VERSION –
UNREDACTED VERSION
FILED CONDITIONALLY
UNDER SEAL

| **From:** | Alex D'Amico <adamico@better.com> |
| **Sent:** | Tuesday, November 10, 2020 5:44 PM |
| **To:** | Nicholas Calamari; Elana Knoller; Vishal Garg; Sarah Pierce; Odette Lindheim; Arthur Matuszewski |
| **Cc:** | Taylor Ednie; Austin Riggs; Bernadette Quinn; Jacqueline Churchwell |
| **Subject:** | OKR Follow-UP : At Will Agreement |
| **Attachments:** | At Will-Multi-State.pdf |

Hello -

Thank you for the time today. per the call - attached is the At-Will Agreement (Multi-State) up for deployment discussion.

**What we agreed on:**
1. We agreed this should go to every incumbent employee
2.

**What we need to agree on:**
1.

2. If not - What other mitigation options would you suggest?

Change & Comms plan - This will have a change and communication waterfall strategy. Odette will work with legal and Communications once we have agreements.

Looking for feedback by Friday 11/13.


Thanks
Alex




ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY

1

Confidential                                                                                    BMC0020565

EXHIBIT 22

**Please note: The below side by side comparison only reflects substantial changes identified by our team. This is not a complete representation of each change that was made to the new document. You should read the full text of the Agreement and the prior agreement.**

| *New* At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement | *Previous* Proprietary Information and Invention Agreement |
|---|---|
| **Section 2. Confidentiality**<br><br>*Pages 2-3* | **Section 1. Maintaining Confidential Company Information**.<br><br>*Page 1* |
| **Section 8. Covenant Not to Compete and No Solicitation**<br><br>*Pages 4-5* | **Section 5. No Conflicting Employment; Non-Compete; Solicitation Restrictions.**<br><br>*Page 2* |
| | |
| **Section 13. Arbitration and Equitable Relief (also see Exhibit F)**<br><br>*Page 4 and Page 15* | **Not in the existing agreement.** |

BMC0020610

# EXHIBIT 23

# REDACTED VERSION –
# UNREDACTED VERSION
# FILED CONDITIONALLY
# UNDER SEAL

| **From:** | Elana Knoller <eknoller@better.com> |
| **Sent:** | Wednesday, November 11, 2020 9:28 AM |
| **To:** | Alex D'Amico |
| **Cc:** | Arthur Matuszewski; Austin Riggs; Bernadette Quinn; Jacqueline Churchwell; Nicholas Calamari; Odette Lindheim; Sarah Pierce; Taylor Ednie; Vishal Garg |
| **Subject:** | Re: OKR Follow-UP : At Will Agreement |

1 -

2 - we just send it and bother people to do it. You guys will have to figure it out.

On Tue, Nov 10, 2020 at 10:32 PM Alex D'Amico <adamico@better.com> wrote:
Looking for feedback by Friday 11/13.

**What we need to agree on:**
1.

2. If not - What other mitigation options would you suggest?

Change & Comms plan -  This will have a change and communication waterfall strategy. Odette will work with legal and Communications once we have agreements.


ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY


On Tue, Nov 10, 2020 at 8:47 PM Elana Knoller <eknoller@better.com> wrote:
Thanks much. When do we need to review by? Are we having a follow up meeting?

On Tuesday, November 10, 2020, Odette Lindheim <olindheim@better.com> wrote:
See attached two documents.

- The Proprietary Information and Inventions Agreement is the "old" document.
- The At Will Employee Agreement is the "new" document under discussion.

A side by side of the sections you should pay attention to can be found here. They are highlighted in yellow in each respective document.


On Tue, Nov 10, 2020 at 6:17 PM Odette Lindheim <olindheim@better.com> wrote:
Yes - let me pull it together and send shortly.

On Tue, Nov 10, 2020 at 6:02 PM Alex D'Amico <adamico@better.com> wrote:
Odette- can you help call this out for the group?
thanks

1

                                                                                   BMC0020611

ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY


On Tue, Nov 10, 2020 at 5:55 PM Elana Knoller <eknoller@better.com> wrote:
Thanks - we asked for the new stuff to be highlighted and where applicable compared side by side w the language from the old stuff.

On Tuesday, November 10, 2020, Alex D'Amico <adamico@better.com> wrote:
  Hello -

Thank you for the time today. per the call  - attached is the At-Will Agreement (Multi-State) up for deployment discussion.

**What we agreed on:**
1. We agreed this should go to every incumbent employee
2.


**What we need to agree on:**
1.

2. If not - What other mitigation options would you suggest?

Change & Comms plan -  This will have a change and communication waterfall strategy. Odette will work with legal and Communications once we have agreements.

Looking for feedback by Friday 11/13.


Thanks
Alex




ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY


--
**ELANA KNOLLER** | Chief Product Officer | Better Mortgage | 3 World Trade Center, 59th Floor, New York, NY 10012 | (917) 566-0901

2

                                                          BMC0020612

--
**ELANA KNOLLER** | Chief Product Officer | Better Mortgage | 3 World Trade Center, 59th Floor, New York, NY 10012 | (917) 566-0901

--
**ELANA KNOLLER** | Chief Product Officer | Better Mortgage | 3 World Trade Center, 59th Floor, New York, NY 10012 | (917) 566-0901

3

Confidential

BMC0020613

EXHIBIT 24

## AT-WILL EMPLOYMENT, CONFIDENTIAL INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT

As a condition of my employment with Better Holdco, Inc., Better Mortgage Corporation, or Better Real Estate, LLC, as applicable (applicable entity referenced as the "**Company**") (together with the Company's divisions, affiliates, sister corporations, parents, and subsidiaries, the "**Company Group**"), and in consideration of my employment with the Company and my receipt of compensation paid to me by the Company, I agree to the following provisions of this Company At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (this "**Agreement**").

### 1. AT-WILL EMPLOYMENT

I understand and acknowledge that my employment with the Company is for no specified term and constitutes "at-will" employment. I also understand that any representation to the contrary is unauthorized and not valid unless in writing and signed by the CEO or General Counsel of the Company. Accordingly, I acknowledge that my employment relationship may be terminated at any time, with or without good cause or for any or no cause, at my option or at the option of the Company, with or without notice. I further acknowledge that the Company may modify job titles, salaries, and benefits from time to time as it deems necessary.

### 2. CONFIDENTIALITY

I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information (as defined below). I will not (i) use Company Confidential Information for any purpose whatsoever other than for the benefit of the Company Group in the course of my employment, (ii) disclose Company Confidential Information to any unauthorized third party, or (iii) publish or submit for publication, any article or book relating to or containing Company Confidential Information, without the prior written authorization of the General Counsel of the Company. I agree that I obtain no title to any Company Confidential Information, and that the Company Group retains all Confidential Information as the sole property of the Company Group. I understand that my unauthorized use or disclosure of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company Group. I understand that my obligations under this section shall continue after termination of my employment.

I understand that "**Company Confidential Information**" means information (including any and all combinations of individual items of information) that the Company Group has or will develop, acquire, create, compile, discover or own, that has value in or to the Company Group's business which is not generally known and which the Company Group wishes to maintain as confidential. Company Confidential Information includes both information disclosed by the Company Group to me, and information developed or learned by me during the course of my employment with the Company, and unauthorized disclosure of which could be detrimental to the interests of the Company Group. By example, and without limitation, Company Confidential Information includes any and all non-public information that relates to the actual or anticipated business and/or products, research or development of the Company Group, or to the Company Group's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company Group's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company Group on which I called or with which I may become acquainted during the term of my employment), software, developments, inventions, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company Group either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company Group property.

