UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                                    Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| D. Rojas | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                                 Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING IN PART MOTION TO INVALIDATE UNCOUNSELED RELEASES AND WAIVER AGREEMENTS OBTAINED EX PARTE AND FOR CORRECTIVE NOTICE (Doc. 52)**

Before the Court is a Motion to Invalidate Uncounseled Releases and Waiver Agreements Obtained *Ex Parte* and for Corrective Notice filed by Plaintiff Lorenzo Dominguez.  (Mot., Doc. 52; Mem., Doc. 52-1.)  Defendant Better Mortgage Corporation opposed, and Plaintiff replied.  (Opp., Doc. 66; Reply, Doc. 69-1; Surreply (Ex. A) to Declaration of Susannah K. Howard, Doc. 77-1.)  Having considered the parties briefs and held oral argument, the Court now GRANTS Plaintiff's Motion.

**I.      BACKGROUND**

On September 18, 2020, Plaintiff filed this putative wage-and-hour class action against Defendant, a home mortgage originator licensed to provide home loans in 46 states and the District of Columbia.  (Compl., Doc. 1; Declaration of Kenna Meyerhoff ("Meyerhoff Decl.") ¶ 2, Doc. 55.)  Plaintiff alleges that he and "the putative class members are or were employed by Defendant Better Mortgage Corporation . . . as mortgage underwriters, and were denied proper compensation as required by federal and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01784-JLS-KES          Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

state wage and hour laws." (*Id.* ¶ 1.) On September 28, 2020, Plaintiff served Defendant with the Summons and Complaint. (Declaration of C. Andrew Head ("Head Decl.") ¶ 3, Doc. 52-2; Proof of Service, Doc. 15.)

On October 19, 2020, Defendant held a mandatory attendance Zoom video meeting with its employee underwriters. (Declaration of Rudy Chaidez ("Chaidez Decl.") ¶ 3, Doc. 3.) At the meeting, Defendant discussed, among other things, an Employment Agreement, a Release Agreement, and a Retention Agreement. (*Id.* ¶ 3; Meyerhoff Decl. ¶ 4, Doc. 55; Ex. A (Slide Deck), Doc. 66-1.) A slide deck presented at the meeting stated that Defendant was "offering a $10,000 retention bonus to all eligible employees," and that "[r]etaining the $10,000 retention bonus is contingent upon," among other things, "adhering to . . . the employment agreement." (Ex. A (Slide Deck) at PDF Page 8, Doc. 66-1.) As to the Employment Agreement, the slide deck provided that the underwriters "[m]ust sign" the Employment Agreement "for continued employment" with Defendant, which the underwriters should expect to receive on "10/19." (*Id.* at PDF Page 10.)[1] As to the Release Agreement, the slide deck stated that Defendant was "reviewing a legal claim against the company, alleging that we've misclassified the Underwriting position – stating UW roles should be eligible for overtime pay," and that Defendant did "not believe this allegation to be true." (*Id.* at PDF 12.) Nonetheless, the slide deck provided that underwriters will "receiv[e] a voluntary release of claims agreement" and that "[s]igning this (again, VOLUNTARY) will give you the right to voluntarily release Better [Mortgage] of all claims as it relates to the lawsuit." (*Id.*) No further information was provided regarding Plaintiff's suit.

Sometime after the meeting concluded, the underwriters at Defendant were sent separate DocuSign emails containing the three agreements. (Chaidez Decl. ¶ 5, Doc. 52-

---

[1] Defendant also notes that "[b]eginning in January 2021, [Defendant] presented all other current employees as well as newly hired employees (including underwriters) with the same at-will employment agreement." (Meyerhoff Decl. ¶ 5, Doc. 55.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:20-cv-01784-JLS-KES | Date: May 17, 2022 |
| Title: Lorenzo Dominguez v. Better Mortgage Corporation | |

4.)  The emailed Employment Agreement contained an Arbitration Agreement (appended as Exhibit E to the Employment Agreement).  (Ex. 1 (Employment Agreement) at PDF Page 24, Doc. 52-4.)  The Arbitration Agreement provided, among other things, that "[i]n consideration of my employment with the Company, . . . I agree that any and all controversies, claims, or disputes that I have or may in the future have with the Company . . . , arising out of, relating to, or resulting from my employment or relationship with the Company . . . shall be subject to binding arbitration." (*Id.*)  The Arbitration Agreement further provided that underwriters "may bring any arbitration proceeding only in [their] individual capacity, and not as a plaintiff, representative, or class member in any purported class, collective, or representative lawsuit or proceeding."  (*Id.*)  It is undisputed that the Employment Agreement and the Arbitration Agreement did not mention Plaintiff's pending putative class action suit against Defendant.  In addition, it is undisputed that the Arbitration Agreement contained no carve out for the pending litigation or an opt-out provision.  The DocuSign email containing the Employment Agreement warned "**Do Not Share This Email**."  (Chaidez Decl. ¶ 6, Doc. 52-4.)

