ADAM KARR (S.B. #212288)
akarr@omm.com
SUSANNAH K. HOWARD (S.B. #291326)
showard@omm.com
ALLAN W. GUSTIN (S.B. #305784)
agustin@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive
17th Floor
Newport Beach, California  92660-6429
Telephone:   +1 949 823 6900
Facsimile:    +1 949 823 6994

Attorneys for Defendant BETTER
MORTGAGE CORPORATION

MATTHEW C. HELLAND (SBN 250451)
helland@nka.com
DANIEL S. BROME (SBN 278915)
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiff LORENZO
DOMINGUEZ

*Additional Counsel Listed on Following Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO DOMINGUEZ, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br><br>Defendant. | Case No. 8:20-cv-01784-JLS-KES<br><br>**PARTIES' NOTICE OF DISPUTES REGARDING COURT-APPROVED CURATIVE NOTICE**<br><br>Complaint Filed:  September 18, 2020<br>Trial Date:  None |

1

2   Jason Christopher Marsili (CA SBN 233980)
    jmarsili@rmrllp.com
3   ROSEN MARSILI RAPP LLP
4   3600 Wilshire Blvd., Suite I 800
    Los Angeles, CA 90010-2622
5   Telephone: (213) 389-6050
6   Facsimile: (213) 389-0663

7   C. Andrew Head (admitted pro hac vice)
8   ahead@headlawfirm.com
    Bethany Hilbert (admitted pro hac vice)
9   bhilbert@headlawfirm.com
10  HEAD LAW FIRM, LLC
    730 Peachtree St NE, Suite 600
11  Atlanta, GA 30308 (virtual office)
12  4422 N. Ravenswood Ave.
    Chicago, IL 60640 (resident office)
13  Telephone: (404) 924-4151
14  Facsimile: (404) 796-7338

15  Attorneys for Plaintiff LORENZO DOMINGUEZ

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's Order [ECF 91] invalidating Employment
2  Agreements and Release Agreements entered May 17, 2022 (the "Order"), the
3  parties met and conferred on appropriate language for the curative notice, but were
4  unable to reach agreement.  Below, each party has separately prepared a summary
5  of their position regarding the Notice and has attached their proposed version of the
6  Notice..

7  **1.    Plaintiff's Proposed Notice and Submission of Notice-Related Disputes:**

8    Plaintiff respectfully requests that the Court approve his proposed Notice
9  attached hereto as Exhibit A-1 ("Plaintiff's Proposed Notice"), and identifies the
10  following notice-related disputes:

11  **A. <u>Dispute Regarding Scope of Curative Notice Recipients Requires Court</u>**
12  **<u>Resolution.</u>**

13    Plaintiff has discovered, through the meet and confer process, that Defendant
14  takes the position that the Court's Order invalidating Waiver Agreements[1] was
15  limited in its impact as to only potential California Rule 23 class members, and
16  even as to them, only that small subset of potential California Rule 23 class
17  members who were presented with <u>both</u> a Release Agreement and an Employment
18  Agreement. Defendant intends to unilaterally impose its self-determined limitation
19  on the curative notice recipients list accordingly – refusing to issue curative notice
20  to anyone who was not (i) a potential California class member (ii) who was
21  presented with both Waiver Agreements. Under Defendant's reading of the Order,
22  that means the Court did not invalidate any of the following: (a) Release

23

24  [1] Defendant takes issue with Plaintiff's use of the collective term "Waiver
25  Agreements," as if the Employment Agreement did not contain a class and
  collection action waiver that – if not invalidated – Better would have contended
26  waived all rights to participate in this litigation. Even Defendant's own
  Employment Agreement language explicitly calls it a "class, collective, and
27  representative proceeding waiver." (Employment Agreement [ECF 52-4], PageID
28  #437).

1    Agreements releasing all state law claims signed by underwriting employees who
2    worked in any state other than California, despite Defendant's rollout of Release
3    Agreements to underwriting employees working in all states; (b) Employment
4    Agreements presented to underwriting employees who worked in any state other
5    than California, despite Defendant's rollout of Employment Agreements to
6    individuals working in all states covered by the nationwide FLSA collective action
7    pled; (c) Employment Agreements presented after the October 19, 2020 rollout
8    date, including but not limited to the rollout of Employment agreements to all
9    underwriting employees in January 2021, to underwriting employees who had
10   commenced working hours for Defendant and thus became covered by the putative
11   California Rule 23 class and FLSA opt-in collective action claims – despite
12   receiving no notification in or accompanying the Employment Agreement that
13   signing it would impact their ability to participate in this litigation regarding hours
14   they had already worked – because Better did not also present them with a Release
15   Agreement.

