# EXHIBIT A-3

<u>*Dominguez v. Better Mortgage Corp.*</u>, Case No. 8:20-cv-01784-JLS-KES
**United States District Court for the Central District of California**

> # If you signed a Release Agreement and/or an At-Will Employment/Arbitration Agreement while working for Better Mortgage, the Court has ordered that those agreements are VOID as to any claims asserted in this case, and cannot be used in any way to prohibit you from participating in or recovering from this case.

CORRECTIVE NOTICE

[NAME]
[ADDRESS]
[EMAIL ADDRESS]
DATES OF EMPLOYMENT AT BETTER: [Insert]

This is an official communication from the Court regarding this case. **Please read it carefully.**

**Commented [A1]:** *Quezada v. Schneider Logistics Transloading & Distribution, Inc.*, No. 2:12-cv-02188-CAS-DTB [ECF 72] (C.D. Cal. May 21, 2013) (Court-ordered Notice: "This is an official communication from the Court regarding the case. **Please read it carefully**.") (hereinafter "*Quezada* Notice"); *Kirby v. Kindred Healthcare Operating, LLC*, No. 5:19-cv-00833-JLS [ECF 72-1] (C.D. Cal. May 20, 2020) (parties' proposed Notice: "**COURT-ORDERED CURATIVE NOTICE ABOUT KINDRED'S SETTLEMENT COMMUNICATIONS WITH YOU...PLEASE READ THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR RIGHTS**") (hereinafter "*Kirby* Notice"); *Slavkov v. Fast Water Heater Partners I, LP*, No. 3:14-cv-04324-JST [ECF 74-1] (N.D. Cal. Nov. 12, 2015) (Court-ordered corrective Notice: "Please read this notice carefully as it contains important information about your legal rights.") (hereinafter "*Slavkov* Notice") …

-1-

1. Why am I receiving this Notice?

      You are receiving this Notice because the federal District Court has made a ruling affecting your rights in a lawsuit entitled *Dominguez v. Better Mortgage Corporation*, filed as a potential class and collective action on behalf of current and former underwriting employees seeking recovery of unpaid overtime under federal and California laws (the "lawsuit"), that is now pending in the U.S. District Court for the Central District of California (the "Court"). The Judge presiding over the lawsuit has approved this Notice and ordered Defendant Better Mortgage Corporation ("Better") to send it to you. As a current or former underwriting employee of Better who was paid as if you were exempt from the federal and state overtime pay laws, you are a potential federal law collective action member (and if you worked in California, a potential state law class member) in that lawsuit.

> **Commented [A2]:** *Kirby* Notice:
> "***Why should you read this notice?***
> The Plaintiffs named above are current and former employees of Kindred entities who have filed a lawsuit against the entities alleging that they committed various Labor Code violations against Plaintiffs and other non-clinician or piece rate employees, including you. The Plaintiffs have asked the Court to certify the Lawsuit as a class action so that Plaintiffs and the other employees may collectively recover unpaid wages and penalties that they believe the Kindred entities owe them.
> While the parties await the Court's decision on Plaintiffs' class certification request, and before the Court ruled on the merits of Plaintiffs' claims, Kindred contacted you and asked you to enter into a settlement agreement with Kindred and the Kindred-related entities in the case ("Kindred") that would release your individual claims in the Lawsuit in exchange for [$350/$250].
> The Court ruled that Kindred's settlement communications were misleading in that they did not include certain information you needed to make an informed decision whether to accept or reject Kindred's settlement offer. The Court therefore ordered Kindred to send you this Curative Notice to ensure that you have all the information you need to make an informed decision.
> If you previously signed the settlement agreement that Kindred sent you, the Court ruled that you may void (or cancel) that agreement after reviewing this Curative Notice and, if you want, after discussing Kindred's settlement offer with Plaintiffs' attorneys at no cost to you, or with an attorney you choose to hire."