I further recognize that the Company Group has received, and in the future may receive information from third parties (for example, customers, suppliers, licensors, licensees, partners, and collaborators) which the Company Group is required to maintain and treat as confidential or proprietary information of such third party. I agree to use such third party confidential information only as directed by the Company Group and to not use or

BMC0020591

disclose such third party confidential information in a manner that would violate the Company Group's obligations to such third parties. I agree at all times during my employment with the Company and thereafter that I owe the Company Group and its associated third parties a duty to hold all such third party confidential information in the strictest confidence, and not to use it or to disclose it to any person, firm, corporation, or other third party except as necessary in carrying out my work for the Company consistent with the Company Group's agreement with such third parties. I further agree to comply with any and all Company Group policies and guidelines that may be adopted from time to time regarding associated third parties.

Notwithstanding the foregoing, Company Confidential Information shall not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by the Company Group to me; (ii) becomes publicly known or made generally available after disclosure by the Company Group to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company Group. To the extent that I have any question as to whether information qualifies as Company Confidential Information, I agree to contact the Company's General Counsel and obtain his or her permission before using or disclosing such information in any way. Similarly, prior to disclosure when compelled by applicable law, I shall provide prior written notice to the General Counsel of the Company. I understand that nothing in this Agreement limits employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law.

### 3.   FORMER EMPLOYER CONFIDENTIAL INFORMATION

I agree that during my employment with the Company, I will not improperly use, disclose, or induce the Company Group to use any proprietary information or trade secrets of any former employer or other person or entity with which I have an obligation to keep such proprietary information or trade secrets in confidence. I further agree that I will not bring onto the Company Group's premises or transfer onto the Company Group's technology systems any unpublished document, proprietary information, or trade secrets belonging to any such third party unless disclosure to, and use by, the Company Group has been consented to in writing by such third party and the Company.

### 4.   INVENTIONS AND OWNERSHIP

I have read, understand, and agree to the terms of the Company's Invention Ownership Policy, as described in Exhibit A to this Agreement. In addition, to the extent applicable, I have disclosed on Exhibit A all prior inventions that I have developed entirely on my own time and are entirely unrelated to the Company and any Company Confidential Information, and which inventions I agree not to incorporate into a Company product, process or service without the Company's prior written consent.

### 5.   CONFLICTING OBLIGATIONS

I agree that during the term of my employment with the Company, I will not engage in or undertake any other employment, occupation, consulting relationship, or commitment that is directly related to the business in which the Company Group is now involved or becomes involved or has plans to become involved, nor will I engage in any other activities that conflict with my obligations to the Company.

In addition, I represent that I have no other agreements, relationships, or commitments to any other person or entity that conflict with the provisions of this Agreement, my obligations to the Company under this Agreement, or my ability to become employed and perform the services for which I am being hired by the Company. I further agree that if I have signed a confidentiality agreement or similar type of agreement with any former employer or other entity, I will comply with the terms of any such agreement to the extent that its terms are lawful under applicable law. I represent and warrant that after undertaking a careful search (including searches of my computers, cell phones, electronic devices, and documents), I have returned all property and confidential information belonging to all prior employers (and/or other third parties I have performed services for in accordance with the terms of my applicable agreement). Moreover, I agree to fully indemnify the Company

2

Group, its directors, officers, agents, employees, investors, shareholders, administrators, affiliates, divisions, subsidiaries, predecessor and successor corporations, and assigns for all verdicts, judgments, settlements, and other losses incurred by any of them resulting from my breach of my obligations under any agreement with a third party, as well as any reasonable attorneys' fees and costs, except as prohibited by law.

6. **COMPANY PROPERTY AND MATERIALS**

I understand that anything that I create or work on for the Company Group while working for the Company belongs solely to the Company and that I cannot remove, retain, or use such information without the Company's express written permission. Accordingly, upon separation from employment with the Company or upon the Company's request at any other time, I will immediately deliver to the Company, and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information (including third party confidential information), all Company equipment including all Company computers, external storage devices, thumb drives, mobile devices and other electronic media devices ("Electronic Media Equipment"), all tangible embodiments of the Inventions, all electronically stored information and passwords to access such information, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property. I understand that I may keep a copy of the Company's employee handbook and personnel records relating to my employment.

In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained in Company Electronic Media Equipment before I return the information to the Company.

In addition, if I have used any personal Electronic Media Equipment or personal computer servers, messaging and email systems or accounts, applications for computers or mobile devices, and web-based services ("Electronic Media Systems") to create, receive, store, review, prepare or transmit any Company information, including, but not limited to, Company Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and, if I locate such information, I agree to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems. I agree to cooperate reasonably with the Company to verify that the necessary copying is completed (including upon request providing a sworn declaration confirming the return of property and deletion of information), and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information.

I understand that I have no expectation of privacy in Company property, and I agree that any Company property is subject to inspection by Company Group personnel at any time with or without further notice. As to any personal Electronic Media Equipment or personal Electronic Media Systems that I have used for Company purposes, I agree that the Company, at its sole discretion, may have reasonable access, as determined by the Company in good faith, to such personal Electronic Media Equipment or personal Electronic Media Systems to review, retrieve, destroy, or ensure the permanent deletion of Company information from such equipment or systems or to take such other actions necessary to protect the Company Group or Company property, as determined by the Company Group reasonably and in good faith. I also consent to an exit interview and an audit to confirm my compliance with this section, and I will certify in writing that I have complied with the requirements of this section.

7. **TERMINATION OBLIGATIONS**

Upon separation from employment with the Company, I agree to: (i) immediately update all of my social media accounts, including but not limited to Facebook, LinkedIn, Instagram, and Twitter, to delete any information, assertions, or suggestions to the effect that I am a current employee of the Company or am otherwise currently affiliated with the Company in any way;   (ii) immediately sign and deliver to the Company the

3

BMC0020593

"**Termination Certification**" attached hereto as <u>Exhibit B</u>; and, (iii) upon the Company's request, participate in good faith in an exit interview with the Company.

### 8. COVENANT NOT TO COMPETE AND NO SOLICITATION

A. *Covenant Not to Compete.* I agree that during the course of my employment and for a period of twelve (12) months immediately following the termination of my relationship with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not, without the prior written consent of the Company, whether paid or not: (i) serve as a partner, principal, licensor, licensee, employee, consultant, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, or otherwise for, (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, control, invest in, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations are in any respect involved in the Covered Business. For the purposes of this Agreement, "**Covered Business**" shall mean any business in which the Company is engaged or in which the Company has plans to be engaged, or any service that the Company provides or has plans to provide. The foregoing covenant shall cover my activities in every part of the Territory. "**Territory**" shall mean (i) all counties in the state or commonwealth in which I work for the Company at the commencement of my employment; (ii) all other states of the United States of America in which the Company provided goods or services, had customers, or otherwise conducted business at any time during the two-year period prior to the date of the termination of my relationship with the Company; and (iii) any other countries from which the Company provided goods or services, had customers, or otherwise conducted business at any time during the two-year period prior to the date of the termination of my relationship with the Company.