Defendant's underwriters were also sent a link to the Release Agreement.  The Release Agreement provided that in exchange for $5,000, the underwriter agrees to release "all claims (except those under the FLSA) that were or could have been asserted in the Lawsuit (including claims for failure to provide overtime, failure to provide accurate itemized wage statements, failure to provide meal and rest periods, failure to pay wages owed upon termination, or unfair business practices)."  (Ex. 3 (Release Agreement) at PDF Pages 32-33, Doc. 52-4.)  Moreover, the Release Agreement provided that by signing the release, the underwriter acknowledges that they "have been paid all wages owed" but also "that a good faith dispute exists as to whether I am owed wages."  (*Id.* at PDF Page 33.)  The Release Agreement linked to a copy of the complaint, but Plaintiff contends (and Defendant has not disputed) that the Complaint was not available through the link after October 23, 2020.  (Mem. at 4 n.4, Doc. 52-1.)  Moreover, the Release Agreement provided contact information for Plaintiff's counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01784-JLS-KES                                     Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

(Ex. 3 (Release Agreement) at PDF Pages 34-35, Doc. 52-4.) However, the Release Agreement also provided that Defendant "will not pay attorney's fees or costs, if any, associated with any consultation with any attorney" although putative class members could "consult with an attorney of [their] choice, including the attorney who represents Lorenzo Dominguez, the Plaintiff." (*Id.* at PDF Page 34.) The DocuSign email for the Release Agreement also warned in bold font: "**Do Not Share This Email**." (Chaidez Decl. ¶ 6, Doc. 52-4.) The Release Agreement stated that the underwriters must "sign and return this Agreement within five (5) days of its receipt." (Ex. 3 (Release Agreement) at PDF Page 32, Doc. 52-4.)

The record is not clear as to the order in which the DocuSign emails for the three separate agreements were sent. However, Plaintiff has provided a declaration from Rudy Chaidez, a former mortgage underwriter who worked for Defendant from approximately January through October, 2020. (Chaidez Decl. ¶ 2, Doc. 52-4.) Mr. Chaidez contends that "[t]o the best of [his] recollection, [he] opened and looked at the Retention Bonus DocuSign email first, then [he] opened and looked at the Employment Agreement, then last [he] opened and looked at the Release Agreement." (*Id.* ¶ 7.) Mr. Chaidez attests that he "was confused about what [he] would have to agree to in order to get paid any money being offered" and attests that Defendant did not tell underwriters "that if we signed the Employment Agreement we would be prohibited from benefitting from, being affected by, or participating in, whatever lawsuit had been filed." (*Id.* ¶ 9.) Mr. Chaidez further attests that "[t]he presentation and the DocuSign emails did not tell us that we could sign the Retention Agreement without signing the other two agreements and still get paid the $10,000 retention bonus for signing only that one agreement." (*Id.*)

Defendant contends that "[t]o date, at least 481 underwriters have signed the at-will employment agreement" and that "approximately ninety percent (90%) of underwriters (at least 188 out of approximately 204 then-eligible underwriters) executed the release agreement." (Meyerhoff Decl. ¶¶ 6, 8, Doc. 55.) Defendant notes that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                                   Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

"[b]eginning in January 2021, [it] presented all other current employees as well as newly hired employees (including underwriters) with the same at-will employment agreement. (*Id.* ¶ 5.)

Plaintiff now seeks an order "invalidating all release agreements and arbitration agreements, as to these putative class and collective members' participation, and claims arising from facts pled, in this litigation."  (Mot. at 3, Doc. 52.)  "In the alternative, Plaintiff moves for an order:  (1) Ordering Defendant to identify all individuals it contacted regarding the agreements (specifying whether and what they signed) and their mail and email addresses; (2) Authorizing Plaintiff to distribute the proposed Court-approved Corrective Notice to those individuals by mail and email; (3) Authorizing signatories to rescind any of their previously signed agreements by choosing not to affirmatively sign them again after corrective notice within a 30 day reconsideration period, with each retaining amounts paid subject to potential offset by Defendant against any recovery they may obtain in this action; (4) Requiring Defendant to obtain Plaintiff's counsel's or Court approval before any communications with putative class/collective members during the reconsideration period (and any other applicable opt-in or exclusion period) that could potentially impact their participation or claims raised in this case."  (*Id.*)