16        This Court should not countenance Defendant's obstruction. Plaintiff, at all
17   times, moved to invalidate the Employment Agreements and Release Agreements
18   as to all underwriting employees covered by the nationwide FLSA collective action
19   pled, as well as (not limited to) the California Rule 23 class pled. (Plaintiff's
20   Motion [ECF 52-1]: "Plaintiff requests that the Court invalidate all release
21   agreements and arbitration agreements, as to these putative class and collective
22   members' participation, and claims arising from facts pled, in this litigation."). The
23   Court's Order granted Plaintiff's motion (Order [ECF 91]):

24        The Court now GRANTS Plaintiff's Motion…
          Plaintiff seeks an order invalidating the Employment
25        Agreement and the Release Agreement….
          Plaintiff asks that the Court in the first instance invalidate
26        "all release agreements and arbitration agreements, as to
          these putative class and collective members'
27        participation, and claims arising from facts pled, in this
          litigation…. *First*, the Court grants Plaintiff's request to
28

invalidate the Employment Agreements and Release Agreements as to any employee who was already employed at the time the agreements were presented… *Second*, the Court orders Defendant to send a Court-approved curative notice to any employee who signed the Employment Agreement and who was not a new hire at the time of signing.

The Court's Order used the phrase "class" to collectively encompass the individuals covered by Plaintiff's nationwide FLSA collective action and California class action wage-and-hour claims pled:

On September 18, 2020, Plaintiff filed this putative wage-and-hour class action against Defendant, a home mortgage originator licensed to provide home loans in 46 states and the District of Columbia… Plaintiff alleges that he and "the putative class members are or were employed by Defendant Better Mortgage Corporation . . . as mortgage underwriters, and were denied proper compensation as required by federal and state wage and hour laws….

(Order [ECF 91]).  Moreover, the Court made clear at the hearing that the authority for invalidating all arbitration agreements was supported by the Eleventh Circuit's unpublished opinion in *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014) – which dealt only with invalidating arbitration agreements pursuant to the court's authority to manage communications with potential FLSA collective action members under *Bernard v. Gulf Oil,* invalidating all arbitration agreements imposed on putative FLSA opt-ins company-wide in a case that did not involve any Rule 23 class claims – and did not involve any release agreements. (Transcript, pp. 5 lns. 8-12; p. 6, lns. 4-8; p. 11, lns. 3-6).

Defendant also moved to deny FLSA collective action certification to the 481 individuals whom it claimed signed arbitration agreements companywide, separately from moving to deny Rule 23 class certification to any individuals who signed the Employment Agreements containing class and collective action waivers. The Court denied both motions, clearly encompassing both potential nationwide FLSA collective action members and Rule 23 California class members within its use of the term "class":

> Defendant seeks to deny class certification under Federal Rule of Civil Procedure 23 and conditional certification under the Fair Labor Standards Act on the basis that most members of the putative class agreed to an Employment Agreement (containing an Arbitration Agreement) and signed a Release Agreement. (See Docs. 53-54.) However, as the Court invalidated the Employment Agreement and the Release Agreement as to certain putative class members, the Motions are DENIED.

(Order [ECF 92].) Plaintiff does not read the Court's use of the word "class" toward the end of its Order invalidating all Waiver Agreements to exclude non-Californians from its reach, or to exclude those who were presented with an Employment Agreement after beginning work for Better from its reach. Plaintiffs therefore respectfully request that the Court confirm that Defendant must send curative notice to all individuals within the putative Class and Collective who signed a Waiver Agreement after beginning work for Better.

Defendant also now attempts to limit the curative notice to those employees who were presented with Agreements on October 19, 2020, thereby excluding from the scope of the Court's Order those employees who began working *after* October 19, 2020 and who (same as those subjected to the October 19th rollout) had already worked hours bringing them within the putative nationwide opt-in FLSA collective action claims at the time of presentment, but were not presented with Agreements until days, weeks, or months after the initial rollout. This limitation is contrary to the Court's rationale for refusing to invalidate Agreements signed by "new hires"—namely that applicants who had not yet begun working were not yet members of the putative class and collective because they had not worked any covered hours yet.