> **Commented [A3]:** Transcript of 3/25/22 Hearing in *Dominguez v. Better Mortgage Corp.* ("Transcript"), p. 19 ("[Court: ]I'm likely to issue a notice that's very similar to what, um, Mr. Head identified…"); Plaintiff's original proposed Notice [ECF 52-3] ("Original Proposed Notice") ("You are receiving this notice regarding your rights in relation to a potential class and collective action lawsuit entitled *Dominguez v. Better Mortgage Corporation*, now pending in the U.S. District Court for the Central District of California (the "lawsuit"). The Judge presiding over the lawsuit has approved this notice and authorized Plaintiff's counsel to send it to you. As a current or former underwriting employee of Defendant Better Mortgage Corporation ("Better") who was paid as if you were exempt from the federal and state overtime pay laws, you are a potential federal law collective action member (and if you worked in California, a potential state law class member) in that lawsuit.")

The former underwriting employee who filed the lawsuit, Lorenzo Dominguez ("Plaintiff"), brought it to the attention of the Court that beginning on October 19, 2020, after being served with this lawsuit, Better sent its underwriting employees DocuSign emails containing electronic links to an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement ("Employment Agreement"), and a separate Release Agreement ("Release Agreement") (those two agreements are collectively referred to in this Notice as the "Waiver Agreements"). The Employment Agreement, if signed and found legally enforceable, would have prohibited you from participating in this case, waived your right to a jury trial or to appeal, and would have required that you could not assert any of the work-related claims (including those alleged on your behalf in this case) in any court and instead could only do so by filing a claim in private arbitration solely on your own as an individual (not as a member of any class or collective action). The Release Agreement, if signed and found legally enforceable, would have forfeited and released all claims of the type alleged in this case that you might have had under California law or the wage laws of any other state.

**Commented [A4]:** *Slavkov* Notice: "The Plaintiffs challenged the validity of the Release in Court."

**Commented [A5]:** *Dominguez v. Better Mortg. Corp.*, No. 8:20-cv-01784-JLS-KES, 2022 U.S. Dist. LEXIS 91691, at *3-4 (C.D. Cal. May 17, 2022) ("The emailed Employment Agreement contained an Arbitration Agreement (appended as Exhibit E to the Employment Agreement). (Ex. 1 (Employment Agreement) at PDF Page 24, Doc. 52-4.) The Arbitration Agreement provided, among other things, that "[i]n consideration of my employment with the Company, . . . I agree that any and all controversies, claims, or disputes that I have or may in the future have with the Company . . . , arising out of, relating to, or resulting from my employment or relationship with the Company . . . shall be subject to binding arbitration." (Id.) The Arbitration Agreement further provided that underwriters "may bring any arbitration proceeding only in [their] individual capacity, and not as a plaintiff, representative, or class member in any purported class, collective, or representative lawsuit or proceeding.")

**Commented [A6]:** *Dominguez*, 2022 U.S. Dist. LEXIS 91691, at *4-5 ("The Release Agreement provided that in exchange for $5,000, the underwriter agrees to release "all claims (except those under the FLSA) that were or could have been asserted in the Lawsuit (including claims for failure to provide overtime, failure to provide accurate itemized wage statements, failure to provide meal and rest periods, failure to pay wages owed upon termination, or unfair business practices." (Ex. 3 (Release Agreement) at PDF Pages 32-33, Doc. 52-4.)")

**Commented [A7]:** Original Proposed Notice [ECF 52-3]: ("It has come to attention of the Court that beginning on or about October 20, 2020, Better sent its underwriting employees DocuSign emails containing electronic links to an At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement ("Employment Agreement"), and a separate Release Agreement ("Release Agreement") (those two agreements are collectively referred to herein as the "Waiver Agreements"). The Employment Agreement, if signed and found legally enforceable, would have prohibited you from participating in this case, waived your right to a jury trial or to appeal, and required that you could only assert any of the work-related claims alleged on your behalf in this case by instead filing a claim in arbitration solely on your own as an individual (not as a member of any class or collective action). The Release Agreement, if signed and found legally enforceable, would have released all claims of the type alleged in this case that you might have had under California law or the wage laws of any other state.")

    The Court did not review, approve, or know about the presentation of these Waiver Agreements to potential class and collective action members before Better presented them to you. The Court has since learned of the Waiver Agreements and the manner in which they were communicated, and the Court has ruled that Better engaged in misleading and coercive conduct in presenting the Waiver Agreements that was designed to impermissibly thwart current employees' participation in this lawsuit.