Should I obtain other employment during my employment with the Company or within twelve (12) months immediately following the termination of my relationship with the Company, I agree to provide written notification to the Company with the name and address of my new employer, the position that I expect to hold, and a description of my duties and responsibilities, at least five (5) business days prior to starting such employment. In connection with such notice, I may also ask the Company to waive its right to enforce the covenant not to compete set forth above in this Section 8.A. with respect to such employment. I agree that in seeking such waiver, I must also provide the Company with the division or group in which I will work, the name of my direct supervisor, written confirmation that I was not recruited or solicited by a current or former employee of the Company, and, to the extent not already provided, an executed copy of <u>Exhibit B</u> to this Agreement. The Company will consider whether to grant such a waiver in its good faith, sole discretion, provided, however, that I acknowledge that no such request for waiver will be considered if I do not timely provide all of the foregoing information and documentation and any other information the Company may request. I further acknowledge that no such waiver will be valid beyond the proposed employment for which I have provided notice and not any other employment, engagement, or relationship. The Company's decision to grant a waiver shall not affect in any way my remaining obligations under this Agreement, nor prejudice the Company's ability to enforce such obligations.

i. *Exception for North Carolina Employees*. If at the time my employment with the Company commences I work for the Company in the State of North Carolina, I acknowledge that **Section A** will apply only to post-termination activity in which I participate in the same role or similar scope as in my employment with the Company.

B. *No Solicitation.*

i. *Non-Solicitation of Customers.* I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I shall not contact, or cause to be contacted, directly or indirectly, or engage in any form of oral, verbal, written, recorded, transcribed, or electronic communication with any Customer for the purposes of conducting business that is competitive or similar to that of the Company Group or for the purpose of disadvantaging the Company Group's business in any way. For the purposes of this Agreement, "**Customer**" shall mean all persons or entities that have (a) used or inquired of the Company's services at any

4

BMC0020594

time during the two-year period preceding the termination of my employment with the Company, or (b) used or inquired of the services of any Company Group member during the two-year period preceding the termination of my employment with the Company and with whom I had contact during that period. I acknowledge and agree that the Customers did not use or inquire of the Company Group's services solely as a result of my efforts, and that the efforts of other Company Group personnel and resources are responsible for the Company Group's relationship with the Customers. I further acknowledge and agree that the identity of the Customers is not readily ascertainable or discoverable through public sources, and that the Company Group's list of Customers was cultivated with great effort and secured through the expenditure of considerable time and money by the Company Group.

        ii.    *Non-Solicitation of Employees.*  I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not directly or indirectly hire, solicit, or recruit, or attempt to hire, solicit, or recruit, any employee of the Company Group to leave their employment with the member of the Company Group that employs them, nor will I contact any employee of the Company Group, or cause an employee of the Company Group to be contacted, for the purpose of leaving employment with the Company Group.

        iii.   *Non-Solicitation of Others.*  I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not solicit, encourage, or induce, or cause to be solicited, encouraged or induced, directly or indirectly, any franchisee, joint venture, supplier, vendor or contractor who conducted business with the Company Group at any time during the two year period preceding the termination of my employment with the Company, to terminate or adversely modify any business relationship with the Company Group or not to proceed with, or enter into, any business relationship with the Company Group, nor shall I otherwise interfere with any business relationship between the Company Group and any such franchisee, joint venture, supplier, vendor or contractor.

        C.  *Acknowledgements.*  I acknowledge that I will derive significant value from the Company Group's agreement to provide me with Company Confidential Information to enable me to optimize the performance of my duties to the Company. I further acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to disclose nor to use Company Confidential Information other than for the Company Group's exclusive benefit and my obligations not to compete and not to solicit contained in subsections A. and B. above, is necessary to protect Company Confidential Information and, consequently, to preserve the value and goodwill of the Company Group. I also acknowledge the time, geographic and scope limitations of my obligations under subsections A. and B. above are fair and reasonable in all respects, especially in light of the Company's need to protect Company Confidential Information and the international scope and nature of the Company Group's business, and that I will not be precluded from gainful employment if I am obligated not to compete with the Company or solicit its customers or others during the period and within the Territory as described above. In the event of my breach or violation of this **Section 7**, or good faith allegation by the Company of my breach or violation of this **Section 7**, the restricted periods set forth in this **Section 7** shall be tolled until such breach or violation, or dispute related to an allegation by the Company that I have breached or violated this **Section 7**, has been duly cured or resolved, as applicable.

        D.  *Separate Covenants.*  The covenants contained in subsections A. and B. above shall be construed as a series of separate covenants, one for each city, county and state of any geographic area in the Territory. Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenant contained in subsections A. and B. above. If, in any judicial or arbitral proceeding, a court or arbitrator refuses to enforce any of such separate covenants (or any part thereof), then such unenforceable covenant (or such part) shall be revised, or if revision is not permitted it shall be eliminated from this Agreement, to the extent necessary to permit the remaining separate covenants (or portions thereof) to be enforced. In the event that the provisions of subsections A. and B. above are deemed to exceed the time, geographic or scope limitations permitted by applicable law, then such provisions shall be reformed to the maximum time, geographic or scope

5

BMC0020595

limitations, as the case may be, then permitted by such law.  In the event that the applicable court or arbitrator does not exercise the power granted to it in the prior sentence, I and the Company agree to replace such invalid or unenforceable term or provision with a valid and enforceable term or provision that will achieve, to the extent possible, the economic, business and other purposes of such invalid or unenforceable term

### 9. NOTIFICATION OF NEW EMPLOYER

In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement.

### 10. CONFLICT OF INTEREST GUIDELINES

I agree to diligently adhere to all policies of the Company Group, including the Company's insider trading policies, the Company's Conflict of Interest Guidelines, which is attached as <u>Exhibit C</u> to this Agreement, and the Company's Data and Information Security Policy, which has also been provided to me.  I understand that these Conflict of Interest Guidelines and the Data and Information Security Policy may be revised from time to time during my employment.

### 11. REPRESENTATIONS

Without limiting my obligations under the Invention Ownership Policy, I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement.  I represent and warrant that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company.  I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

### 12. AUDIT

I acknowledge that I have no reasonable expectation of privacy in any Company Electronic Media Equipment or Company Electronic Media Systems. All information, data, and messages created, received, sent, or stored in Company Electronic Media Equipment or Company Electronic Media Systems are, at all times, the property of the Company. As such, the Company Group has the right to audit and search all such items and systems, without further notice to me, to ensure that the Company Group is licensed to use the software on the Company Group's devices in compliance with the Company Group's software licensing policies, to ensure compliance with the Company Group's policies, and for any other business-related purposes in the Company Group's sole discretion.

I understand that it is my responsibility to comply with the Company Group's policies governing use of the Company Group's documents and the internet, email, telephone, and technology systems to which I will have access in connection with my employment.  In addition, as to any personal Electronic Media Equipment or personal Electronic Media Systems or other personal property that I have used for Company purposes, I agree that the Company Group may have reasonable access to such personal Electronic Media Equipment or personal Electronic Media Systems or other personal property to review, retrieve, destroy, or ensure the permanent deletion of Company Group information from such equipment or systems or property or take such other actions that are needed to protect the Company Group or Company property, as determined by the Company Group reasonably and in good faith.

I am aware that the Company Group has or may acquire software and systems that are capable of monitoring and recording all Company Group network traffic to and from any Company Electronic Media Equipment or Company Electronic Media Systems. The Company Group reserves the right to access, review, copy, and delete any of the information, data, or messages accessed through Company Electronic Media Equipment or Company Electronic Media Systems, with or without notice to me and/or in my absence. This includes, but is not limited to, all e-mail messages sent or received, all website visits, all chat sessions, all news group activity (including groups visited, messages read, and postings by me), and all file transfers into and out of

Confidential

BMC0020596

the Company Group's internal networks. The Company Group further reserves the right to retrieve previously deleted messages from e-mail or voicemail and monitor usage of the Internet, including websites visited and any information I have downloaded. In addition, the Company Group may review Internet and technology systems activity and analyze usage patterns, and may choose to publicize this data to assure that technology systems are devoted to legitimate business purposes.