## II.   LEGAL STANDARD

"Before a class is certified in a class action, counsel for both plaintiffs and defendants may communicate with the putative class, ex parte, about the lawsuit." *Kirby v. Kindred Healthcare Operating, LLC*, 2020 WL 4639493, at *2 (C.D. Cal. May 1, 2020) (internal quotation marks omitted) (Staton, J.).  However, "'[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                                        Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

counsel and parties." *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). District courts exercise that authority pursuant Federal Rule of Civil Procedure 23(d), which provides district courts with "the 'power to regulate the notice and opt-out processes.'" *Id.* (quoting *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *vacated on other grounds*, 565 U.S. 801 (2011)). Rule 23(d) also grants courts the power to issue "orders 'limiting communications between parties and potential class members.'" *Id.* (quoting *Gulf Oil*, 452 U.S. at 101). "Importantly, '[a]n order under *Gulf Oil* does not require a finding of actual misconduct—rather, [t]he key is whether there is potential interference with the rights of the parties in a class action." *Id.* (internal quotation marks omitted). A party's behavior that "threatens the fairness of the litigation" warrants corrective action by the court. *Id.* (internal quotation marks omitted).

Consequently, under Rule 23(d) and *Gulf Oil*, courts in the Ninth Circuit have consistently "limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were otherwise misleading or coercive." *McKee v. Audible, Inc.*, 2018 WL 2422582, at *5 (C.D. Cal. Apr. 6, 2018) (collecting cases). However, "[a]ny order restricting the parties' speech must be 'carefully drawn' and limit speech 'as little as possible.'" *Kirby*, 2020 WL 4639483, at *2.

### III.  DISCUSSION

#### A.  Request to Invalidate Agreements and Curative Notice

In the Motion, Plaintiff seeks an order invalidating the Employment Agreement and the Release Agreement. (Mot. at 3, Doc. 52.) "In communicating with putative class members, including settlement discussions before class certification, defendants and their counsel 'may not give false, misleading, or intimidating information, conceal material

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01784-JLS-KES          Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3).'" *Kirby*, 2020 WL 4639493, at *3 (citing Ann. Manual Complex Lit. § 21.12 (4th ed.)).

The Court's prior decision in *Kirby v. Kindred Healthcare Operating, LLC* is relevant to its analysis here. 2020 WL 4639493 (C.D. Cal. May 1, 2020). In *Kirby*, the Court considered a motion to invalidate individual settlement agreements that Defendants had sent to putative class members prior to a hearing on a Motion for Class Certification. *Id.* at *1. In finding the individual settlements voidable, the Court noted that the settlement agreements did "not include sufficient information about the nature and status of the litigation or settlement payment being offered, rendering the communications misleading." *Id.* at *3. For example, the Court noted that "Defendants direct[ed] putative class members to the courthouse to *physically obtain a copy of the complaint*" and explained that "[i]t would have taken minimal effort or funds for Defendant to append the complaint to the letter they sent." *Id.* The Court also noted, among other things, that a letter accompanying the settlement agreements contained an "incomplete" and "slanted characterization" of the case, which "all but encourage[d] putative class members not to join the class." *Id.* at *4.

The Court finds that this case presents communications that are in some cases, more misleading and more inherently coercive than that presented in *Kirby*, necessitating invalidation of the Employment Agreements and Release Agreements.

*First*, as to the Employment Agreement, Defendant does not dispute that, unlike in *Kirby*, putative class members here were required to sign the agreement on pain of termination. Indeed, the slide deck presented at the October 19, 2020 meeting stated that underwriters "[m]ust sign" the Employment Agreement "for continued employment," which the underwriters would receive on "10/19." (Ex. A (Slide Deck) at PDF Page 10, Doc. 66-1.) In addition, Defendant does not dispute that the Arbitration Agreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                                                    Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

(appended to the Employment Agreement) impacts claims that putative class members would have via the suit; indeed, Defendant has a pending Motion to Deny Class Certification Under Federal Rule of Civil Procedure 23 on the basis that the vast majority of the putative class has signed the Arbitration Agreement.  (*See* Mot., Doc. 53.)  In essence, the putative class members were told that unless they agreed to waive their right to participate in the present action and agree to arbitration, they would be fired.  This coercive tactic alone taints the rest of the communications between these underwriter employees and Defendant, and causes the Court to find that *all* agreements are void.