Plaintiffs acknowledge and accept that the Order excluded from the ordered curative notice those individuals who were not "already employed" at the time they signed a Waiver Agreement, because this Court held "[n]ew hires are in a different

position, having never worked for Defendant before signing an Employment

Agreement." *See* (Order [ECF 91]). This Court could have applied its invalidation

ruling to all individuals *including* new hires who were presented with an

Employment Agreement before ever working any time for Better because there

was no prior company practice of requiring arbitration agreements for employment

before Better began targeting underwriters after Plaintiff filed this lawsuit, and

caselaw would have supported that holding. *See, e.g., Lillehagen v. Alorica, Inc.*,

No. SACV 13-0092-DOC(JPRx), 2014 U.S. Dist. LEXIS 199342, at *20-21 (C.D.

Cal. Dec. 18, 2014) ("This Court agrees with the *O'Connor* court that adopting the

bright-line rule proposed by Alorica and Uber—that communication with future

class members or with new hires is per se proper—would give defendants too

much leeway to interfere with the courts' role of ensuring fair play in class and

collective actions.") It ruled otherwise, however, and Plaintiffs do not seek to

challenge that ruling.

### B.  <u>Argument and Authorities Supporting Plaintiff's Proposed Notice</u>.

Plaintiff previously submitted a proposed Notice [ECF 52-3] with his motion

to invalidate Waiver Agreements, attached to the Declaration of C. Andrew Head

filed on October 21, 2021. Defendant filed no objections to the language of the

proposed Notice. The Court then provided the parties with the following guidance

at the subsequent March 25, 2022 hearing on that motion, after announcing that it

would be invalidating the Waiver Agreements: "I'm likely to issue a notice that's

very similar to what . . . Mr. Head identified…" (Transcript of March 25, 2022

hearing, p. 19, ln. 4-5). While Plaintiff made few subsequent revisions to the

originally proposed version, primarily as necessary required to address positions

uncovered during the meet and confer process, the remaining majority of the

previously proposed Notice is presented again here verbatim. Plaintiff provided

1    their slightly-revised proposed notice to Defendant two days after the Court's order,
2    on May 19, 2022.

3        Defendant did not return its proposed notice until a week later, on May 26,
4    2022, at 9:39 p.m. Pacific Time.[2] Plaintiff reviewed Defendant's proposed notice
5    over the Memorial Day holiday weekend and responded promptly at 1:35 p.m. on
6    Tuesday, May 31, the first business day after the holiday.

7        Plaintiff contends Defendant's rejection of nearly every proposed provision,
8    as reflected in the redlined comparison document attached hereto as Exhibit A-2
9    and addressed below, is inconsistent with the spirit and the letter of this Court's
10   rulings to date on curative notice.

11       Plaintiff's Proposed Notice is entirely consistent with the Court's rulings
12   announced at the hearing and memorialized in the Order. In addition, for ease of
13   reference, Plaintiff identifies for the Court the supporting basis from prior curative
14   notices and citation of legal authorities for each and every material provision in his
15   Proposed Notice, by including such information in the comments linked to each
16   provision, as submitted in Plaintiff's Exhibit A-3.

17       **C. <u>Objections to Defendant's Proposed Notice Language</u>.**

18       Plaintiff submits the following objections to Defendant's proposed notice
19   language:

20       1.    Defendant's language seeks to create doubt or confusion in the mind of
21   the reader as to whether the Court's Order definitively impacts them, by opening
22   with the statement that if they signed after becoming employed by Better, the
23   Court's Order "may affect your ability to participate in the above-captioned
24   lawsuit" (as if it was also possible  that the Order "may not" affect their ability to
25   participate). The Order definitively decides their ability to participate.

26   _____

27   [2] Notably, May 26 was the Thursday before the three day Memorial Day holiday
     weekend, leaving Plaintiff only Friday and Tuesday as available business days to
28   digest and respond to Defendant's proposed language.