> **Commented [A8]:** Original Proposed Notice [ECF 52-3]: ("The Court did not review, approve, or know about the presentation of these Waiver Agreements to potential class and collective action members before Better presented them to you. The Court has since learned of the Waiver Agreements and the manner in which they were communicated, and the Court found some of the information communicated to be misleading and/or potentially coercive…")

> **Commented [A9]:** *Dominguez*, 2022 U.S. Dist. LEXIS 91691, at *11 ("The Court finds that this case presents communications that are in some cases, more misleading and more inherently coercive than that presented in Kirby, necessitating invalidation of the Employment Agreements and Release Agreements"; "the Court finds that the Release Agreements were misleading"; "Defendant also provided confusing and misleading information about the Release Agreement's scope"; "Given that the Court finds that the agreements were obtained through coercive or misleading information, the Court finds it necessary to invalidate the agreements."); *Johnson v. Serenity Transp.*, No. 3:15-cv-02004-JSC [ECF 206] (N.D. Cal. Nov. 7, 2017) (Court-ordered Corrective Notice ("*Johnson* Notice"): **The Court recently issued an order finding that Serenity acted improperly; invalidating Defendants' releases; and giving Drivers another opportunity to join this lawsuit.**") (emphasis original)

> **Commented [A10]:** *Dominguez*, 2022 U.S. Dist. LEXIS 91691, at *19 ("the Court's concerns as to the Employment Agreement are based in large part on the above-described coercive tactics to thwart current employees' participation in this action")

> **Commented [A11]:** *Marino v. CACafe, Inc.*, No. 16-cv-6291 YGR, 2017 U.S. Dist. LEXIS 64947, at *9 (N.D. Cal. Apr. 28, 2017) (Court-ordered Notice: "You are receiving this notice, because you may have received emails from the owners or managers of CACafe, Inc. (CACafe) requesting that you sign a release agreement for any potential legal claims in exchange for a payment (approximately $500). These emails and release agreements were not reviewed or authorized by the Court. The Court has determined that the emails and release agreements were misleading and improper.") (hereinafter "*Marino* Notice"); *Stransky v. Healthone of Denver*, 929 F. Supp. 2d 1100, 1114 (D. Colo. 2013) (Court-ordered Notice: "The statement that was read to you was not approved by the Court, and the Court did not authorize HealthONE to read the statement. Because the statement contained misleading information, the Court has ordered this Corrective Notice to be sent to you.") (hereinafter "*Stransky* Notice")

You are being sent this Court-ordered Notice because you signed one or both of those Waiver Agreements after you started working for Better. The Court has approved sending you this corrective notice to clear up any confusion regarding the effect of the Waiver Agreements, by making it clear that they cannot in any way impact your rights regarding this lawsuit.

The Court has ruled that both of the Waiver Agreements are void and cannot be used in any way to prohibit you from joining, participating in, or receiving any recovery from, this lawsuit. In addition, the Court prohibited Better from requesting reimbursement of any payments made. *The Court is **not** requiring that you return any monies paid to you.*

> **Commented [A12]:** Original Proposed Notice [ECF 52-3]: "You are being sent this Court-approved notice because you signed one or both of those Waiver Agreements. The Court has approved sending you this corrective notice to clear up any confusion regarding the Waiver Agreements and their impact on your rights."
>
> **Commented [A13]:** *Marino* Notice: "This notice is being sent to you to inform you that the Court has ordered that the releases are invalid…"
>
> **Commented [A14]:** *Dominguez v. Better Mortg. Corp.*, No. 8:20-cv-01784-JLS-KES, 2022 U.S. Dist. LEXIS 91691, at *18 (C.D. Cal. May 17, 2022) (granting plaintiff's request to invalidate "all release agreements and arbitration agreements, as to these putative class and collective members' participation, and claims arising from facts pled, in this litigation"; "In invalidating the Release Agreements, the Court prohibits Defendant from requesting reimbursement of any payments made.")
>
> **Commented [A15]:** *Marino* Notice (emphasis in original): "*The Court is **not** requiring that you return any monies paid to you.*"