**13. ARBITRATION AND EQUITABLE RELIEF**

I have read, understand, and agree to the terms of the Arbitration Agreement, as described in Exhibit F to this Agreement. Specifically, I agree that in consideration of my employment with the Company, its promise to arbitrate all employment-related disputes with me, and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, any and all controversies, claims, or disputes that I may have with the Company (including any Company Group employee, officer, director, trustee, shareholder or benefit plan of the Company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment or relationship with the Company or the termination of my employment or relationship with the Company, including any breach of this agreement, shall be subject to binding arbitration as described in Exhibit F.

**14. MISCELLANEOUS**

A.  *Governing Law; Consent to Personal Jurisdiction*. With the exception of the arbitration requirements as set forth in Exhibit F, this Agreement will be governed by the laws of the State of New York without regard to New York's conflicts of law rules that may result in the application of the laws of any jurisdiction other than New York.  To the extent that any lawsuit is permitted under this Agreement, I expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in New York for any lawsuit filed against me by the Company.

B.  *Waiver of Trial by Jury*.  To the extent that any lawsuit is permitted under this Agreement, I irrevocably and unconditionally waive my right to a trial by jury in any lawsuit directly or indirectly arising out of or relating to this agreement or my relationship with the Company and acknowledge that I am knowingly and voluntarily waiving my right to a trial by jury.

i.  *Exception for North Carolina Employees*. This Section shall not apply to me if I work for the Company in the State of North Carolina at the time my employment with the Company commences.

C.  *Assignability*.   This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives, and will be for the benefit of the Company, its successors, and its assigns.   Notwithstanding anything to the contrary herein, the Company may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of the Company's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, or otherwise.

D.  *Entire Agreement*. This Agreement, together with its Exhibits and any executed written offer letter between me and the Company, to the extent such materials are not in conflict with this Agreement, sets forth the entire agreement and understanding between the Company and me with respect to the subjects covered in this Agreement and supersedes all prior written and oral agreements, discussions, or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations. Any subsequent changes in my duties, compensation, conditions or any other terms of my employment will not affect the validity or scope of this Agreement.

E.  *Severability*.  If a court or other body of competent jurisdiction finds, or the parties to this Agreement mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of this Agreement will continue in full force and effect.

7

BMC0020597

F. *Modification, Waiver.* No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the CEO or General Counsel of the Company and me. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach. For the avoidance of doubt, I agree that change in my duties, title, or compensation will not affect in any respect the validity, enforceability, or scope of this Agreement.

G. *Survivorship.* The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

### 15. PROTECTED ACTIVITY NOT PROHIBITED

I understand that nothing in this Agreement limits or prohibits me from filing a charge or complaint with, or otherwise communicating or cooperating with or participating in any investigation or proceeding that may be conducted by, any federal, state or local government agency or commission, including the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, and the National Labor Relations Board ("**Government Agencies**"), including disclosing documents or other information as permitted by law, without giving notice to, or receiving authorization from, the Company. Notwithstanding, in making any such disclosures or communications, I agree to take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Company Confidential Information to any parties other than the Government Agencies. I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product. In addition, I hereby acknowledge that the Company has provided me with notice in compliance with the Defend Trade Secrets Act of 2016 regarding immunity from liability for limited disclosures of trade secrets. The full text of the notice is attached in Exhibit D.

Date: _____          _____
                                                 Signature


                                                 _____
                                                 Name of Employee (typed or printed)

8

## EXHIBIT A

### Company's Invention Ownership Policy

A. *Assignment of Inventions.*  As between the Company and myself, I agree that all right, title, and interest in and to any and all copyrightable material, notes, records, ideas, drawings, designs, logos, inventions, improvements, developments, discoveries and trade secrets conceived, discovered, authored, invented, developed or reduced to practice by me, solely or in collaboration with others, during the period of time I am in the employ of the Company (including during my off-duty hours), or with the use of the Company's equipment, supplies, facilities, or Company Confidential Information, and any copyrights, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing, except as provided in **Section G** below (collectively, "**Inventions**"), are the sole property of the Company.  I also agree to promptly make full written disclosure to the Company of any Inventions, and to deliver and assign and hereby irrevocably assign fully to the Company all of my right, title and interest in and to Inventions.  I agree that this assignment includes a present conveyance to the Company of ownership of Inventions that are not yet in existence.  I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act.  I understand and agree that the decision whether or not to commercialize or market any Inventions is within the Company's sole discretion and for the Company's sole benefit, and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

B. *Pre-Existing Materials.*  I will inform the Company in writing before incorporating any inventions, discoveries, ideas, original works of authorship, developments, improvements, trade secrets and other proprietary information or intellectual property rights owned by me or in which I have an interest prior to, or separate from, my employment with the Company, including without limitation, any such inventions that meet the criteria set forth herein under **Section G** ("**Prior Inventions**") into any Invention or otherwise utilizing any such Prior Invention in the course of my employment with the Company, and the Company is hereby granted a nonexclusive, royalty-free, perpetual, irrevocable, transferable worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Inventions, without restriction, including, without limitation, as part of or in connection with such Invention, and to practice any method related thereto.  I will not incorporate any inventions, discoveries, ideas, original works of authorship, developments, improvements, trade secrets and other proprietary information or intellectual property rights owned by any third party into any Invention without the Company's prior written permission.  I have provided below, in this Exhibit A, a list describing all Prior Inventions that relate to the Company's current or anticipated business, products, or research and development or, if no such list is attached, I represent and warrant that there are no such Prior Inventions.  Furthermore, I represent and warrant that if any Prior Inventions are included on this Exhibit A, they will not materially affect my ability to perform all obligations under this Agreement.

C. *Moral Rights.*  Any assignment to the Company of Inventions includes all rights of attribution, paternity, integrity, modification, disclosure and withdrawal, and any other rights throughout the world that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively, "**Moral Rights**").  To the extent that Moral Rights cannot be assigned under applicable law, I hereby waive and agree not to enforce any and all Moral Rights, including, without limitation, any limitation on subsequent modification, to the extent permitted under applicable law.

D. *Maintenance of Records.*  I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company.  The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company.  As between the Company and myself, the records are and will be available to and remain the sole property of the Company at all times.

BMC0020599

E.  *Further Assurances*.  I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments, and all other instruments that the Company shall deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights, and in order to deliver, assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title, and interest in and to all Inventions, and testifying in a suit or other proceeding relating to such Inventions.  I further agree that my obligations under this **Section Error! Reference source not found.** shall continue after the termination of this Agreement.

F.  *Attorney-in-Fact*.  I agree that, if the Company is unable because of my unavailability, mental or physical incapacity, or for any other reason to secure my signature with respect to any Inventions, including, without limitation, for the purpose of applying for or pursuing any application for any United States or foreign patents or mask work or copyright registrations covering the Inventions assigned to the Company in **Section 0**, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf to execute and file any papers and oaths, and to do all other lawfully permitted acts with respect to such Inventions to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by me. This power of attorney shall be deemed coupled with an interest, and shall be irrevocable.