Moreover, it is undisputed that the Employment Agreement did not contain any reference to Plaintiff's suit, did not attach Plaintiff's complaint, or provide Plaintiff's counsel's name and contact information.  Nor did the appended Arbitration Agreement (attached as an exhibit) contain such information or include a copy of the complaint.  Defendant's failure to include such information is made more egregious because the Employment Agreement did not contain any opt-out provision from the Arbitration Agreement as to the pending suit.  (Ex. 1 (Employment Agreement) at PDF Page 24, Doc. 52-4.)

Defendant contends that it provided relevant information about the suit because "all of this information was provided to current underwriters in the recap email and the Release—which underwriters received at the same time they received the Agreement." (Opp. at 23, Doc. 66.)  However, Plaintiff has demonstrated that the recap emails were not sent until October 20, 2020, after all the agreements had been sent by DocuSign for signatures the day before.  (*See* Ex. B to Declaration of Kenna Meyerhoff (Second), Doc. 66-1.)  In any event, Defendant ignores that it did not reference, let alone provide, any of the information contained in the recap email and the Release Agreement in the Employment Agreement itself.  Moreover, Defendant has offered no evidence that its underwriters were instructed to review the recap email and Release Agreement prior to signing the Employment Agreement.  In fact, at least one underwriter reviewed and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:20-cv-01784-JLS-KES | Date: May 17, 2022 |
| Title: Lorenzo Dominguez v. Better Mortgage Corporation | |

signed the Employment Agreement prior to reviewing the Release Agreement. (*See*, *e.g.*, Chaidez Decl. ¶ 7, Doc. 52-4.) In addition, the Employment Agreement did not alert putative class members that they were forfeiting the right to bring Fair Labor Standards Act claims in the pending action despite the Release Agreement's statement that the FLSA claims were not waived. (*See*, *e.g.*, Ex. 3 (Release Agreement) at PDF Page 33, Doc. 52-4.)

*Second*, the Court finds that the Release Agreements were misleading or omitted material information. As noted above, the Release Agreements are tainted by the coercive tactics used to obtain the underwriters' agreement to arbitrate. Namely, knowing they had to forfeit their right to participate in the present action under the mandatory Arbitration Agreement, employees may have assumed that they had no option but to accept the Release Agreement if they wanted to receive any compensation for unpaid wages. *See Kirby*, 2020 WL 4639493, at *2 (noting that the "key" inquiry under *Gulf Oil* "is whether there is *potential* interference with the rights of the parties in a class action." (internal quotation marks omitted)). Moreover, the Court has several concerns about the Release Agreement itself. For example, Defendant's description of Plaintiff's claims relies heavily upon terminology from statutory titles—terms with which the putative class members may not necessarily be familiar. (*See*, *e.g.*, Ex. 3 (Release Agreement) at PDF Page 33 (using phrases such as "failure to provide accurate itemized wage statements," "failure to provide meal and rest periods," and "waiting time penalties" to describe Plaintiff's claims), Doc. 52-4.) Defendant's descriptions were made worse because Defendant did not include a copy of the complaint with the Release Agreement. While Defendant provided a link to the Complaint, Plaintiff contends (and Defendant has not disputed) that the link was not operative after October 23, 2020—an issue that Defendant could have avoided by attaching the Complaint. (Mem. at 4 n.4, Doc. 52-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                              Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

Defendant also provided confusing and misleading information about the Release Agreement's scope.  For example, the Release Agreement does not explain that putative class members were forfeiting their right to bring the FLSA claims asserted in the pending suit if they signed the Employment Agreement.