2.      Fairness dictates that a curative notice will not remediate the adverse impact of Defendant's *ex parte* presentation if it does not provide a Court-approved summary of the information Defendant failed to disclose when Defendant unilaterally, without notice to the Court or counsel, preemptively provided the putative class with its one-sided depiction of the claims in this lawsuit while disguising available damages. The Order found that Defendant's communications were misleading, coercive, and designed to thwart participation. (Order [ECF 91]: "The Court finds that this case presents communications that are in some cases, more misleading and more inherently coercive than that presented in *Kirby*, necessitating invalidation of the Employment Agreements and Release Agreements"; "the Court finds that the Release Agreements were misleading"; "Defendant also provided confusing and misleading information about the Release Agreement's scope"; "Given that the Court finds that the agreements were obtained through coercive or misleading information, the Court finds it necessary to invalidate the agreements"; "the Court's concerns as to the Employment Agreement are based in large part on the above-described coercive tactics to thwart current employees' participation in this action").  Defendant, however, struck the entirety of any information that would inform putative class members of the type and amounts of potentially available damages, or "how th[e $5,000] amount might compare to the value of their claims." Defendant now attempts to hijack the curative notice process by blocking putative class members from receiving detailed information about the litigation, types of damages sought, and how the offered amount might compare to the actual value of their potential claims. Defendant may prefer that putative class members not now receive information that could lead them to conclude they had been duped by their employer, but that is not a proper basis for denying class members the proposed information by Court-approved curative notice.

3.      Defendant's depiction of the Order as merely "an interlocutory ruling" is unnecessary, designed to confuse lay person recipients by use of legalese, and designed to foment doubt on whether the Order is real or definitive. If however, over Plaintiff's objection, the Court allows for description of the Order in the Notice as merely "an interlocutory ruling," Plaintiff requests insertion of the following curative statement immediately thereafter:

> "Better Mortgage, however, did not seek to appeal the Court's interlocutory rulings regarding the potential scope of class participation in this lawsuit by the procedural deadline."

*See generally Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238-39 (9th Cir. 2017) (only two procedural avenues for appealing Rule 23 orders were (1) asking the district court to certify an order for interlocutory review pursuant to 28 U.S.C. § 1292(b) within 10 days; or (2) filing a petition for permission to appeal pursuant to Federal Rule of Civil Procedure 23(f) within 14 days).

4.      Defendant struck the accurate recitation of this Court's ruling in its separately issued Order [ECF 92], in which it denied Defendant's motions to deny certification of a class or collective action on the basis of the Waiver Agreements. This ruling is material to the curative notice.

5.      Defendant changed "You are not required to do anything in order for the Waiver Agreements to be unenforceable at this time" to "You are not required to do anything at this time." This impermissibly introduces doubt in the mind of the curative notice recipient as to whether the Waiver Agreements are unenforceable if they do nothing in response to this notice, and instead creates the mistaken impression that they might be required to do something at some later time before their Waiver Agreements could be deemed unenforceable.

6.      Defendant struck any reference to the nationwide opt-in collective action, erroneously implying that they will only receive notice at an appropriate

1   time requiring any action they might need to take to participate if the Court

2   "certifies a class action for California underwriting employees."

3           7.      Defendant's proposed language implicitly threatens, falsely, that a

4   recipient will (or even just possibly may) need to return the money they were paid

5   for the Release Agreement at a later time: "If you signed a Release Agreement and

6   received $5,000 from Better in return for signing that Agreement, you do not need

7   to return any of that money **at this time**." (emphasis added) The Court ruled the

8   complete opposite, holding that Better cannot request reimbursement at any time,

9   citing the holding in *Marino v. CACafe, Inc.*, 2017 U.S. Dist. LEXIS 64947, 2017

10  WL 1540717 (N.D. Cal. Apr. 28, 2017). The court-approved curative notice in

11  *Marino* stated: "*The Court is **not** requiring that you return any monies paid to*

12  *you….*No person who received a payment in return for signing a release agreement

13  will be required to return the payment. Any payment you received from CACafe in

14  connection with signing the release agreement may be subtracted from any future

15  payments you may be awarded, if ordered by the Court. Even if no payments are

16  awarded by the Court in the future, you will not be required to return any payment

17  you previously received from CACafe for signing the release agreement.")

18  (emphasis original). Defendant then phrases the following in a manner designed to

19  falsely create the impression that a recipient should blame Plaintiff for potentially

20  having their damages reduced in this action: "***as a result of Plaintiff seeking this***

21  ***order from the District Court***, Better may seek to reduce any damages awarded to

22  you by the $5,000 payment or may seek to recover the payment from you."

23  (emphasis added) This curative notice need not, and should not, list every possible

24  future litigation action Defendant may (or may not attempt) in an effort to mitigate

25  the damage inflicted upon itself by its improper conduct.