2. What is this lawsuit about?

> **Commented [A16]:** *Kirby* Notice:
> ***What are the claims in the Lawsuit?***
> Plaintiffs…claim that you, and other current and former non-exempt, hourly-paid employees of Defendants (excluding Clinicians and piece-rate paid employees) who worked for Defendants in California at any time since May 12, 2013 (the "Putative Class Members") are owed unpaid wages and/or penalties.
> In the Lawsuit, Plaintiffs allege and Kindred denies that Kindred committed the following Labor Code violations:
> • not paying you overtime wages when you worked more than 8 hours in a day or more than 40 hours in a workweek;
> • not paying you regular hourly wages for all the hours you worked (including off-the-clock hours);
> • not providing you with timely, uninterrupted 30-minute meal breaks and/or all the 10-minute rest breaks to which you were entitled;
> • not paying you one additional hour of pay for each missed, late, or interrupted meal or rest break that Kindred provided you;
> • not providing you complete and accurate wage statements (or pay stubs);
> • failing to maintain complete and accurate payroll records for each employee;
> • not timely paying you the wages you earned during your employment and/or not paying you all the wages you earned when your employment ended;
> • failing to pay "split shift" premiums. A "split shift" occurs when an employee's shift is interrupted by one or more unpaid, nonworking periods established by the employer that are not bona fide rest or meal periods. A split shift premium is one hour of pay at the state or local minimum wage, whichever is greater. Plaintiffs are not pursuing the "split shift" claim on a class basis on your behalf, however if you entered into an individual settlement agreement or choose to enter into one, you will release your "split shift" claim;
> • failing to pay "reporting time pay." "Reporting time pay" is owed to an employee who is scheduled to report to work but who is not put to work at all or who is permitted to work less than half of their shift by the employer. For each workday that this happens, the employee must be paid for half the usual or scheduled day's work, but in no event for less than two hours or more than four hours, at his or her regular rate of pay. Plaintiffs are not pursuing the "reporting time pay" claim on a class basis but if you entered into a settlement
> • agreement or choose to enter into one, you will release your "reporting time pay" claim.
> • failing to pay you wages for the time it took before you worked your first shift to undergo Kindred's mandatory drug test and physical examination; and
> […]

Generally, the provisions of the federal and state overtime laws require that, for all overtime hours that an employee works, the employer must compensate the employee at the rate of one and one-half times his or her regular hourly rate, unless the employer carries its burden of proving that employee is properly classified as "exempt" from the applicable overtime laws. Plaintiff filed claims in the lawsuit on behalf of a proposed nationwide opt-in collective under federal law, and a proposed class action under California law, of current and former mortgage loan underwriting employees for unpaid overtime wages and other work-related claims. Plaintiff alleges that Better violated the applicable overtime laws as to all underwriters by failing to pay him and other underwriters overtime wage premiums. Regarding the unpaid overtime claims under the federal Fair Labor Standards Act ("FLSA"), Plaintiff contends that he and all other underwriters nationwide should have been paid overtime wages for all time they worked in excess of forty (40) hours in a week, doubled for additional liquidated damages under the FLSA. Under federal law, if plaintiff(s) prevailed, Better would also be required to pay the prevailing plaintiff(s)' attorney's fees and costs in addition to, not by deduction from, the amounts owed to the employee.

Plaintiff also alleged class action claims for all underwriters who worked in California for failure to pay overtime under California state law, which – unlike the federal law – does not allow Better to claim any special exemption from owing overtime due to paying underwriters more than $107,432 annually (beginning 2020; $100,000 in years prior). Because that "highly compensated employee" special exemption defense is not available to Better as to overtime allegedly owed under California law, Plaintiff contends that the likelihood of prevailing on California claims is even higher than on federal overtime claims for employees paid those amounts. Plaintiff contends that California underwriters should have been paid overtime wages under California state law at a rate of 1.5 times their regular rate of pay (total salary and bonus per week divided by 40 hours) for all time that they worked over 40 hours a week, and (if greater) all time worked over 8 hours in a day or on the seventh consecutive day worked, and double time for hours after 12 in a day or after 8 on the seventh consecutive day worked. In addition, Plaintiff claims that California underwriters are owed 10% interest on unpaid overtime pay from the date each payment was due through the date of judgment.