G.  *Exception to Assignments*.  I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any Invention that I have developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secret information or Company Confidential Information (an "Other Invention") except for those Other Inventions that either (i) relate at the time of conception or reduction to practice of such Other Invention to the Company's business, or actual or anticipated research or development of the Company or (ii) result from or relate to any work that I performed for the Company or to any Company Confidential Information or Inventions, or if I work for the Company in North Carolina at the time such Other Invention is conceived or reduced to practice, except for those Other Inventions that qualify fully under the provisions of the applicable state-specific statute in <u>Exhibit E</u>.  I will not incorporate, or permit to be incorporated, any Other Invention owned by me or in which I have an interest into a Company product, process or service without the Company's prior written consent.   Notwithstanding the foregoing sentence, if, in the course of my employment with the Company, I incorporate into a Company product, process, or service an Other Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, transferable, sublicensable, worldwide license to reproduce, make derivative works of, distribute, perform, display, import, make, have made, modify, use, sell, offer to sell, and exploit in any other way such Other Invention, and to practice any method related thereto. I agree to advise the Company promptly in writing of any Inventions that I believe meet the criteria of this Section G, and are not otherwise disclosed below, to permit a determination of ownership by the Company.  Any such disclosure will be received in confidence.

2

BMC0020600

## LIST OF PRIOR INVENTIONS
## AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

\_\_\_ No inventions or improvements

\_\_\_ Additional Sheets Attached

Date: _____

_____
Signature

_____
Name of Employee (typed or printed)

3

Confidential

**EXHIBIT B**

**TERMINATION CERTIFICATION**

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, any other documents or property, or reproductions of any and all aforementioned items belonging the Company.  Notwithstanding the foregoing, I understand that I may keep a copy of the Company's employee handbook and personnel records relating to me.  I further certify that I have updated all of my social media accounts to delete any information, assertions, or suggestions to the effect that I am a current employee of the Company or am otherwise currently affiliated with the Company in any way.

I further certify that I have complied with all the terms of the Company's At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (the "**Agreement**") signed by me, including the reporting of any inventions and original works of authorship (as defined therein) conceived or made by me (solely or jointly with others), as covered by that Agreement.

I understand that pursuant to the Agreement, and subject to its protected activity exclusion, I am obligated to preserve, as confidential, all Company Confidential Information and Associated Third Party Confidential Information, including trade secrets, confidential knowledge, data, or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information, or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants, or licensees.

I also agree that for twelve (12) months from this date, I will comply with the non-competition (as applicable) and non-solicitation provisions, as set forth in this Agreement.

After leaving the Company's employment, I will be employed by _____ in the position of _____.

Date: _____     _____
                                                                        Signature

                                                                         _____
                                                                         Name of Employee (typed or printed)

Address for Notifications:     _____

                                            _____

## EXHIBIT C

## CONFLICT OF INTEREST GUIDELINES

It is the policy of the Company to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all officers, employees, and independent contractors must avoid activities that are in conflict, or give the appearance of being in conflict, with these principles and with the interests of the Company. The following are potentially compromising situations that must be avoided:

1. Revealing confidential information to outsiders or misusing confidential information. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended.

2. Accepting or offering substantial gifts, excessive entertainment, favors, or payments that may be deemed to constitute undue influence or otherwise be improper or embarrassing to the Company.

3. Participating in civic or professional organizations that might involve divulging confidential information of the Company.

4. Initiating or approving personnel actions affecting reward or punishment of employees or applicants where there is a family relationship or is or appears to be a personal or social involvement.

5. Initiating or approving any form of personal or social harassment of employees.

6. Investing or holding outside directorship in suppliers, customers, or competing companies, where such investment or directorship might influence in any manner a decision or course of action of the Company.

7. Borrowing from or lending to employees, customers, or suppliers.

8. Acquiring real estate of interest to the Company.

9. Improperly using or disclosing to the Company any proprietary information or trade secrets of any other employer or other person or entity with whom obligations of confidentiality exist.

10. Unlawfully discussing costs, customers, sales, or markets with competitors or their employees.

11. Making any unlawful agreement with distributors with respect to prices.

12. Improperly using or authorizing the use of any inventions that are the subject of patent claims of any other person or entity.

13. Engaging in any conduct that is not in the best interest of the Company.

Each officer, employee, and independent contractor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of higher management for review. Violations of this conflict of interest policy may result in discharge without warning.

These guidelines are not intended to limit employees' rights to discuss the terms, wages, and working conditions of their employment, as protected by applicable law, including any rights an employee may have under Section 7 of the National Labor Relations Act. Also, nothing in these guidelines limits or prohibits an employee from filing a charge or complaint with, or otherwise communicating or cooperating with or participating in any investigation or proceeding that may be conducted by, any federal, state or local government agency or commission, including the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, and the National Labor Relations Board ("**Government Agencies**"), including disclosing documents or other information as permitted by law, without giving notice to, or receiving authorization from, the Company. Notwithstanding, in making any such disclosures or communications, employees must take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Company Confidential Information to any parties other than the Government Agencies. Employees may not disclose the Company's attorney-client privileged communications or attorney work product.

BMC0020603

## EXHIBIT D

## SECTION 7 OF THE DEFEND TRADE SECRETS ACT OF 2016

"IMMUNITY FROM LIABILITY FOR CONFIDENTIAL DISCLOSURE OF A TRADE SECRET TO THE GOVERNMENT OR IN A COURT FILING—

(1) IMMUNITY.—An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(2) USE OF TRADE SECRET INFORMATION IN ANTI-RETALIATION LAWSUIT.—An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual—(A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order."

BMC0020604

## EXHIBIT E

*If you ("Assignor") are a resident of North Carolina, then the following applies:*

No provision in this Agreement requires Assignor to assign any of his or her rights to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on Assignor's own time, unless (a) the invention relates (i) to the business of the Company or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Assignor for the Company. Delaware Code Title 19 Section 805; Illinois 765 ILCS 1060/1-3, "Employees Patent Act"; Kansas Statutes Section 44-130; New Jersey Revised Statutes Section 34:1B-265; North Carolina General Statutes Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

BMC0020605

## EXHIBIT F

## ARBITRATION AGREEMENT

A. *Arbitration.* In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes with me, and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, I agree that, except as set forth in **Section A.i.** below, any and all controversies, claims, or disputes that I have or may in the future have with the Company (including any Company Group employee, officer, director, trustee, shareholder or benefit plan of the Company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment or relationship with the Company or the termination of my employment or relationship with the Company, including any breach of this agreement, shall be subject to binding arbitration under the Federal Arbitration Act (the "**FAA**") and that the FAA shall govern and apply to this arbitration agreement with full force and effect. I agree that I may only commence an action in arbitration, or assert counterclaims in an arbitration, on an individual basis and, thus, I hereby waive my right to commence or participate in any class or collective action(s) against the Company. Disputes that I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under local, state, or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Fair Labor Standards Act, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act, the Fair Credit Reporting Act, the Employee Retirement Income Security Act of 1974, the Family and Medical Leave Act, the statutes of the state in which I work for the Company at the commencement of my employment, North Carolina statutes, New York statutes, claims relating to employment status, classification and relationship with the Company, claims of wrongful termination, breach of contract, and any statutory or common law claims. I also agree to arbitrate any and all disputes arising out of or relating to the interpretation or application of this agreement to arbitrate, but not disputes about the enforceability, revocability or validity of this agreement to arbitrate or any portion hereof or the class, collective and representative proceeding waiver herein. With respect to all such claims and disputes that I agree to arbitrate, I hereby expressly agree to waive, and do waive, any right to a trial by jury. I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me. I understand that nothing in this agreement requires me to arbitrate claims that cannot be arbitrated under applicable law, including the Sarbanes-Oxley Act.

i. *Exception for discrimination claims.* Notwithstanding **Section A**, I understand that the arbitration provision does not apply to any controversies, claims, or disputes alleging or asserting claims of discrimination.

ii. *Exception for harassment claims.* Notwithstanding **Section A**, I understand that the arbitration provision does not apply to any controversies, claims, or disputes alleging or asserting claims of harassment.