The Court further notes that that the Release Agreement includes somewhat contradictory and confusing statements.  The Release Agreement requires putative class members to state "I acknowledge that I have been paid all wages owed to me" but also "that a good faith dispute exists as to whether I am owed wages, overtime, meal and rest break premiums, waiting time penalties, and/or other penalties."  (Ex. 3 (Release Agreement) at PDF Page 33, Doc. 52-4.)  Defendant notes that "these sentences address categories of wages—those that are disputed by Plaintiff in this action, and those that are not."  (Opp. at 20, Doc. 66.)  However, Defendant ignores that the referenced sentences do not explain this distinction, let alone in laymen's terms.  In any event, Defendant's requirement that putative class members "acknowledge" that they were "paid all wages owed" presents independent concerns.  For example, Defendant has proffered no basis for an employee to acknowledge that they were "paid all wages owed" or why a putative class member would need to make such a statement to release certain claims against Defendant.  And by requiring that putative class members make this factual attestation, employees may also be deterred from bringing Fair Labor Standards Act claims, which putative class members do not waive by signing the Release Agreement.  (Ex. 3 (Release Agreement) at PDF Page 33, Doc. 52-4.); *see also Acosta v. Sw. Fuel Mgmt., Inc.*, 2018 WL 739425, at *4 n.3 (C.D. Cal. Feb. 2, 2018), *vacated in part*, 2018 WL 2207997 (C.D. Cal. Feb. 20, 2018) ("An employee may also be deterred from participating in an ongoing DOL investigation if, for instance, she believes that the coerced [statement] can subsequently be used against her to claim (albeit mistakenly) that the employee perjured herself.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                                             Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

The Release Agreement also provides incomplete information regarding Plaintiff's counsel.  For example, the Release Agreement provides that the parties are advised to "consult with an attorney of [their] choice, including the attorney who represents Lorenzo Dominguez, the Plaintiff" but "that Better will not pay attorney's fees or costs, if any, associated with any consultation with any attorney." (Ex. 3 (Release Agreement) at PDF Page 34, Doc. 52-4.)  A statement unnecessarily referencing possible fees and costs could discourage putative class members from contacting Plaintiff's counsel.  In addition, while Defendant provided contact information for Plaintiff's counsel, the DocuSign email for the Release Agreement warned members that they could not share the email.  (Chaidez Decl. ¶ 6, Doc. 52-4.)  And, as Defendant's own submissions to this Court reflect, Defendant was carefully monitoring employees' access to and viewing of the DocuSign emails (*see* Exs. E and F to the Meyerhoff Decl., Doc. 66-1), a fact employees could well have understood.

Finally, Defendant offers putative class members a one-time $5,000 payment to release their claims against Defendant with no information "about how that amount might compare to the value of their claims." *Kirby*, 2020 WL 4639493, at *4.  "Without that kind of information, putative class members cannot make an informed decision about whether to accept or reject the settlement offer." *Id.*

**B.     Remedy**

Plaintiff asks that the Court in the first instance invalidate "all release agreements and arbitration agreements, as to these putative class and collective members' participation, and claims arising from facts pled, in this litigation." (Mot. at 3, Doc. 52.)  In the alternative, Plaintiff seeks various forms of other relief, including curative notice.  (*Id.*)  The Court deems only some of the requested relief necessary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01784-JLS-KES            Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

*First*, the Court grants Plaintiff's request to invalidate the Employment Agreements and Release Agreements as to any employee who was already employed at the time the agreements were presented. Given that the Court finds that the agreements were obtained through coercive or misleading information, the Court finds it necessary to invalidate the agreements. In invalidating the Release Agreements, the Court prohibits Defendant from requesting reimbursement of any payments made. The Court will determine later whether Defendant may be entitled to an offset for payments made. *See Marino v. CACafe, Inc.*, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017). As to the Employment Agreement, the Court declines to invalidate the agreement as to new hires. Plaintiff has not presented evidence that the new hires, at the time of their employment, were subject to any of the allegations in the Complaint. (*See*, *e.g.*, Compl. ¶¶ 35-43 (alleging failure to provide overtime), Doc. 1.) Moreover, the Court's concerns as to the Employment Agreement are based in large part on the above-described coercive tactics to thwart current employees' participation in this action. New hires are in a different position, having never worked for Defendant before signing an Employment Agreement. Thus, the same concerns are not present.

*Second*, the Court orders Defendant to send a Court-approved curative notice to any employee who signed the Employment Agreement and who was not a new hire at the time of signing. The parties are ORDERED to meet and confer to decide on appropriate language for the curative notice, which the parties must submit to the Court for approval **within fourteen (14) days of the date of this Order**. Any disputes as to the appropriate notice should be included in the submission. Once the Court approves the language, it will direct Defendant to mail the notice to putative class members, consistent with this Order.

*Third*, based on Defendant's prior conduct in this case, and to reduce the likelihood that the Court is once again called upon to fashion retrospective relief, until

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01784-JLS-KES                                    Date: May 17, 2022
Title: Lorenzo Dominguez v. Better Mortgage Corporation

further notice of this Court, Defendant is ORDERED to communicate with putative class members regarding the subject matter of this litigation **only in writing and with Court approval**.

### IV.     CONCLUSION

For the above reasons, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

Initials of Deputy Clerk: droj