26          8.      Defendant attempts to portray the prohibition on communicating with

27  putative class members as a mere instruction to seek approval of so communicating:

28

"the District Court ordered that based on Better's prior conduct in this lawsuit, until it issues further notice of the Court, Better must seek approval to communicate with you and all other potential class and collective members regarding the subject matter of this lawsuit, and that such communications may only be in writing." But the Court did not order that Better must seek approval to communicate, and Better remains free <u>not</u> to seek approval to communicate with the class regarding the litigation. Instead, the Court ordered that Better may not communicate with the class, unless that communication (i) is in writing and (ii) was approved in advance by the Court. A curative notice recipient, if given Defendant's preferred language, would merely assume upon receiving a communication from Better regarding the lawsuit that Defendant must have sought the required approval because the Court had affirmatively ordered it to immediately seek such approval – not true. And again, while Defendant prefers to give a bold prediction that it will be granted approval to communicate with the class in response to any inquiries ("Better will request permission from the District Court to respond in writing to any questions that you submit to Better regarding this Notice or the lawsuit"), curative notice is not the place to list every litigation action that Better predicts it might make in the future. Finally, this is a backdoor attempt to encourage curative notice recipients to initiate communications with Defendant about the notice and/or lawsuit, thereby thwarting the clear instructions in a curative notice that putative class members should instead direct their inquiries to Plaintiff's counsel who – unlike Defendant – are not barred by a blatant conflict of interest from appropriately discussing a notice recipient's questions regarding the case against Defendant or participation in the class or collective action claims in the case.

9.     Finally, Defendant's proposed Notice offers no explanation why the Court is ordering curative notice and why the Court invalidated the Waiver Agreements; instead, Defendant's draft attempts to hide the Court's main ruling

that required curative notice (i.e., that Defendant engaged in misleading and coercive conduct in its *ex parte* communications with putative class and collective members, designed to thwart participation). Courts reject such attempts to whitewash the court's factual findings that required curative notice, and require that the curative notice accurately indicate why the Court ordered the notice. *See, e.g., Fox v. Cty. of Saginaw*, No. 1:19-cv-11887, 2022 U.S. Dist. LEXIS 35302, at *15 (E.D. Mich. Feb. 28, 2022) (sustaining plaintiff's objection to defendant's draft of curative notice because it merely used the term "improper" to describe the conduct that necessitated curative notice, requiring instead that "abusive and misleading" must be used because "the Proposed Notice should at least accurately characterize ARI's and Choice Plus's conduct.")

### D. <u>Remaining Notice-Related Disputes Requiring Court Resolution</u>.

The purpose of curative notice cannot be achieved if the fox is left to guard the henhouse by depriving Plaintiff of any information regarding Defendant's issuance of the curative notice. But that is exactly what Defendant intends to do: Defendant refuses to provide Plaintiff with the curative notice recipient list it intends to use for distribution of the notice, and takes the position that Plaintiff "is not quality control."

There is no confidentiality concern. The Court previously entered the parties' stipulated protective order regarding discovery information (Order [ECF 63]), and Defendant has already produced to Plaintiff two spreadsheets containing the names and full contact information of every underwriting employee whom it contends has signed the Employment Agreement or the Release Agreement, respectively. It has not, however, identified those individuals' start dates when they began working for Better, and the spreadsheets do not list the date each agreement was signed. Plaintiff requests an order requiring Defendant to file a notice of compliance with the Court confirming that it has distributed the curative notice by description of the

notice list inclusion criteria applied, and identifying the curative notice recipients by employee identification number. This will at least allow Plaintiff to determine the number of employees receiving the notice at the outset, and will allow Plaintiff to determine which employees were sent the notice when employee identification numbers, and respective signing dates, are produced in subsequent discovery.

**2.    Defendant Better Mortgage Corporation's Proposed Notice and Submission of Notice-Related Disputes:**

Better disagrees with many of the statements in Plaintiff's section of this joint submission.  However, because Plaintiff's counsel only provided a draft to Better's counsel at 1:37pm on the date of this filing, Better has had only a few hours to review and respond to Plaintiff's positions regarding the Notice.   In sum, Plaintiff is attempting to use the Corrective Notice as a court-sponsored advocacy piece on the merits of his claims.   This is an improper use of the Notice, whose sole purpose is to advise employees regarding the effects of this Court's Order on the arbitration agreements and release agreements they signed ("the Agreements"), without asking the putative class members to decide anything at this time.  On those points, the Notice needs to be precise.  Better's proposed Corrective Notice accomplishes these objectives.  Plaintiff's does not.  Accordingly, Better respectfully requests that the Court adopt its proposed Corrective Notice.