By way of example, Plaintiff calculates that an underwriter earning a salary of $100,000 per year and working 10 hours per week of overtime would be entitled to $721.15 per week of unpaid overtime wages. If that employee earned $40,000 in bonus payments spread evenly over the year, Plaintiff contends the employee would be entitled to an additional $288.46 per week in unpaid overtime wages. All told, according to Plaintiff's calculations, this example employee would be due $1,009.61 in unpaid overtime for each week of the statutory recovery period. Over a one year period, these amounts owed would total $52,499.72 under both federal and California law – *before* doubling that amount to $104,999.44 for liquidated damages (federal law), or increasing that amount for hours worked over 8 in a day or double time hours and then adding 10% interest (California law for underwriters who worked in California).

---

**Commented [A17]:** *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 671 (E.D. Tex. 2003) (Court-ordered Notice: "Generally, the overtime provisions of the Act require that, for all hours over forty hours per week that an employee works, the employer must compensate the employee at the rate of one and one-half times his or her regular hourly rate, unless that employee is properly classified as "exempt" from the overtime provisions of the Act.")

**Commented [A18]:** *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 675-76 (E.D. Tex. 2003) (Court-ordered Corrective Notice: "**The Damages to Which You Are Entitled if Successful.** The law provides that, if EmCare failed to pay you overtime to which you were legally entitled, you are entitled to recover 100% of the overtime pay you did not receive for the two years prior to your joining this lawsuit (three years if, as Plaintiff has alleged, EmCare's failure to pay you overtime is found to have been willful), an equal amount as 'liquidated damages,' plus attorneys' fees and costs.")

In addition to unpaid overtime, Plaintiff contends that he and other underwriters who worked in California are entitled to premium payments and monetary penalties under California law for failure to provide accurate wage statements detailing the hours worked and rates of pay, failure to pay all wages due upon termination (for those whose employment terminated), failure to reimburse cellular phone and home office internet expenses while working remotely, and failure to provide, authorize, or permit proper meal and rest periods. Under California law, non-exempt employees are entitled to a timely, 30 minute, uninterrupted meal period, and two 10 minute rest periods, in a typical work day. Plaintiff contends that Better owes premium payments of one hour of pay for each day Better failed to provide a compliant meal period, and one hour of pay for each day Better failed to provide a compliant rest period. Assuming only one missed meal period or rest period each day, an employee with the compensation described above would be owed $19,998.33 over a one year period in premium payments alone. Plaintiff also contends that underwriters are owed an additional amount in California law penalties of up to $4,000 per employee for failure to provide accurate wage statements, and (for employees whose employment terminated for any reason) up to 30 days of pay as a penalty for failing to pay all wages due at termination (i.e., an additional $18,460), in addition to any amount determined to be owed for unreimbursed business expenses incurred while working remotely.[1]  And as with the federal law claims, if plaintiff(s) prevailed on California overtime and/or most of the other California law claims, Better would also be required to pay the prevailing plaintiff(s)' attorney's fees and costs in addition to, not by deduction from, the amounts owed to the employee.

The above discussion is only a sample hypothetical calculation. Damages could be higher than this hypothetical calculation if, for example, an employee worked more than 10 hours of overtime in a week, earned more than the assumed base and bonus pay, or worked longer than the assumed one year within the applicable statutory limitations period. Damages could be lower if, for example, an employee earned or worked less, or if the Court determined that Plaintiff and other underwriters were not entitled to some or all damages or penalties under Plaintiff's proposed calculation method.

The "statute of limitations" – the time limit after which you forfeit your ability to recover overtime pay for hours worked in a week – under federal law is two years (three if the violation was "willful") preceding the date you file a court action (or a consent to join this lawsuit), and the statute of limitations for California overtime and most other California claims is four years preceding the September 18, 2020 filing date of this lawsuit (for other states having overtime laws available to you, it ranges from two or three years for some states to six years under New York law). The federal statute of limitations has been tolled for certain periods in this lawsuit.

---

[1] Plaintiff also filed a representative action under California's Private Attorneys General Act ("PAGA"), seeking to recover all aggrieved California underwriters' statutorily provided share of certain additional monetary civil penalty amounts.

3. How does the Court's ruling affect me?

Plaintiff alleges (and Better denies) that you have valid claims arising out of your employment as a salaried, exempt-paid underwriting employee; that the Employment Agreement waiving your right to a trial in court, requiring arbitration, and forfeiting your right to participate in a class and collective action was not in your best interest; and that the $5,000 amount paid under the Release Agreement bore no relation to the potential value of your claims. The Court has now ruled that both of those agreements are void and cannot bar your participation in this case.