B. *Procedure.* I agree that any arbitration will be administered by JAMS pursuant to its Employment Arbitration Rules & Procedures (the "**JAMS Rules**"), which are available at http://www.jamsadr.com/rules-employment-arbitration/ and from Human Resources, provided, however, that the JAMS Rules shall not contradict or otherwise alter the terms of this Agreement, including, but not limited to, the below cost sharing provision and **Section B** below, as applicable. The arbitration shall be before a single arbitrator who shall be a former federal or state court judge. The arbitration shall apply the federal rules of civil procedure, except to the extent such rules conflict with the JAMS Rules. The parties shall maintain the confidential nature of the arbitration proceedings, including all discovery associated with the proceedings, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision. I understand that the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration ("**Arbitration Costs**"), except as prohibited by law, and understand that each party shall separately pay its respective attorneys' fees and costs. In the event that jams fails, refuses, or otherwise does not enforce the aforementioned Arbitration Costs

Confidential

sharing provision, either party may commence an action to recover such amounts against the non-paying party in court and the non-paying party shall reimburse the moving party for the attorneys' fees and costs incurred in connection with such action.  I agree that the arbitrator shall consider and shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment and/or adjudication, and motions to dismiss, prior to any arbitration hearing.  I agree that the arbitrator shall issue a written decision on the merits.  I also agree that the arbitrator shall have the power to award any remedies available under applicable law.  I agree that the decree or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof.  I agree that the arbitrator shall apply substantive new york law to any dispute or claim, without reference to rules of conflict of law.  To the extent that the JAMS Rules conflict with substantive New York law, New York law shall take precedence.  I agree that arbitration under this agreement shall be conducted in New York, New York.

C.  *Remedy.*  Except as prohibited by law or provided by this agreement, arbitration shall be the sole, exclusive and final remedy for any dispute between me and the Company.  Accordingly, neither I nor the Company will be permitted to pursue or participate in a court action regarding claims that are subject to arbitration.

D.  *Availability of injunctive relief.*  I agree that any party may also petition the court for injunctive relief where either party alleges or claims a violation of the At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement between me and the Company or any other agreement regarding trade secrets, confidential information, noncompetition or nonsolicitation.  I understand that any breach or threatened breach of such an agreement will cause irreparable injury and that money damages will not provide an adequate remedy therefor and both parties hereby consent to the issuance of an injunction without posting of a bond.  In the event either party seeks injunctive relief, the prevailing party shall be entitled to recover reasonable costs and attorneys' fees without regard for the prevailing party in the final judgment, if any.  Such attorneys' fees and costs shall be recoverable on written demand at any time, including, but not limited to, prior to entry of a final judgment, if any, by the court, and must be paid within thirty (30) days after demand or else such amounts shall be subject to the accrual of interest at a rate equal to the maximum statutory rate.

E.  *Administrative relief.*  I understand that this agreement does not prohibit me from pursuing an administrative claim with a local, state, or federal administrative body or government agency that is authorized to enforce or administer laws related to employment, including, but not limited to, the Equal Employment Opportunity Commission (and any state or local equivalent agency), the national labor relations board, the securities and exchange commission, or the Workers' Compensation Board.  This Agreement does, however, preclude me from pursuing a court action regarding any such claim, except as permitted by law.

F.  *Voluntary nature of agreement*.  I acknowledge and agree that I have executed this Arbitration Agreement voluntarily and without any duress or undue influence by the Company or anyone else.  I further acknowledge and agree that I have carefully read this agreement and that I have asked any questions needed for me to understand the terms, consequences, and binding effect of this agreement and fully understand it, including that I am waiving my right to a jury trial.  Finally, I agree that I have been provided an opportunity to seek the advice of an attorney of my choice before signing this agreement.

2

BMC0020607

EXHIBIT 25

| | |
|---|---|
| **From:** | Kenna Meyerhoff <kmeyerhoff@better.com> |
| **Sent:** | Monday, January 4, 2021 9:49 AM |
| **To:** | Odette Lindheim; Chayanee Ubol; Nathan Knight; Kelly Dearborn; Jillian Smith; Priti Prabhakar; Rob Lindberg; Jenine Whitter; Maria Munoz; Kara Benton-Smith; Taylor Ednie; Alex D'Amico; Arthur Matuszewski; Jordon Scarlett; Employee Experience Team; Taina Oquendo; Maggie Duvall; Richard Duff |
| **Cc:** | Derek Johnson; Calsi Vice; McKinzey Sayers |
| **Subject:** | Update re: Employee handbook rollout!! WELCOME TO 2021!!! |

Hi everyone,

We wanted to share the most recent updates regarding the handbook and At-Will agreement rollout that will be communicated companywide on **January 6th** *(previously Jan 4th)*.

We are sending out a "Welcome to 2021 by the People Team" email to communicate policy changes and program updates that will impact all Better employees. Three main things to note:

- ***Handbook roll out and changes*** - logistics and what is included in the updated handbook (see light overview below)
- ***Handbook training*** - hosting sessions over the course of two weeks. Details below.
- ***At will agreement*** - to be sent separately, but mentioned in the email we send out to employees this week. More details below.

I wanted to give a **HUGE shout out to everyone** who worked on getting this to the finish line -- and especially to **McKinzey, Calsi, Nathan, Maria, Kelly and Jordon** who have been pushing extremely hard the past two weeks!!! We're almost there :).

If you have any questions, feel free to reach out to the EE team!  Looking forward to a successful 2021 with all of you!

Thank you and Happy New Year!

-Kenna, McKinzey and Calsi

-----

**Handbook Rollout + Changes:**
The Handbook will be sent out via KnowBe4 and will require employees to acknowledge that they have read the updated handbook. Please note that the 2021 version was based off of the 2019 version and the main changes include:

- **Time Off/Leaves of Absence:** We added a section clarifying the company's philosophy on time off and leaves of absence.
    - We ensured that our policy is clear around medical and family leaves of absence, clarified pay entitlement, and eligibility requirements.
    - For parental bonding, we updated our pay entitlement requirements to be consistent with the following:

1

BMC0020651

- <90 days of tenure: 4 weeks of pay
- 90 days to 24 months of tenure: 12 weeks of pay
- 24 months+ of tenure: 20 weeks of pay
  - We clarified eligibility and pay entitlements for personal leaves of absence.
  - We added additional information and expectations regarding our Flexible PTO policy.
- **Internal Mobility Policy:** We expanded on our criteria for internal transfers and provided additional insight into the process surrounding internal mobility.
- **Open Door Policy & Employee Helpline:** Recently, the compliance team sent out communications notifying employees of our anonymous helpline, Convercent. The new policy contextualizes how to use the helpline and the Employee Experience team's open-door policy.
- **Standards of Conduct:** Building off of the version of the Standards of Conduct, communicated in August of 2020, we streamlined this policy to ensure that our expectations are more explicit for employees. The updated version is in the Handbook.

**Handbook Training:**

We will host handbook information sessions over the course of two weeks (Jan 11-15 for ICs, Jan 18-22 for Managers) where the EE team will walk through the changes that have been made and the ways that they will impact our employees.

**At-Will Agreement:**

The At-will agreement will not be linked in the email, instead we will mention it to employees and explain that they can expect to receive it in late January (aiming for Jan 25th). Once received, employees will be required to sign the At-Will Agreement.