**A. The Parties Meet and Confer Efforts**

Following this Court's May 17, 2022 order, the parties scheduled their first meet and confer discussion for May 19, 2022 at 2pm.  Counsel for Better asked Plaintiff's counsel to send their proposed version of the Corrective Notice before the call. Plaintiff's counsel sent their proposed version of the Notice on May 19 at 1:03pm. While the parties engaged in some discussion regarding the Notice on May 19, counsel for Better stated that they would need more time to provide proposed edits

to Plaintiff's proposed version of the Notice.  The parties scheduled a follow-up call for Monday, May 23, at 10:00am.  During that call, counsel for Better informed Plaintiff's counsel that Better believed the Court's order did not apply to putative collective members, and that Better considered Plaintiff's proposed notice to be unnecessarily long and argumentative.  The parties also discussed which employees would be excluded from receiving the Notice as "new hires" (per the Court's order). Counsel for Better informed Plaintiff's counsel that Better would prepare a markup of Plaintiff's proposed Notice and share it with Plaintiff's counsel later in the week. Better's counsel informed Plaintiff's counsel that one of Better's lead attorneys, Susannah Howard, was in arbitration from May 23-25, and that Better's lead in-house attorney was very ill and out of the office with COVID-19.

Better's counsel sent Plaintiff's counsel a mark-up of the proposed Notice on Thursday, May 26 at 9:39pm.  Plaintiff's counsel responded at 1:37pm on May 31, enclosing a proposed joint submission regarding the parties' disagreements regarding the Notice.

**B.  The Notice Should Be Clear, Concise and Consistent with this Court's Order.**

The Court's Order contemplates that three pieces of information will be communicated to putative class members via the Corrective Notice:

- *The effect of the Court's Order on the arbitration and release agreements*. The Court has issued an Order that invalidates the arbitration and release agreements for purposes of this lawsuit (for employees who were not new hires), which allows putative class members to participate in this lawsuit notwithstanding those agreements.

- *The effect of the Court's Order on the $5,000 payments*.  The Court's Order does not require repayment of those amounts at this time, but it does not finally resolve that issue; it expressly contemplates that the issue will be

resolved later.

- *The effect of the Court's Order on Better's communications*.  The Court's Order restrains Better from engaging in further communications with recipients of notice regarding the lawsuit, unless pre-approved by the Court.

Better's proposed Corrective Notice communicates each of these three pieces of information and uses clear and concise language to do so.  Plaintiff's proposed Notice, by contrast, is replete with extraneous information that has nothing to do with the Court's order, and does not clearly communicate the three core points set forth above.

## C.  Plaintiff's Proposed Notice is Improperly Argumentative.

Rather than clearly communicate the core points of this Court's Order, the bulk of Plaintiff's proposed Notice advocates for his position on the merits of his claims or sets forth a premature damages calculation.  For example, Plaintiff makes such assertions as:

- "California state law, which – unlike the federal law – does not allow better to claim any special exemption from owing overtime due to paying underwriters more than $107,532 annually (Beginning 2020; $100,000 in years prior)."

- "Plaintiff contends that the likelihood of prevailing on California claims is even higher than on federal overtime claims for employees paid those amounts."

- "By way of example, Plaintiff calculates that an underwriter earning a salary of $100,000 per year and working 10 hours per week of overtime would be entitled to $721.15 per week of unpaid overtime wages."

- "Assuming only one missed meal period or rest period each day, an employee with the compensation described above would be owed $19,998.33 over a one year period in premium payments alone."

- "Plaintiff also contends that underwriters are owed an additional amount in California law penalties of up to $4,000 per employee for failure to provide accurate wage statements, and (for employees whose employment terminated for any reason) up to 30 days of pay as a penalty for failing to pay all wages due at termination (i.e., an additional $18,460), in addition to any amount determined to be owed for unreimbursed business expenses incurred while working remotely."

- "The above discussion is only a sample hypothetical calculation."

These statements go well beyond the purpose of the notice, and, in a court-approved notice, could be read as judicial endorsement of Plaintiff's position. Further, any discussion of damages is absurdly premature.  Plaintiff has not even established that this case can proceed on a class or collective basis, much less established any liability that could form the basis for any calculation of damages. Importantly, Better has already provided Plaintiff with the contact information for all underwriters who signed either of the Agreements.  Thus, if Plaintiff and his attorneys wish to communicate their views regarding these topics with putative class members, they are free to do so (and, indeed, have already done so through unilateral solicitations of Better's employees via LinkedIn).  Any discussion of damages or the merits of this case in the court-ordered Corrective Notice, however, is improper and unsupported by the Court's Order.