> **Commented [A21]:** *Molyneux v. Securitas Security Servs. USA*, No. 4:10-cv-00588-JAJ-TJS [ECF 72-2] (S.D. Iowa July 13, 2011) (Court-ordered corrective Notice: "Plaintiffs' attorneys believe [the arbitration agreement] is in your best interest…because: (1) in a lawsuit you are entitled to a jury trial; (2) a lawsuit preserves a right to appeal; and (3) in a lawsuit, Securitas' employees will not be responsible for the fees and costs of the Plaintiffs' attorneys.")

A class action is a type of lawsuit brought by one or more plaintiffs on behalf of themselves and others sharing common claims. To maintain a class action on behalf of a class of individuals in this lawsuit, Plaintiff must file a request for class certification that establishes that the lawsuit should proceed as a class action, which is usually filed later in the litigation after the parties have completed the discovery phase. If that request for class certification is granted, the lawsuit will continue and Plaintiff and his attorneys will collectively represent all potential class members through trial, unless a potential class member affirmatively opts out. If that request for class certification is denied, Plaintiff and anyone who joins the lawsuit as a Plaintiff may individually pursue the claims alleged in the lawsuit, but may not pursue the class claims on behalf of you or any other potential class member.

> **Commented [A22]:** *Kirby* Notice:
> **What is a class action?**
> A class action is a type of lawsuit brought by one or more plaintiffs on behalf of themselves and other persons sharing a common interest and common experience. As part of a class action lawsuit, the plaintiffs must file a request for class certification that establishes that the lawsuit should proceed as a class action.
> If Plaintiffs' request for class certification is granted, the Lawsuit will continue and Plaintiffs and Class Counsel will collectively represent all Putative Class Members through trial. If Plaintiffs' request for class certification is denied, Plaintiffs may individually pursue the claims alleged in the Lawsuit, but may not pursue the claims on your behalf or any other Putative Class Member.

A collective action is a lawsuit under the federal Fair Labor Standards Act that any similarly situated employee has a right to join by affirmatively filing a signed consent to opt-in. Plaintiffs typically file a request for Court approval to issue notice of rights to join that collective action lawsuit and seek recovery on federal overtime claims, usually before the parties begin the discovery phase. If the Court grants that request, notice issues to the potential collective action members. And if the Court does not decertify that collective action, Plaintiff and his attorneys will collectively represent all individuals who filed consents to join the lawsuit through trial. You can only join the collective action FLSA overtime claims in the lawsuit by filing a signed consent to join the lawsuit as an opt-in plaintiff.

> **Commented [A23]:** FLSA collective action equivalent of *Kirby* Notice's "*What is a class action?*" explanation.

The Court has not yet determined whether the case will proceed as a class or collective action. The Court also has not ruled on whether the Plaintiff's claims or Better's defenses have merit. The Court has, however, denied Better's motions to deny certification of a class or collective action on the basis of the Waiver Agreements. Better denies that Plaintiff's claims have merit and denies that the case should be allowed to proceed as a class and collective action.

You are not required to do anything in order for the Waiver Agreements to be unenforceable. If the Court later certifies this case to proceed as a nationwide opt-in collective action for underwriting employees, you will be notified of your rights and any action you may need to take to participate in this case at the appropriate time after any such collective or class certification ruling. If the Court later certifies a class action of which you are a class member, or Plaintiff is permitted to pursue claims as your representative, you will be part of the litigation and will be notified accordingly.

**Commented [A24]:** *Kirby* Notice:
***What is the status of the Lawsuit?***
The Court has not yet decided if Plaintiffs claims have merit. Additionally, the Court has not yet determined if the Lawsuit should proceed as a class action, but a Court hearing is set for June 12, 2020 to make that decision. Currently, there is no trial date set.

**Commented [A25]:** *Dominguez v. Better Mortg. Corp.*, No. 8:20-cv-01784-JLS-KES, 2022 U.S. Dist. LEXIS 91685, at *1 (C.D. Cal. May 17, 2022) ("Defendant seeks to deny class certification under Federal Rule of Civil Procedure 23 and conditional certification under the Fair Labor Standards Act on the basis that most members of the putative class agreed to an Employment Agreement (containing an Arbitration Agreement) and signed a Release Agreement. (See Docs. 53-54.) However, as the Court invalidated the Employment Agreement and the Release Agreement as to certain putative class members, the Motions are DENIED.")