--

**KENNA MEYERHOFF** | Director, Employee Experience | Better | 175 Greenwich St., Fl. 59 New York, NY 10007 | (917) 499-3450 |

Confidential

BMC0020652

# EXHIBIT 26

# REDACTED VERSION – UNREDACTED VERSION FILED CONDITIONALLY UNDER SEAL

| | |
|---|---|
| **From:** | Alex D'Amico <adamico@better.com> |
| **Sent:** | Wednesday, October 28, 2020 9:13 AM |
| **To:** | Michelle Phillips <mphillips@better.com> |
| **Cc:** | Chayanee Ubol <cubol@better.com>; Odette Lindheim <olindheim@better.com>; Marcelo Rodriguez <mrodriguez@better.com> |
| **Subject:** | Re: UW Payments |

ALEX D'AMICO | Sr. Director People Teams & Talent Strategy
Better.com | WFH-NJ/NY

On Wed, Oct 28, 2020 at 9:04 AM Michelle Phillips <mphillips@better.com> wrote:
  Chayanee,

  There is an issue with processing the requested payroll for pay date of 10/27/2020

On Mon, Oct 19, 2020 at 12:08 PM Chayanee Ubol <cubol@better.com> wrote:
  It's 10K but we did not sort any calc for tax purposes? Is that a manual calculation?

  On Mon, Oct 19, 2020 at 11:59 AM Michelle Phillips <mphillips@better.com> wrote:
    Apologies for the questions - Will the full amount be the correct amount to pay/process or will a manual calculation be required on our end? Thanks.

    On Mon, Oct 19, 2020 at 11:53 AM Odette Lindheim <olindheim@better.com> wrote:
      We;re going to do full amount

      On Mon, Oct 19, 2020 at 11:51 AM Michelle Phillips <mphillips@better.com> wrote:
        Chayanee,

        Happy Monday!!!

        Thanks for the update - Quick Question - will the spreadsheet provide the percentage of pay due currently? Versus the entire amount?   Thanks.

   BMC0022244

On Mon, Oct 19, 2020 at 10:35 AM Chayanee Ubol <cubol@better.com> wrote:
> Hi MIchelle and Marcelo - hope you are doing well. Just wanted to give you a heads up that we're
> getting ready to expedite UW retention payments to our UW (given the scenario we talked about
> last week).
>
> We will send a excel spreadsheet of those who sign the agreement every Thurs to share who we
> should pay out. This was shared with Alyssa as well already but wanted to make sure you were
> aware of these upcoming payments.
>
> PLease let me know if you have any questions.
>
> Thanks!
> Chayanee


--
Kind Regards,

Michelle Phillips
Payroll Manager

**Better**

**Michelle Phillips** | Payroll Manager | Better.com |
3 World Trade Center, 175 Greenwich St Fl. 59, New York, NY 10007


--
Kind Regards,

Michelle Phillips
Payroll Manager

**Better**

**Michelle Phillips** | Payroll Manager | Better.com |
3 World Trade Center, 175 Greenwich St Fl. 59, New York, NY 10007


--
Kind Regards,

Michelle Phillips
Payroll Manager

**Better**

**Michelle Phillips** | Payroll Manager | Better.com |
3 World Trade Center, 175 Greenwich St Fl. 59, New York, NY 10007

Confidential

EXHIBIT 27

| | |
|---|---|
| **From:** | Kacy Prather <kprather@better.com> |
| **Sent:** | Monday, December 14, 2020 11:57 AM |
| **To:** | Odette Lindheim |
| **Cc:** | Chayanee Ubol; Katrina Bilella; Gloria Chen; Sabrina Loiacono |
| **Subject:** | Re: To Discuss - At Will Agreement/Handbook |

Great, thanks!

KACY PRATHER | Associate, People Strategy Business Partner | Charlotte, NC

On Mon, Dec 14, 2020 at 11:56 AM Odette Lindheim <olindheim@better.com> wrote:
 Thanks! Answers for your two questions:

 Legal aiming to have revised versions at the same time as Handbook review and comments - so 12/23!
 Also, the POC for employees who have questions is Andrew Bauer

 On Mon, Dec 14, 2020 at 11:04 AM Kacy Prather <kprather@better.com> wrote:
  Thanks for the feedback, Odette!

  - Yes, I will be looping in People Systems to get their protocol and timeline to upload the Agreement.
    Great idea to use their 'Announcement' feature.
  - I'll add some more meat to the FAQ and beef up the WIFM tone so it can be ready for your/Chay/Legal's
    review.

  Thanks!

  KACY PRATHER | Associate, People Strategy Business Partner | Charlotte, NC

  On Mon, Dec 14, 2020 at 10:49 AM Odette Lindheim <olindheim@better.com> wrote:
   Thanks, Kacy

   Comments below  in line

   On Fri, Dec 11, 2020 at 12:27 PM Kacy Prather <kprather@better.com> wrote:
    Happy Friday, Ladies!

    Below are a few recommendations (in red) to align At-Will Agreement with the Handbook timeline.

    Please share your thoughts.

    - Employee Experience will send an email to all employees on 1/4 to outline upcoming notices for
      review. - Include At-Will in comm  **OK**

1

Confidential                                                                    BMC0026405

- Shortly after, Handbook will be launched in Rise for an interactive/engaging experience. Learning games might be included.
  - Only use Workday for Agreement since a signature is required and it may cause confusion having people to navigate through multiple sites for one document. **OK- Agree w/ this. Is People Systems team in the know? Assume it will have to be uploaded and pushed out as a inbox alert? Can we make this an 'Announcement' too?**

  -
  - Provide a high-level FAQ doc to summarize main points.  (Feel free to add edits.) **These are a good start but I want legal to review, provide approval, and add any details they can around the revisions. Seems bare right now and we should prob provide more detail. Also anything that can be a WIIFM (whats in it for me) - about how we're protecting the employee, etc. should be included**
- Employees will have 30 days to review and acknowledge the Handbook. - Same deadline. Also, 30 days will allow counsel time to handle questions as they arise.**Great. Agree**

@Odette -

- Has Legal set an ETA on the final revisions?  **I will check**
- Who would be the POC to list on FAQ to address questions / concerns? **I will check**

Thank you!

KP


KACY PRATHER | Associate, People Strategy Business Partner | Charlotte, NC

2

BMC0026406

# EXHIBIT 28

PLACEHOLDER
DOCUMENT –
UNREDACTED
VERSION FILED
CONDITIONALLY
UNDER SEAL

# EXHIBIT 29

| | |
|---|---|
| **From:** | Jordon Scarlett <jscarlett@better.com> |
| **Sent:** | Wednesday, January 27, 2021 11:25 AM |
| **To:** | Kenna Meyerhoff |
| **Cc:** | McKinzey Sayers; Derek Johnson |
| **Subject:** | Re: Draft Email Comm and FAQ on the At-Will Employment Agreement |
| **Attachments:** | FAQs on At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement.docx |

Sorry, yes, the FAQs will be attached. I have reattached it hereto. It is quite short and mostly a rehashing of what is in the communication. I will add to it if we start to see similar questions on a topic.

On Wed, Jan 27, 2021 at 11:18 AM Kenna Meyerhoff <kmeyerhoff@better.com> wrote:
 Thanks! Are you attaching an FAQ separate from the job aid? I see that in the email comms, but not attached.

 On Wed, Jan 27, 2021 at 11:13 AM Jordon Scarlett <jscarlett@better.com> wrote:
 Hi Kenna and McKinzey,

 Below is the draft comm that will be sent to US employees later today about the At-Will Employment Agreement, barring any further issues.