In addition, instead of referring to the arbitration agreements and release agreements collectively as the "Agreements" (as both the Court's Order and Better's proposed Corrective Notice do), Plaintiff improperly refers to them as the "Waiver Agreements."  It obviously is not accurate to call an arbitration agreement a waiver agreement, and that alone is enough to reject that label.  But it is not just inaccurate; it is prejudicial.  Plaintiff's choice of words paints a picture that arbitration is so inferior to litigation that an agreement to arbitrate is effectively the same as an

agreement to waive a claim entirely.  That is the exact kind of hostility toward arbitration that courts have been instructed to avoid.  *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34 n.5 (1991) (rejecting "the view that arbitration was inferior to the judicial process").

**D. Plaintiff's Proposed Notice Omits the Possibility that the Release Payments May be Recovered.**

While this Court prohibited Better "from requesting reimbursement of any payments made," the Court stated that Better "may be entitled to an offset for payments made." (Dkt. 91, p. 1734.)  Plaintiff's proposed Notice improperly omits this point.  Yet, this will likely be the first question that people ask when they learn that the Court has invalided the release agreements.  Intuitively, people understand that if they receive money as part of a contract, but the contract is then rescinded or cancelled in some way, they may be required to return the money.  This question can and should be preemptively addressed in the Notice, in the manner specified by this Court's Order.

**E. Plaintiff's Proposed Notice is Unclear Regarding the Effect of the Court's Order on the Agreements.**

If nothing else, the Corrective Notice needs to be clear regarding the effect of the Court's Order on the Agreements.  Plaintiff's proposed Notice goes back and forth between stating that they are "void as to any claims asserted in this case" and merely stating that they are "void."  There is a big difference between those two things, and the Corrective Notice cannot be ambiguous on this point.  One of those characterizations relates to the Court's "authority to exercise control over a class action." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).  The other would be a sweeping repudiation of private agreements having nothing to do with that authority.  Accordingly, Better's proposed Corrective Notice makes clear that the Court's Order is not a final judgment and "does not affect the validity of the Agreements with

respect to any disputes between you and Better other than with respect to the *Dominguez* lawsuit." Plaintiff's reliance on *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238-39 (9th Cir. 2017) to argue that Better has somehow waived its right to appeal is entirely misplaced. *Bates* addressed a district court's ruling on a motion to strike class allegations and the plaintiff's attempt to appeal that order before final judgment. *Bates* in no way precludes Better from seeking review of the Court's order either via a writ petition or after final judgment.

**F. Plaintiff's Proposed Notice is Unclear Regarding the Restraints on Better's Speech.**

Pursuant to the Supreme Court's decision in *Gulf Oil*, an order restraining expression, must be "carefully drawn" in order to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102. Plaintiff's proposed Corrective Notice is neither carefully drawn nor limiting of speech as little as possible. It states that "Better is ordered to communicate with you and all potential class and collective members regarding the subject matter of this lawsuit only in writing and only with Court approval." By contrast, Better's proposed Corrective Notice states that "the District Court has ordered that, until it issues further notice, Better must seek approval to communicate with you and other potential class and collective members regarding the lawsuit, and that such communications may only be in writing." This distinction is critical, as Plaintiff's version gives no explanation of what the "subject matter of this lawsuit" means: does it mean that Better cannot discuss wages and hours with employees because those are part of the subject matter of the lawsuit, or does it mean only the lawsuit itself? Better's version makes clear that the latter is the case. Better contends that either restraint violates the Constitutional standard set forth in *Gulf Oil*. But the latter, which would permit Better to discuss wage and hour matters (as opposed to the lawsuit specifically) with employees and obtain factual information to defend itself in this litigation, is far more

1    narrowly tailored.

2        In addition, Better requests clarification regarding its ability to respond to

3 inquiries from employees regarding the lawsuit. Specifically, Better requests

4 permission to respond to such inquiries by telling employees that: "Although Better

5 denies the allegations in the *Dominguez* lawsuit, Better cannot advise employees on

6 whether to participate in the lawsuit and cannot provide further comment at this

7 time."