**Commented [A26]:** *Slavkov* Notice: "You do not need to do anything in response to this Notice, and you are not required to return any money you may have received in connection with the invalidated Release."

**Commented [A27]:** *Marino* Notice:
"Depending upon future rulings of the Court, you may be asked to complete a consent form, or receive other notice regarding whether you wish to participate in this lawsuit."

**Commented [A28]:** *Slavkov* Notice: "If a class is certified or Plaintiffs are permitted to pursue claims as your representatives or if you elect to join the suit, you will be part of the litigation."

      Any Waiver Agreement you previously signed with Better has now been ruled <u>void</u> as it relates to this lawsuit, and Better cannot prohibit you from joining, participating in, or receiving any recovery from this lawsuit based on any agreement you signed as a Better employee. In addition, the Court ruled that Better is prohibited from requesting reimbursement of any payments made. *The Court is **not** requiring that you return any monies paid to you.* The Court will decide later whether Better may (or may not) be entitled to any offset for payments made against any recovery amount you might receive from the lawsuit. Even if no payments are awarded by the Court in the future, you will not be required to return any payment you previously received from Better for signing the Release Agreement and/or Employment Agreement.

**Commented [A29]:** *Dominguez*, 2022 U.S. Dist. LEXIS 91691, at *18 ("In invalidating the Release Agreements, the Court prohibits Defendant from requesting reimbursement of any payments made. *See Marino v. CACafe, Inc.*, 2017 U.S. Dist. LEXIS 64947, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017)."); *Marino* Notice: "No person who received a payment in return for signing a release agreement will be required to return the payment. Any payment you received from CACafe in connection with signing the release agreement may be subtracted from any future payments you may be awarded, if ordered by the Court. Even if no payments are awarded by the Court in the future, you will not be required to return any payment you previously received from CACafe for signing the release agreement."

**Commented [A30]:** *Marino* Notice (emphasis in original): "*The Court is **not** requiring that you return any monies paid to you.*"

**Commented [A31]:** *Dominguez*, 2022 U.S. Dist. LEXIS 91691, at *18-19 ("The Court will determine later whether Defendant may be entitled to an offset for payments made.")

**Commented [A32]:** *Marino* Notice: "Even if no payments are awarded by the Court in the future, you will not be required to return any payment you previously received from CACafe for signing the release agreement."

In addition, the Court's Order ruled that based on Better's prior conduct in this lawsuit, until further notice of the Court, Better (and its attorneys) are ordered to communicate with you and all potential class and collective members regarding the subject matter of this lawsuit only in writing and only with Court approval. To date, the Court has not approved any communication with you by Better (or its attorneys) regarding the subject matter of this lawsuit other than sending you this Notice. If you receive any communications from Better (or its attorneys) regarding this lawsuit that (i) is not in writing, or (ii) does not state that the communications were pre-approved by the Court, please contact Plaintiff's lawyers immediately.

**Commented [A33]:** *Dominguez*, 2022 U.S. Dist. LEXIS 91691, at *20 ("*Third*, based on Defendant's prior conduct in this case, and to reduce the likelihood that the Court is once again called upon to fashion retrospective relief, until further notice of this Court, Defendant is ORDERED to communicate with putative class members regarding the subject matter of this litigation **only in writing and with Court approval.**") (emphasis original); *Quezada* Notice: "In addition, [defendant] and its attorneys are no longer allowed to communicate with you about the lawsuit without first obtaining permission from the Court. If any [defendant] managers, supervisors or attorneys speak with you about the lawsuit without showing you written permission from the Court to do so, you may refuse to speak with them, and cannot be punished due to your refusal.")

**Commented [A34]:** *Johnson* Notice: "During this opt-in period, Serenity is not permitted to discuss this lawsuit with you. If you receive any communications from Serenity or its representatives, including [name], regarding this lawsuit during the optin period, please contact Plaintiffs' lawyers immediately."; *Quezada* Notice: "Schneider and its attorneys are no longer allowed to communicate with you about the lawsuit without first obtaining permission from the Court. If any Schneider managers, supervisors or attorneys speak with you about the lawsuit without showing you written permission from the Court to do so, you may refuse to speak with them, and cannot be punished due to your refusal."