 If employees report to people-policies-discuss@better.com alias that the document is not showing up or they did not get the email from Workday, the escalation point is to contact Jillian Smith and Joanne Chung who will look into the matter.

 If an employee simply cannot login to Workday, they should submit a Workday Ticket as indicated in the comm.

 As discussed with McKinzey, he is going to start a tracker for questions sent to the alias. He will handle and track questions pertaining to the document is not showing up for me in Workday or I did not get the email from Workday. The escalation point there is to contact Jillian Smith and Joanne Chung who will look into the matter. I will handle the I do not want to sign this questions and Andrew can handle the this is illegal or I absolutely refuse to sign situations.

 Thanks.

 ---------- Forwarded message ---------
 From: **Jordon Scarlett** <jscarlett@better.com>
 Date: Tue, Jan 26, 2021 at 7:28 PM
 Subject: Re: Draft Email Comm and FAQ on the At-Will Employment Agreement
 To: Derek Johnson <dejohnson@better.com>


 Job aid full link below and also now hyperlinked in message below.

 https://docs.google.com/document/d/1atThJeEJPw_VDLZ7kV7P1BW_GEIEE2UK/edit#

Confidential

On Tue, Jan 26, 2021 at 7:11 PM Jordon Scarlett <jscarlett@better.com> wrote:

Derek,

Below is a draft of the email communication. I am still waiting on the updated job aid to hyperlink in the message where indicated. Also as indicated below, I have attached a short FAQ which would be sent along with the email. Please let me know your thoughts and obviously feel free to tweak.

Team,

Later today you will be sent an At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement via Workday. You've likely already signed a similar agreement that was included with your offer letter. However, those previous agreements' exact terms and conditions varied as there have been multiple versions over the years. To ensure appropriate protections are in place and that employees' obligations are fair and consistent, all employees must sign the new standardized version.

You will receive an email from Workday titled, "A Task Awaits You . . .".  In the email there will be a hyperlink you will click which will take you into Workday.  Once in Workday please click the eSign by DocuSign button to review and sign the agreement. Once signed, you can view the signed agreement by going into your Personal Information in Workday and selecting Worker Documents under the View column. For more specific details on this process and to see screenshots if needed, please reference this job aid.

If you have questions about the agreement, please refer to the FAQs attached hereto or contact the Employee Experience team at people-policies-discuss@better.com, who can also connect you with someone in Legal as necessary.

If you have any issues accessing Workday, please submit a Workday Ticket.

Thank you.


--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY



--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY



--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY



--
**KENNA MEYERHOFF** | Director, Employee Experience | Better | 175 Greenwich St., Fl. 59 New York, NY 10007 | (917) 499-3450 |

Confidential

BMC0031133

--

**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY

Confidential

BMC0031134

# EXHIBIT 30

**better.com**

# FAQs on the At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement

**Q:     Why is the Company sending out the At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement?**

Most employees signed a similar agreement along with their offer letter. However, as the Company has grown, different versions of the agreement were created and used. It is important that the Company has appropriate protections in place and that the obligations provided for in these agreements are fair and consistent across the employee population. Accordingly, the Company has created this standardized version to be signed by current and future employees.

**Q:     Am I required to sign the At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement?**

As mentioned above, it is important for the Company to ensure it has appropriate protections in place and that employee obligations are fair and consistent. For these reasons, the Company is requiring all existing employees to sign the At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement.

**Q:     I have a specific question about a provision of the At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement, do I pose that question to the Employee Experience team at people-policies-discuss@better.com?**

Yes. However, depending on the nature of the question, the Employee Experience team may connect you with a member of the Legal team to answer your question.

1

BMC0031135

# EXHIBIT 31

| | |
|---|---|
| **From:** | Sara Siddiq Westgate <ssiddiq@better.com> |
| **Sent:** | Monday, April 19, 2021 6:59 PM |
| **To:** | Jordon Scarlett |
| **Subject:** | Re: Reminder: At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement |

I'd prefer to keep my old agreement.  Are there any issues with that?

**SARA SIDDIQ WESTGATE** | Product Liaison/Program Manager | Better | Three World Trade Center, 175 Greenwich Street, 59th Floor, New York, NY 10007 | 347-640-2690

On Mon, Apr 19, 2021 at 6:50 PM Jordon Scarlett <jscarlett@better.com> wrote:
Team,

Back in January you were sent an At-Will Employment, Confidential Information, Invention Assignment, And Arbitration Agreement via Workday and were asked to sign the Agreement by February 26. Since you have yet to complete the Agreement you should now be receiving email reminders from Workday titled, "A Task Awaits You . . .".  In the email there will be a hyperlink you will click which will take you into Workday. Once in Workday please click the eSign by DocuSign button to review and sign the Agreement. Once signed, you can view the signed Agreement by going into your Personal Information in Workday and selecting Worker Documents under the View column. For more specific details on this process and to see screenshots if needed, please reference this job aid.

As mentioned in the original communication on this topic, you've likely already signed a similar agreement that was included with your offer letter. However, those previous agreements' exact terms and conditions varied as there have been multiple versions over the years. To ensure appropriate protections are in place and that employees' obligations are fair and consistent, all employees must sign the new standardized version. You are asked to sign the Agreement no later than **April 30th**.

If you have questions about the Agreement, please contact the HR team at people-policies-discuss@better.com, who can also connect you with someone in Legal as necessary. If you have recently signed the Agreement, but are receiving this email, please disregard this email.

If you have any issues accessing Workday, please submit a Workday Ticket.

Thank you.

--
**Jordon Scarlett** | Director of Employee Relations & Senior Corporate Counsel | Better.com | 269-277-0904 | NY, NY

1

BMC0031142

EXHIBIT 32

# Personal messages Alex D'Amico and Jillian Smith - 2021-04-14 (UTC)

Private 4/14/2021, 12:38 AM
Alex D'Amico and Jillian Smith

- ### Alex D'Amico (W014R4R4CGZ)AD

  Hi. Not for tonight pls

  But what % complete are we with at will agreement?
  4/14/2021, 12:38 AM

- ### Jillian Smith (W0160UJ34CW)JS

  Hey Alex - **so sorry** for the delay in getting back to your slack! I've been in back-to-back meetings and working with Nicole/Priti/Tashri, to prepare for tomorrow's 9-10am India stakeholder meeting until now. We will be training and officially transferring ownership to the India team on the below items:
  • PSPM Team vs India HR Ops Responsibilities - When & When NOT to Submit a WD Ticket
  • Data Updates/Uploads + Auditing: Job Aids and EIB Instructions
  • GH/WD Integration Hiring Issues, Audit, and Reconciliation
  4/14/2021, 8:14 PM
  :clapping-gif: 1
  The at will agreement is at 95% completion
  4/14/2021, 8:14 PM
   1
  I just pulled the list of the employees who have not yet signed
  4/14/2021, 8:15 PM

- ### Alex D'Amico (W014R4R4CGZ)AD

  No sorry necessary - it was not an urgent / important Q. greatly appreciated.
  4/14/2021, 8:15 PM
  ☺ 1

- ### Jillian Smith (W0160UJ34CW)JS

  of course! I normally update Jordon on the at-will agreement % completion and remaining employees, but will include you in those updates going forward
  4/14/2021, 8:16 PM

- ### Alex D'Amico (W014R4R4CGZ)AD

  cool.
  4/14/2021, 8:16 PM

Confidential