8    **G. Plaintiff's Proposed Notice Improperly Conflates Putative Class and**

9        **Putative Collective Action Members.**

10        This Court's Order repeatedly refers to putative "class" members and cites

11 Rule 23 and authorities decided thereunder to support its decision. *See, e.g.,* Dkt. 91,

12 p. 1727-28 ("[b]ecause of the potential for abuse, a district court has both the duty

13 and the broad authority to exercise control over a class action and to enter appropriate

14 orders governing the conduct of counsel and parties…. District courts exercise that

15 authority pursuant Federal Rule of Civil Procedure 23(d), which provides district

16 courts with "the 'power to regulate the notice and opt-out processes.") (quoting from

17 *Kirby v. Kindred Healthcare Operating, LLC*, 2020 WL 4639493, at *2 (C.D. Cal.

18 May 1, 2020, and *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).) The Court's

19 order contains no discussion and cites no authority to support restraints on speech in

20 the FLSA context. As the Ninth Circuit has explained, "[c]ollective actions and class

21 actions are creatures of distinct texts—collective actions of section 216(b), and class

22 actions of Rule 23—that impose distinct requirements." *Campbell v. City of Los*

23 *Angeles*, 903 F.3d 1090, 1101; see also 1105 ("A collective action is more accurately

24 described as a kind of mass action, in which aggrieved workers act as a collective of

25 *individual* plaintiffs with *individual* cases.) (emphasis in original).

26        Because the Court's order does not discuss the collective action mechanism,

27 nor does it refer to putative collective action members, it is thus Better's

28

understanding that the Court's findings regarding the Agreements only apply to putative class members (and thus only putative class members who were not new hires at the time of signing will receive the Corrective Notice) .  Indeed, the release agreement specifically excluded FLSA claims, so it makes no sense to invalidate the release as to putative collective action members;  the release already did not apply to the FLSA claims that would be covered by the collective action.  (*See* Dkt. 91 at 1725.)   Accordingly, the Corrective Notice should properly distinguish between putative class action members and putative collective action members, which Better's does.

**H. The Parties' Dispute Regarding "New Hires"**

As set forth in Better's briefing, after Better presented the release and arbitration agreements to currently-employed underwriters in October 2020. Following that distribution, Better began presenting new-hires with the arbitration agreement (as part of the Employment Agreement), along with their offer letter.  This Court's order makes clear that the Court is not invalidating the arbitration agreements signed by individuals as new hires.  (*See* Order at 1734 ("As to the Employment Agreement, the Court declines to invalidate the agreement as to new hires.")  Plaintiff's counsel now contend that they must be provided with the list of Notice recipients, as well as a data confirming employee start dates in order to verify that anyone who signed the Employment Agreement on or even one day after their start date receive the notice.  This is an overly-narrow view of the Court's use of the term "new hire" and Plaintiff's proposed process will only lead to more disputes between the parties regarding this term.  Better can readily identify the putative class members who were presented with the Agreements on October 19, 2020, after they had already been employed by Better, and these should be the only individuals who receive the Notice.

1

**I. Conclusion.**

2

3      Better's proposed Corrective Notice is accurate, concise, and non-

4   argumentative. While Better believes the Agreements were validly obtained and

5   should have been upheld, Better nevertheless has attempted to effectuate that Order

6   in its draft of the Corrective Notice. Plaintiff has not. Having won on his underlying

7   request for a notice regarding the Agreements, Plaintiff now attempts to parlay that

8   victory into a completely different court-approved notice that purports to endorse his

9   substantive arguments on the merits. Because that violates both the letter and the

10  spirit of the Court's Order, Better respectfully requests that the Court reject Plaintiff's

11  proposed Corrective Notice, and that it adopt Better's instead.

12

13  Dated:  May 31, 2022                    ADAM KARR
                                            SUSANNAH K. HOWARD
14                                          ALLAN GUSTIN
                                            O'MELVENY & MYERS LLP
15

16

17                                          By: /s/ Susannah K. Howard
                                                 Susannah K. Howard
18
                                            Attorneys for Defendant BETTER
19                                          MORTGAGE CORPORATION

20  Dated:  May 31, 2022
21                                          NICHOLS KASTER, LLP
                                            HEAD LAW FIRM, LLC
22                                          ROSEN MARSILI RAPP LLP

23

24                                          By: /s/ Daniel S. Brome
                                                 Daniel S. Brome
25
                                            Attorneys for Plaintiff LORENZO
26                                          DOMINGUEZ

27

28