4. What if I want more information?

Copies of Plaintiff's Complaint, and the Court's Order voiding the Waiver Agreements and authorizing this notice, are attached with this Notice. You may also review them by clicking or visiting this URL:

[insert NK document page website link].

Or, you may also review them by creating or accessing an account through PACER:

https://pacer.login.uscourts.gov/csologin/login.jsf?pscCourtId=CACDC&appurl=https://ecf.cacd.uscourts.gov/cgi-bin/pacer_showpage.pl?16

> **Commented [A35]:** *Kirby* Notice: "A copy of Plaintiffs' Complaint filed in the Lawsuit is included with this Notice."
>
> **Commented [A36]:** *Martin v. Partsbase, Inc.*, No. 20-80235-Civ-Bran, 2020 U.S. Dist. LEXIS 248626, at *18 (S.D. Fla. Dec. 7, 2020) ("The corrective notice shall include a copy of this Order."); *Georgine v. Amchem Prods.*, 160 F.R.D. 478, 506 (E.D. Pa. 1995) (court ordered corrective notice to be sent, including a summary of the developments in the litigation and a copy of the court's order)

More information about the lawsuit is available at https://www.nka.com/cases/employment-cases/better-mortgage.html. You can also obtain more information by contacting Plaintiff's attorneys who seek to represent you in this lawsuit:

| | |
|---|---|
| Matthew Helland<br>Daniel Brome<br>NICHOLS KASTER, LLP<br>235 Montgomery St., Suite 810<br>San Francisco, CA  94104<br>Telephone: (415) 277-7235<br>Facsimile: (415) 277-7238<br>forms@nka.com | C. Andrew Head<br>Bethany Hilbert<br>HEAD LAW FIRM, LLC<br>4422 N. Ravenswood Ave., Suite 3<br>Chicago, IL 60640<br>Telephone: (312) 690-7765<br>Facsimile: (404) 796-7338<br>bhilbert@headlawfirm.com |

Contacting Plaintiff's counsel is confidential and without charge or obligation, and will not be disclosed to Better.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS NOTICE OR THE LAWSUIT. VISIT [WEBSITE URL] FOR FURTHER INFORMATION AND ANNOUNCEMENTS REGARDING THE LAWSUIT. NOTICE OF ANY RULINGS OR CASE UPDATES WILL BE POSTED ON THE WEBSITE.

**Commented [A37]:** Original Proposed Notice: "Copies of Plaintiff's Complaint, Plaintiff's Motion, and Court's Order authorizing this notice, are attached with this Notice. You may also review them by clicking or visiting the URL https://_____ or through PACER, https://pacer.uscourts.gov/. More information about the lawsuit is available at [insert website link]. You can also obtain more information by contacting Plaintiff's attorneys who seek to represent you in this lawsuit: [names and contact info]"

**Commented [A38]:** *Kirby* Notice: "**Who are the Plaintiffs' Attorneys?** Attorneys for Plaintiffs / Putative Class Members: [Listing names and contact info]"

**Commented [A39]:** *Agerbrink v. Model Serv. LLC,* 2015 U.S. Dist. LEXIS 145563, at *33-34 (S.D.N.Y. Oct. 27, 2015) (Court-ordered Corrective Notice: "Talking to the plaintiff's attorney will not obligate you to join this lawsuit.")

**Commented [A40]:** Original Proposed Notice: (verbatim); *Kirby* Notice: "The Court ordered Kindred to provide your contact information to Plaintiffs' attorneys. Plaintiffs' attorneys may contact you to provide you with information about the Lawsuit and/or offer to answer any questions you may have about it. You do not have to speak to them if you do not wish to do so. Any communications you have with them will be free of charge to you."; *Molyneaux* Notice: "If you have questions about the effects of the arbitration policy or questions about this case, please feel free to call any of the Plaintiffs' attorneys at the end of this paragraph, at no charge to you…"; *Quezada* Notice: "all of your communications with an attorney will be confidential"

**Commented [A41]:** Original Proposed Notice: (verbatim)