**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LORENZO DOMINGUEZ, individually, on behalf of others similarly situated, and on behalf of the general public, | No. 22-55731 |
| | D.C. No. 8:20-cv-01784-JLS-KES |
| *Plaintiff-Appellee*, | |
| v. | |
| BETTER MORTGAGE CORPORATION, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted June 6, 2023
Pasadena, California

Filed December 7, 2023

Before:  Milan D. Smith, Jr., David F. Hamilton,[*] and
Daniel P. Collins, Circuit Judges.

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the
U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

Opinion by Judge David F. Hamilton;
Partial Concurrence and Partial Dissent by Judge Collins

---

**SUMMARY**[**]

---

**Labor Law**

The panel (1) affirmed the district court's order imposing a communication restriction on the defendant employer in a putative collective and class wage-and-hour action under the Fair Labor Standards Act and state law; and (2) dismissed for lack of jurisdiction the employer's appeal from the district court's order nullifying agreements between the employer and current and former employees.

The lead plaintiff objected after his former employer responded to his lawsuit seeking unpaid overtime wages by trying to persuade employees to agree not to join any collective or class action and to encourage employees to settle their claims individually. The district court found that the employer's communications were misleading and coercive. The district court therefore nullified the new employment agreements and release agreements, and it ordered the employer to communicate with current and former employees about wage-and-hour issues only in writing and with prior approval.

The panel held that the employer's appeal was timely, even though the district court's order imposing the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

communication restriction was entered on May 17, 2022, more than 30 days before the filing of the notice of appeal, because the employer filed in substance a motion to reconsider the restriction, thus tolling the time to file the notice of appeal. The employer timely filed its notice of appeal within 30 days of the district court's order refusing to modify the May 17 order.

The panel held that, in this interlocutory appeal, it had jurisdiction under 28 U.S.C. § 1292(a)(1) to review the communication restriction because the restriction, which imposed a prior restraint, was injunctive in nature. Affirming in part, the panel held that the restriction was both justified and tailored to the situation created by the employer's misleading and coercive communications, and the district court therefore did not abuse its discretion in imposing the restriction.

Dismissing in part, the panel held that it lacked jurisdiction to review the district court's order nullifying new employment agreements and release agreements signed in response to the employer's communications that the district court found to have been misleading and coercive. The panel held that it lacked jurisdiction to consider the merits of the nullification order because the issue was raised in an interlocutory appeal and did not fit any exception, such as pendent appellate jurisdiction, that would allow for review.

Judge Collins concurred in Parts II and III(A) of the opinion, concluding that the panel had appellate jurisdiction over the district court's order requiring the employer to obtain prior court approval before engaging in certain communications with potential class members. As to the merits of the employer's challenges to the communications

order, imposing a prior restraint, Judge Collins wrote that he would vacate that order and remand for further consideration, and he therefore dissented from the majority's contrary disposition. Concurring in the judgment in part, Judge Collins agreed with the majority's ultimate conclusion that the panel lacked appellate jurisdiction over the further portions of the district court's orders nullifying certain agreements between the employer and some of its employees.

## COUNSEL

Anton Metlitsky (argued), O' Melveny & Myers LLP, New York, New York; Adam J. Karr, O' Melveny & Myers LLP, Los Angeles, California; Paul A. Holton, O'Melveny & Myers LLP, Newport Beach, California; Susannah K. Howard and Racquel B. Martin, O'Melveny & Myers LLP, San Francisco, California; for Defendant-Appellant.

Matthew C. Helland (argued) and Daniel S. Brome, Nicholas Kaster LLP, San Francisco, California; C. Andrew Head and Bethany A. Hilbert, Head Law Firm LLC, Chicago, Illinois; for Plaintiff-Appellee.

## OPINION

HAMILTON, Circuit Judge:

This appeal presents recurring issues facing district courts in managing whether and how prospective parties are brought into wage-and-hour lawsuits under the collective action procedures of the federal Fair Labor Standards Act and class actions brought under state laws. *See generally Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989) (collective actions); *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (class actions). In wage-and-hour cases like this one, such issues can arise, for example, when an employer tries to discourage current and former employees from participating and thus to minimize the employer's exposure in the lawsuit. Here, the lead plaintiff in this suit seeking unpaid overtime wages objected after his former employer responded to his lawsuit by trying to persuade employees to agree not to join any collective or class action and to encourage employees to settle their claims individually.

The district court found that the employer's communications to solicit these agreements were misleading and coercive. The court therefore nullified the new employment agreements and release agreements, and the court ordered the employer to communicate with current and former employees about wage and hour issues only in writing and with prior court approval. Other district courts in this circuit and elsewhere have addressed similar conduct. *See*, *e.g.*, *Camp v. Alexander*, 300 F.R.D. 617, 620, 624–26 (N.D. Cal. 2014) (collecting cases, requiring curative notice, and invalidating opt-out agreements where defendant obtained them using misleading information).

In this appeal, the employer challenges the district court's nullification of signed agreements and its restriction on communications with employees. The lead plaintiff defends the district court's actions on the merits and questions appellate jurisdiction. As explained below, we have appellate jurisdiction over the district court's restriction on the employer's communication with members of the putative class and collective action, and on the merits we affirm the restriction, finding it both justified and tailored to the situation created by the employer's misleading and coercive communications. We lack appellate jurisdiction, however, over the district court's order nullifying agreements between the employer and current and former employees. We therefore do not reach the merits of the nullification issue.

## I. *Factual and Procedural Background*

### A. *The Lawsuit is Filed*

Lead plaintiff Lorenzo Dominguez worked for defendant Better Mortgage Corporation as an underwriter. He alleges that Better Mortgage violated federal and state wage-and-hour laws, primarily by failing to pay overtime to him and other mortgage underwriters. He sued in September 2020 under both the federal FLSA, which allows collective actions by similarly situated plaintiffs under 29 U.S.C. § 216(b), and California statutes, which may be applied through class actions under Federal Rule of Civil Procedure 23.

### B. *The Employer's Quick Response*

Better Mortgage wasted no time in trying to reduce its risk in the new lawsuit by reducing the size of the potential class and collective action. On October 19, 2020, Better

Mortgage held a virtual meeting with all then-current underwriter employees. Managers said they were "reviewing a legal claim against the company, alleging that … [underwriting] roles should be eligible for overtime pay." Managers also said they did not believe the allegations were true.

Managers then tried to persuade the current underwriters to sign agreements that would reduce the company's exposure in this lawsuit. The company offered the underwriters $5,000 each for quickly signing an agreement releasing their non-FLSA claims in this lawsuit. Better Mortgage managers also said in the same virtual meeting that underwriters would receive a new mandatory employment agreement, but they did not indicate how the new agreement differed from prior agreements. They said only vaguely that it would include "updates."

Later in the evening of October 19, Better Mortgage sent the new employment agreement to underwriters by email. The new agreement included a new clause requiring arbitration of all employment-related claims—and only in an individual proceeding, not a class or collective arbitration. The new employment agreement did not mention the pending lawsuit. Better Mortgage management told the underwriters that signing the new agreement was a condition of continued employment.

That same evening, Better Mortgage also emailed underwriters a form release agreement for this lawsuit, as discussed in the virtual meeting. The release agreement summarized the pending lawsuit, provided a link to the *Dominguez* complaint, and said that signing would waive "any and all claims (except those under the FLSA) that were or could have been asserted in the Lawsuit." The release

agreement did not mention arbitration or explain that, although employees would not be waiving claims under the FLSA through this agreement, they would be waiving their ability to pursue those claims collectively by signing the new employment agreement sent earlier in the evening. Both proposed agreements came in email messages that warned in bold font not to share the emails. In some tension with that instruction, the release agreement said that employees had a right to consult an attorney, but it added that Better Mortgage would not pay attorney fees for any consultation.

The next morning, October 20, 2020—after many underwriters had already signed the new employment agreement—Better Mortgage sent a "recap" email. That email called attention, for the first time, to the new employment agreement's arbitration clause. That email did not explain that the clause would bar collective pursuit of claims in this lawsuit.

### C. *Response in the District Court*

Almost a year later, on October 1, 2021, plaintiff Dominguez filed a motion asking the district court to invalidate both the new employment agreements and release agreements that had been signed by prospective plaintiffs. His motion also sought to restrict Better Mortgage's ability to communicate with putative class and collective action members without court approval. When Dominguez filed that motion, no class had been certified under Rule 23, nor had the court approved collective treatment of the FLSA claims.[1]

---

[1] On the same day that Dominguez filed his motion to nullify the signed agreements, Better Mortgage filed a motion asking the court to deny

On May 17, 2022, the district court issued the first of two orders at the center of this appeal.  This first order (a) found that Better Mortgage obtained signatures on the new employment agreements and release agreements through coercion and misleading information, and (b) invalidated new employment agreements and release agreements "as to any employee who was already employed at the time the agreements were presented."  The court also (c) ordered Better Mortgage to send a court-approved curative notice to underwriters who had signed the employment agreement and told the parties to confer and submit proposed language for the notice within fourteen days.  *Id.*  Last, the court (d) ordered Better Mortgage to refrain from communicating "with putative class members regarding the subject matter of this litigation" except in writing as approved by the court. *Id.*  Better Mortgage did not appeal the first order.[2]

Counsel conferred but could not agree on language for the court-ordered curative notice.  On May 31, 2022, counsel submitted a joint notice of their disagreements and their competing proposals.   The parties disagreed on which

---

class certification.  Better Mortgage argued that most putative members had signed the release agreement and the employment agreement containing the arbitration agreement.  The court held argument on the issue of class certification and denied Better Mortgage's motion to deny certification at the same time it nullified signed the agreements and said it would impose restrictions on communications.

[2] As for the $5,000 individual payments already made by Better Mortgage under the signed release agreements, the district court "prohibit[ed] Defendant from requesting reimbursement" and reserved for later in the lawsuit the question whether Better Mortgage might be entitled to an offset for payments already made.  Better Mortgage has not raised any issue about payments in this appeal.

employment agreements the court meant to invalidate as well as on the scope of the communication restriction.

On July 21, 2022, the district court addressed those disputes in the second order at the center of this appeal. The court made clear that it invalidated agreements "as to all putative class members" and rejected Better Mortgage's interpretation of the communication restriction that would have allowed the company to communicate with employees about "wage and hour matters (as opposed to the lawsuit specifically)." Better Mortgage then moved to stay the May 17 and July 21 orders pending resolution of the appeal. The court granted a stay of the part of the second order "relating to the request by Defendant that was not addressed in the May 17, 2022 Order, namely, that Defendant have permission 'to discuss wage and hour matters (as opposed to the lawsuit specifically)' with members of the potential class." The court denied a stay of other portions of its orders. This appeal followed.

We explain next in Part II why this appeal is timely. In Part III, we turn to the communication restriction. We find that we have appellate jurisdiction over that challenge, and we affirm that restriction on the merits. Finally, in Part IV, we explain why we do not have appellate jurisdiction over the district court's order nullifying signed release agreements and new employment agreements with former employees and underwriters who were current employees in October 2020.

II. *Timeliness of the Appeal*

The district court entered two orders covering the issues appealed, the first on May 17, 2022, which announced the injunctive restriction on Better Mortgage's communications with underwriters and the nullification of signed agreements,

and the second on July 21, 2022, which, among other things, resolved issues about the corrective communication to underwriters.  Better Mortgage filed its notice of appeal on August 1, 2022.  Counting from May 17, the notice of appeal was filed after the applicable 30-day jurisdictional deadline in 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A).  Our jurisdiction depends on whether there is a sound basis for extending that 30-day deadline.  We find that there is.

Better Mortgage offers two principal grounds for extending the deadline.  The first is that the district court's second order on July 21 resolved a genuine ambiguity in the May 17 order regarding communications with potential class members and plaintiffs.  If a later order materially changes the substance of an earlier order, the later order can restart the clock for appeal of the entire earlier order, "even where the appeal concerns a different matter from that revised by the district court."  *United States v. Doe*, 374 F.3d 851, 854 (9th Cir. 2004); *see also Burlington Northern Inc. v. United States*, 459 U.S. 131, 138 n.5 (1982) (appeal was timely where second order "'[resolved] a genuine ambiguity in a judgment previously rendered' and dealt with a question which was not 'plainly and properly settled with finality'") (quoting *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211–12 (1952) (refusing to allow second order to restart clock for appeal because first order "was for all purposes final.  It put to rest the questions which the parties had litigated…. It was neither 'tentative, informal nor incomplete'")).[3]

Dominguez argues that the district court's May 17 order was not ambiguous but quite clear, requiring Better

---

[3] A different holding in *Minneapolis-Honeywell* was later superseded by statute.  *See Catz v. Chalker*, 566 F.3d 839, 841 n.1 (9th Cir. 2009).

Mortgage to "communicate with putative class members regarding the subject matter of this litigation *only in writing and with Court approval*" (emphasis in original).  We do not need to resolve this debate over the clarity of that first order because we agree with Better Mortgage's second argument for the appeal being timely.

The second argument is that Better Mortgage filed in substance a timely motion to reconsider that injunction, thus tolling the time to file a notice of appeal until the district court ruled on its motion.  *See* FED. R. APP. P. 4(a)(4)(A)(iv).  Such a motion to reconsider or amend the May 17 order's prior restraint was due within 28 days of that order.  *See* FED. R. CIV. P. 54(a) & 59(e).  The parties filed their court-ordered joint document on May 31, which is well within that allowed time.[4]  Accordingly, that document suffices if it constituted a "motion to alter or amend" an "order from which an appeal lies."  FED. R. CIV. P. 59(e) & 54(a).

A "motion" must be in writing unless it is made during a hearing or a trial, and it must "state the relief sought" and "state with particularity the grounds for seeking the order."  *See* FED. R. CIV. P. 7(b).  In determining whether a document qualifies as a motion under Rule 59(e) to alter or amend an appealable judgment or order, we have made clear that "nomenclature is not controlling," and a document "will be considered a Rule 59(e) motion to alter or amend the judgment [or appealable order] where it involves

---

[4] That also happens to be within the 14-day time limit for motions to reconsider under the Central District of California's Local Rules.  *See* C.D. CAL. L. CIV. R. 7-18.  However, a local rule cannot shorten the 28-day time limit specified in the national rules with respect to an order that is appealable as of right.  *See* FED. R. CIV. P. 54(A), 59(E); *see also* FED. R. CIV. P. 83(a)(1) (stating that a "local rule must be consistent with" national rules).

reconsideration of matters properly encompassed in a decision on the merits." *United States ex rel. Hoggett v. University of Phoenix*, 863 F.3d 1105, 1108 (9th Cir. 2017) (citations omitted).

The substance of the parties' May 31 joint statement satisfies these criteria so that the document counts as a Rule 59(e) motion by Better Mortgage with respect to the May 17 order's restriction on its communications with its current and former underwriters.  In the joint statement, Better Mortgage took the position that the phrase "subject matter of this lawsuit" should be explained to mean "only the lawsuit itself" and not any matter that is "part of the subject matter of the lawsuit," such as the "wages and hours" of current employees.  The document also sets forth Better Mortgage's reasons for requesting that "explanation"—namely, that this clarification "is far more narrowly tailored," as assertedly required by *Gulf Oil*.  The document made clear that Better Mortgage wanted the district court to modify its May 17 order immediately to make clear that, despite having used the phrase "regarding the subject matter of the litigation," the order should not bar either communications with employees about "wage and hour matters" or communications for the purpose of "obtain[ing] factual information to defend itself in this litigation."  The document set forth with sufficient particularity the ground on which Better Mortgage sought that modification.  Thus, "look[ing] to the substance, not simply the title," of the May 31 document "to determine whether it is in substance a motion to alter or amend the judgment," *Hoggett*, 863 F.3d at 1108, the document counted as a motion by Better Mortgage to alter or amend the May 17 order.

Accordingly, the time for Better Mortgage to appeal the May 17 order did not begin to run until its requested

modification was denied in the July 21 order. And because the notice of appeal was filed within 30 days of the July 21 order, Better Mortgage's appeal is timely and brings up before us both the May 17 order imposing the prior restraint and the July 21 order refusing to change it. That does not resolve all issues of appellate jurisdiction, however.[5]

III. *The Communication Restriction*

We now turn to defendant's challenge to the second order's communication restriction in this interlocutory appeal. We first find that we have appellate jurisdiction over this challenge. We then affirm the restriction as a tailored response to defendant's misleading and coercive communications intended to restrict the scope of the lawsuit.

    A. *Appellate Jurisdiction Over the Communication Restriction*

The district court's restriction was injunctive in nature. Jurisdiction exists over appeals from "[i]nterlocutory orders of the district courts … granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions…." 28 U.S.C. § 1292(a)(1). The statute provides jurisdiction to review an interlocutory order that is not labeled as an injunction yet has the "'practical effect' of

---

[5] Plaintiff Dominguez argues that the joint statement cannot be considered a motion under Rule 59(e) because it did not comply with the format and other requirements of the Local Rules of the Central District of California. Any such defect as to form did not preclude a document that was filed within the Rule 59(e) time limit from serving as a Rule 59(e) motion that resets the time for filing an appeal. *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665–66 (9th Cir. 2003) (motion to reconsider extended time to appeal despite failure to comply with district court's local rule requiring a statement that parties conferred before motion was filed).

granting or denying an injunction" and threatens "serious and perhaps irreparable harm if not immediately reviewed." *Abbott v. Perez*, 138 S. Ct. 2305, 2319 (2018) (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 83 (1981)).

The communication restriction at issue here prevents Better Mortgage from communicating with employees about wage and hour matters absent court approval. This aspect of the order is injunctive in nature. That is sufficient for appellate jurisdiction under Section 1292(a). *Great Rivers Co-op. of Southeastern Iowa v. Farmland Industries, Inc.*, 59 F.3d 764, 765–66 (8th Cir. 1995) (exercising jurisdiction under § 1292(a) in appeal from district court order restricting communications with potential class members and requiring corrective notice); cf. *Aguilar v. Walgreen Co.*, 47 F.4th 1115, 1121–22 & n.8 (9th Cir. 2022) (distinguishing *Great Rivers* and dismissing interlocutory appeal where district court order invalidating opt-outs from class action did not require or prohibit any speech).

B. *Merits of the Communication Restriction*

Before addressing the more difficult jurisdictional problem presented by the appellate challenge to the order nullifying the new employment agreements and release agreements, we resolve the merits of Better Mortgage's challenge to the communication restriction.

Better Mortgage argues that the district court abused its discretion in issuing any restriction on communications given the facts. In the alternative, Better Mortgage argues that even if some restriction was justified, the order issued was too broad in scope.

The Supreme Court recognizes that district courts have the duty and the power to oversee communications from

both defendants and class counsel with potential class members and FLSA collective action participants, but also that this power must be exercised cautiously.  In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981), the Court taught that a district court may issue "an order limiting communications between parties and potential class members … based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  This power flows from Federal Rule of Civil Procedure 23(d)(1), which allows district courts to "issue orders that … impose conditions on the representative parties or on intervenors … [and] deal with similar procedural matters."

In *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 167–68 (1989), the Court applied the same principles to a court order regulating communications with potential plaintiffs in a collective action proceeding under the Age Discrimination in Employment Act, which uses the collective action procedures of the FLSA.  *See* 29 U.S.C. § 626(b), incorporating § 216(b).  *Hoffman-La Roche* cited *Gulf Oil* and said that the "same justifications" for a district court exercising control over communications in a class action exist in a collective action.  493 U.S. at 171.  The FLSA's enforcement provision grants the court "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way," including by regulating communications with prospective parties to ensure they are brought into an action in an efficient manner while being notified clearly and accurately of claims they may have and available options for pursuing relief.  *Id.* at 170–71.  At the same time, caution is essential: "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous

to respect judicial neutrality.  To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id*. at 174.

Here, Better Mortgage beat plaintiffs' counsel and the district court to the punch, sending communications to potential plaintiffs before the court could begin to oversee joinder.  The court found that those communications were misleading and coercive.  The court therefore issued the communication restriction and began overseeing distribution of a curative notice.  We review case management orders such as these for an abuse of discretion.  See *Gulf Oil*, 452 U.S. at 103.  District courts have "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100; see also *Hoffman La-Roche*, 493 U.S. at 171.

The district court carefully parsed Better Mortgage's communications and determined that they were misleading.  The district court's detailed order shows a careful analysis of the prior communications and how those communications affected the employees' understanding of their options in this pending lawsuit.  The misleading and coercive nature of these efforts was clear.  For example, the court noted that employees had to sign the new employment agreement to continue working for Better Mortgage.  Compounding this pressure was the fact that the arbitration clause in that agreement would prevent collective pursuit of claims in this suit.  This coercive tactic—telling employees they would be fired if they did not agree to have claims already being asserted on their behalf in a pending lawsuit channeled out of that collective and class action in a federal court into individual arbitrations—smacks of retaliation and interference with both federal and state statutory rights.  See generally *Lambert v. Ackerley*, 180 F.3d 997, 1002–04 (9th

Cir. 1999) ("The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act."); Cal. Lab. Code § 98.6(a) (forbidding retaliation against employee for making "a written or oral complaint that he or she is owed unpaid wages").

Moreover, the release agreement presented to employees said signing would waive "all claims (except those under the FLSA)," giving the misleading impression that FLSA claims (often pursued through collective action) would remain available. As the district court found, "despite the Release Agreement's statement that the FLSA claims were not waived," it "does not explain that putative class members were forfeiting their right to bring the FLSA claims asserted in the pending suit if they signed the Employment Agreement." The interaction between the agreements was unexplained and confusing.

The district court also paid attention to the timing of messages, to how the different messages presented inconsistent and thus confusing information, and to missing content that could have helped employees better evaluate their options. In contrast, in *Gulf Oil*, the Supreme Court vacated a communication restriction where the district court had "failed to provide any record useful for appellate review." 452 U.S. at 102. The Court required that restrictions be imposed only after "attention to whether the restraint is justified by a likelihood of serious abuses." *Id.* at 104. The district court paid such attention here.

*Gulf Oil* added that such a restriction must provide "the narrowest possible relief which would protect the respective parties." 452 U.S. at 102. The resulting order should be "carefully drawn … limit[ing] speech as little as possible."

*Id.* The district court's first order restricted communications "with putative class members regarding the subject matter of this litigation." Better Mortgage responded by arguing that the broad restriction was unconstitutional. It asked that the restraint be narrowed to "permit Better [Mortgage] to discuss wage and hour matters (as opposed to this lawsuit specifically) with employees *and obtain factual information to defend itself in this litigation*."

By this phrasing, Better Mortgage showed that it intended to continue communicating with current employees in ways related to this lawsuit. Perhaps Better Mortgage planned to discuss "wage and hour matters" without mentioning the lawsuit to employees, but its intent was to use the planned communications to assist its defense. The district court acted within its discretion in finding that narrowing the restriction as requested would have allowed Better Mortgage to circumvent the order and that the request to narrow the restriction should be denied, "[g]iven the Defendant's history of misleading and coercive communications[.]"

Under the court's restriction on communication, Better Mortgage remains free to communicate about the lawsuit and issues central to it. But it needs to communicate in writing, and it needs prior court approval, which is reasonable here. Given Better Mortgage's record in this lawsuit, including both the misleading and coercive communications in October 2020, and its desire to continue communicating with potential class members to help build its defense in this lawsuit, the district court tailored its order appropriately and did not abuse its discretion.

IV. *Nullification of Agreements*

We now turn from the communication restriction to the portion of the district court's first order, issued May 17, 2022, nullifying new employment agreements and release agreements signed in response to the employer's communications that the court found to have been misleading and coercive.

This appellate challenge raises a question that has arisen in a number of district courts in this circuit: when can a district court void a settlement or opt-out agreement obtained through misleading or coercive communications?  See, e.g., *Kirby v. Kindred Healthcare Operating, LLC*, No. 5:19-cv-00833-JLS-DFM, 2020 WL 4639493, at *3–7 (C.D. Cal. May 1, 2020) (holding settlement agreements voidable because they were obtained using misleading communications; requiring distribution of corrective notice); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2018 WL 2422582, at *11–12 (C.D. Cal. Apr. 6, 2018) (finding agreements null and void to extent they would limit class participation in current action because agreements had been obtained through misleading tactics); *Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609-JM-WMC, 10-cv-2671-JM-WMC, 2012 WL 760566, *1–4 (S.D. Cal. Mar. 8, 2012) (invalidating arbitration agreements as to putative class members because they were obtained by misleading communications); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518–19 (N.D. Cal. 2010) (declining to issue total ban on communications between defendant and employees but invalidating opt-out forms obtained using coercion); *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2010 WL 2724512, at *4–6 (N.D. Cal. July 8, 2010) (finding letter to putative class from defendant was misleading because of omitted information about case;

problem remedied by nullifying agreements but not requiring corrective communication). We approved a similar order nullifying class opt-outs obtained by coercion in *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010), vacated on other grounds, 565 U.S. 801 (2011), but that issue arose in *Wang* only in an appeal from a final judgment.

This challenge also echoes issues decided by other circuits. Those circuits have reasoned, consistent with the relevant portion of *Wang*, that district courts have the power to remedy misleading and coercive communications used to obtain agreements from prospective plaintiffs that affect their participation in the pending lawsuit. See *Fox v. Saginaw County*, 35 F.4th 1042, 1045, 1048–50 (6th Cir. 2022) (affirming nullification of agreements with class members reached using misleading communications after class certification); *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 144 (4th Cir. 2018) (affirming denial of enforcement for arbitration agreements obtained by misleading information); *see also Hoffman-La Roche*, 493 U.S. at 172 (noting possibility that improper communications would give rise to "the need to cancel consents obtained in an improper manner"); *Billingsley v. Citi Trends, Inc.*, 560 Fed. App'x 914, 920–24 (11th Cir. 2014) (non-precedential) (affirming denial of enforceability of arbitration agreements obtained through coercion and collecting district court decisions taking similar corrective action).

At oral argument we questioned whether the district court had the power to issue the nullification order in the first instance since the court appears to have attempted to adjudicate, at least temporarily, the rights and obligations of prospective plaintiffs who were not yet before the court in

the form of an approved class or by filing consent forms to join the collective FLSA action.[6]

We recognize the potential benefit of providing guidance to district courts in this circuit on these questions, but we may not do so unless we have appellate jurisdiction over the issue in this appeal. We do not have it here.

The fact that we have appellate jurisdiction over the restriction on future communications to prospective plaintiffs does not mean that we also have jurisdiction over the nullification of agreements already signed. Just because part of the order being timely appealed is reviewable in an interlocutory appeal as injunctive in nature does not mean that every issue addressed in the same order may (or must) be appealed now. See *De Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012) ("Mindful of the restraint that we must exercise in determining the scope of our pendent jurisdiction, we conclude that no other issue the Defendants raise in this interlocutory appeal is 'inextricably intertwined with' or 'necessary to ensure meaningful review' of the preliminary injunction decision."). We lack jurisdiction to consider the merits of the nullification of agreements because the issue is raised in an interlocutory

---

[6] It is unclear how many people whose agreements were invalidated in the order were properly before the district court. The record indicates that at least two people signed the new employment agreement and, prior to the order invalidating the agreements, signed consent forms to be represented by Dominguez's counsel and join this litigation. Those individuals submitted affidavits indicating that they worked for Better Mortgage prior to the rollout of the new agreements and continued their employment after the new agreements, meaning they must have signed the mandatory employment agreement. For many others who filed consent forms, it is unclear whether they signed the agreements at issue or instead terminated their employment with Better Mortgage.

appeal and does not fit any exception that would allow for review now.

Better Mortgage argues that we have such jurisdiction because the district court's nullification of agreements is "inextricably intertwined" with the communication restriction or because reviewing the nullification is necessary to ensure meaningful review of the communication restriction. Both issues involve the same facts and analysis of whether Better Mortgage's communications were misleading and/or coercive.

Even if we were tempted to charge ahead with that theory, our precedents establish that more is required for pendent appellate jurisdiction than just having separate issues rest on common facts. E.g., *United States v. Decines*, 808 F.3d 785, 792–93 (9th Cir. 2015) (declining to find pendent appellate jurisdiction over issues beyond scope of proper interlocutory appeal). We have exercised pendent appellate jurisdiction over issues that are "inextricably intertwined" with proper issues for an interlocutory appeal, but that is a demanding standard. *See, e.g.*, *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001) (finding denial of motion to dismiss and denial of summary judgment inextricably intertwined). We may find an additional issue to be inextricably intertwined only if "we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal … [or] resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000); see also *id.* at 1284 (explaining that question of whether issues are inextricably intertwined is interpreted "very narrowly").

Neither condition is satisfied here. Our decision to affirm the communication restriction here does not resolve whether the nullification of agreements was also proper. There is substantial overlap, both factual and legal, but the outcome of one does not necessarily control the outcome of the other. It is at least theoretically possible that prior misleading and coercive communications could justify a forward-looking communication restriction without necessarily nullifying agreements already signed.

As a final point on jurisdiction, we decline Better Mortgage's request to treat its appeal as in part a petition for a writ of mandamus. The district court's order saying that agreements were being nullified does not amount to an extraordinary situation that could justify the "drastic" remedy of mandamus. See generally *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976); *Aguilar v. Walgreen Co.*, 47 F.4th 1115, 1122–23 (9th Cir. 2022) (in wage-and-hour lawsuit, dismissing interlocutory appeal of district court order nullifying opt-outs obtained by counsel seeking to pursue parallel lawsuit; also denying writ of mandamus as alternative route to immediate review). Better Mortgage also has not shown that it has a clear right to relief, that the nullification order is now causing it irreparable harm, or that a later appeal after final judgment would not be sufficient to address the issue. See, e.g., *Aguilar*, 47 F.4th at 1123 (identifying factors applicable to petition for writ of mandamus). The district court has already indicated that the issue could be addressed later, at least with respect to payments made under the release agreements.

For these reasons, we **AFFIRM** the communication restriction imposed by the district court in its orders of May 17 and July 21, 2022. We **DISMISS** for lack of appellate jurisdiction defendant's challenge to the portion of the

district court's order of May 17 nullifying new employment and release agreements signed by prospective plaintiffs in this case in the wake of defendant's October 2020 communications.

COLLINS, Circuit Judge, concurring in part, concurring in the judgment in part, and dissenting in part:

I concur in Parts II and III(A) of the court's opinion, which concludes that we have appellate jurisdiction over the district court's order requiring Defendant-Appellant Better Mortgage Corporation to obtain prior court approval before engaging in certain communications with potential class members in this putative class action.  As to the merits of Defendant's challenges to that order, I would vacate that order and remand for further consideration, and I therefore dissent from the majority's contrary disposition.  Lastly, I agree with the majority's ultimate conclusion that we lack appellate jurisdiction over the further portions of the district court's orders nullifying certain agreements between Defendant and some of its employees.  *See* Opin. at 6. Accordingly, I concur in part, concur in the judgment in part, and dissent in part.

**I**

With the following observations, I concur in the court's analysis, in Part III(A) of the opinion, that we have jurisdiction under 28 U.S.C. § 1291.

The sort of interlocutory order at issue here—which imposes a prior restraint requiring court approval before a defendant may communicate with the members of the putative plaintiff class—goes beyond mere case

management and is in the nature of an injunction "designed to accord or *protect* some or all of the substantive relief sought by a complaint in more than temporary fashion." *In re Lorillard Tobacco Co.*, 370 F.3d 982, 986 (9th Cir. 2004) (emphasis added) (simplified); *cf. Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988) ("An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1).").   As such, that prior restraint is immediately appealable under 28 U.S.C. § 1292(a)(1). *See Negrete v. Allianz Life Ins. Co. of N.A.*, 523 F.3d 1091, 1096–98 (9th Cir. 2008) (asserting jurisdiction, under § 1292(a)(1), over a prior restraint precluding the defendant from engaging in settlement discussions involving related litigation); *Great Rivers Co-op. of Southeastern Iowa v. Farmland Industries, Inc.*, 59 F.3d 764, 765–66 (8th Cir. 1995) (holding that an order that prohibited the defendant from "making any statement that might be understood as counseling potential class plaintiffs to opt out of the class, and requiring the defendant to print in its newsletter a statement from plaintiffs regarding their litigation" was "in the nature of an injunction" and appealable under § 1292(a)(1)); *cf. Cobell v. Kempthorne*, 455 F.3d 317, 321–23 (D.C. Cir. 2006) (asserting jurisdiction, under § 1292(a)(1), over an order requiring the defendant to include certain compelled statements in its own communications).

However, in determining the scope of the "order" that is thus appealable, we must similarly be guided by the substance of the order, and not its form.   Thus, the mere fact that *other* issues are resolved in the same "order"—*i.e.*, the same court document that contains the injunctive order—

does *not* suffice to bring them within the scope of the appeal authorized by § 1292(a)(1).  *See Puente Arizona v. Arpaio*, 821 F.3d 1098, 1102–03, 1108–10 (9th Cir. 2016) (holding that, even though the district court denied a "Rule 12(b)(6) motion to dismiss" in "the same order" in which it granted a preliminary injunction, the motion to dismiss ruling was not reviewable on the § 1292(a)(1) appeal of the preliminary injunction); *cf. Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204–05 (1996) (holding that, under the differently worded provisions of § 1292(b), the entirety of the "order" that is certified for interlocutory appeal is reviewable on the ensuing appeal, including even portions of the order that do not involve the certified question that supports interlocutory jurisdiction).   Rather, our pendent jurisdiction under § 1292(a)(1) extends only to those other rulings, in the same or a different document, that resolve an issue that "is 'inextricably intertwined' with or 'necessary to ensure meaningful review of' the injunction."  *Puente Arizona*, 821 F.3d at 1109 (citations omitted).

Here, *only* the district court's prior restraint on Defendant's ability to communicate is in the nature of an injunction and therefore independently immediately appealable.  The additional order that Defendant distribute a court-approved "corrective" notice informing putative class members about the lawsuit and explaining the court's rulings (including its ruling invalidating certain agreements) is not itself immediately appealable, either under § 1292(a)(1) or the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).  *See Aguilar v. Walgreen*, 47 F.4th 1115, 1121–22 & n.8 (9th Cir. 2022).  Likewise, the district court's further order invalidating the challenged

agreements is not, by itself, immediately appealable as an injunction or as a collateral order.[1]

## II

I next address the merits of Defendant's challenge to the prior restraint order before deciding whether I think we also have pendent jurisdiction over the order invalidating the agreements in question.

The prior restraint order was based on the district court's conclusion that Defendant had engaged in coercive and misleading communications with putative class members who were current employees of Defendant. Although the majority contends that the district court "carefully parsed" Defendant's communications, *see* Opin. at 17, most of the district court's conclusions were either unsupported or overstated. In my view, only two aspects of Defendant's communications raised the sorts of concerns that might conceivably justify a restriction on communication with putative class members under *Gulf Oil*.

First, Defendant immediately sent—*only* to underwriters (whose employment classification is at issue in this litigation)—a new and mandatory "Employment Agreement" that included an arbitration agreement that would effectively preclude those employees' participation in this class action or FLSA collective action. Defendant makes a substantial argument that, as an incident of conducting its business operations, it was entitled to revise

---

[1] In its opening brief in this court, Defendant does not challenge the order to provide corrective notice, but it does insist that the order invalidating the agreements falls within the scope of this court's pendent jurisdiction over the § 1292(a)(1) appeal of the prior restraint order. I address the latter issue below. *See infra* section III.

the terms of its employment agreements with at-will employees to include arbitration provisions that are allowed by federal and state law.  However, the problem with this argument in the present circumstances is that Defendant *selectively* implemented this policy by targeting it, at least in the first instance, only at the employees who were the subject of this lawsuit.  Defendant points out that, three months later, it began rolling out the same revised Employment Agreement for all other current and newly hired employees, but that delayed additional action only serves to underscore the targeted nature of Defendant's rushed efforts to thwart this suit as soon as it was filed.  The district court did not abuse its discretion in concluding that this sort of targeted and coercive communication made "for the *purpose* of undermining a class action" is sufficiently abusive to warrant invocation of the court's power to regulate communications with putative class members under *Gulf Oil*.  *See Fox v. Saginaw County*, 35 F.4th 1042, 1050 n.3 (6th Cir. 2022).

Second, the district court did not abuse its discretion in concluding that Defendant's proposed "Release Agreement," which was sent to the same employees, contained "contradictory and confusing statements." Specifically, while acknowledging that a "good faith dispute" existed over whether signing employees were owed wages and other compensation, the Release Agreement also included language stating that such employees affirmatively "acknowledge[d] that [they had] been paid all wages owed [to them]."  As the district court noted, the latter statement, which seemingly contradicted the acknowledgement of a good-faith dispute as to whether any wages were owed, was wholly unnecessary to the release of the claims covered in the Release Agreement.  Moreover, this affirmative representation might conceivably impair, as a practical

matter, employees' ability to successfully assert the FLSA
claims that were *not* covered by the Release Agreement.

By contrast, the district court's remaining objections to
Defendant's communications were insubstantial. The
district court objected to the fact that the *Employment
Agreement* "did not contain any reference to Plaintiff's suit,
did not attach Plaintiff's complaint, or provide Plaintiff's
counsel's name and contact information." But it would be
odd to include such lawsuit-specific information in a generic
employment agreement, and that information *was* separately
provided with the Release Agreement, which was sent at the
same time as the Employment Agreement (but in a separate
email). The district court speculated that an employee
nonetheless might read and execute the Employment
Agreement without reviewing the Release Agreement, but
the court did not make sufficient factual findings to support
that surmise. The district court found only that "at least one
underwriter reviewed and signed the Employment
Agreement prior to reviewing the Release Agreement," but
Defendant produced objective computer-log evidence
showing that the employee in question opened and viewed
the Release Agreement *first*. Defendant also presented
uncontested evidence that that employee left Defendant's
employ two days later. Thus, the district court's sole finding
on this score was clearly erroneous.

The district court also noted that the link that the Release
Agreement provided to *Plaintiff's counsel's website* was not
operative after October 23, 2020 (a few days after the
agreements were sent by email), but it can hardly be thought
"misleading" for Defendant to have relied on what was then
a working link to its opposing counsel's own website.
Moreover, even after October 23, the link landed on that
website's "general case summary page" concerning the

lawsuit.  The court also faulted the fact that the Release
Agreement used statutory terminology such as "failure to
provide meal and rest periods," but it is hard to see how such
language can be said to be coercive, abusive, or misleading.
Nor was it misleading to say that employees could consult
counsel before signing the agreements and that, if they did
so, it would be at their own expense.  Further, the fact that
Defendant did not affirmatively undertake to estimate how
the settlement offer in the Release Agreement might
"compare to the *value* of [a putative class member's] claims"
does not make its communications abusive or misleading so
as to justify communication restrictions under *Gulf Oil*.

Given that only a few of the points identified by the
district court had any validity, I would vacate the prior
restraint order and remand to the district court for it to re-
evaluate the propriety of imposing such an onerous
restriction.  Under *Gulf Oil*, such restrictions must be
"carefully drawn" to "limit[] speech as little as possible" in
light of the specific abuses that have been identified.  *See*
452 U.S. at 102.  Because the district court misapprehended
the scope of the "potential abuses," *id.*, it should be required
to re-examine the matter and to determine whether a more
narrowly drawn limitation would be more appropriate.
Indeed, the sweeping breadth of the prior restraint imposed
here—which pointedly *does* extend to discussing "wage and
hour matters" with current employees—seems excessive.

### III

The only remaining question is whether the conclusions
I have set forth above would warrant our taking the
additional step of formally vacating the district court's order
invalidating the Employment Agreement and the Release
Agreement.

As noted earlier, the order invalidating those agreements is not itself immediately appealable, and we have jurisdiction over that order only to the extent that it falls within our pendent jurisdiction over the prior restraint order. Our pendent jurisdiction in an interlocutory appeal over an injunction under § 1292(a)(1) is limited to those issues that are "'inextricably intertwined' with or 'necessary to ensure meaningful review of'" that injunction—*i.e.*, the prior restraint order. *See Puente Arizona*, 821 F.3d at 1109 (citations omitted). This test is met only if (1) the issues raised by the two orders are "so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal" or (2) "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000).

The first test is inapplicable, because, as the above analysis shows, the appeal of the prior restraint order can be fully resolved without having to take the additional step of deciding whether the challenged agreements should be invalidated. The invalidation of the agreements and the prior restraint order were two distinct *remedies* that the court imposed based on its assessment of the same *underlying predicate conduct* concerning Defendant's communications. To resolve the appeal over the prior restraint order, all that needs to be considered is that underlying conduct and the prior restraint remedy. The asserted "pendent" issue of whether the additional remedy of invalidation of the agreements should have been imposed is not one that "we must decide . . . *in order to review* the claims properly raised on interlocutory appeal." *Cunningham*, 229 F.3d at 1285 (emphasis added).

The second test presents a closer question.  As I have explained, the district court's evaluation of Defendant's predicate conduct was flawed, and that defect might be thought to likewise vitiate the district court's invalidation of the agreements.  But the test is whether the resolution of the "issue[s] properly raised on interlocutory appeal *necessarily* resolves the pendent issue," *id*., and that is not the case here. Whether the district court's partially correct analysis of Defendant's predicate conduct would or would not support continued invalidation of the agreements requires consideration of *further* issues and is not automatically resolved by the disposition of the prior restraint appeal.  *Cf. Marks v. Clarke*, 102 F.3d 1012, 1018 (9th Cir. 1996) (holding that, because reversal of denial of qualified immunity to the defendants *necessarily* vitiated the district court's grant of summary judgment on liability to the plaintiff, the latter order was within our pendent jurisdiction over the interlocutory appeal concerning qualified immunity).  Moreover, one of the major issues presented by the attempted pendent appeal here is the propriety of the district court's invalidation of agreements signed by persons who, at the time of that decision, were neither parties to the action nor yet formally represented in the action as absent class members.  No such issue is presented by the appeal of the prior restraint order itself.  In sum, the fact that the attempted appeal of the agreement-invalidation order requires consideration of additional issues beyond those necessary to resolve the prior restraint appeal means that it is not within our pendent jurisdiction.  And that is particularly true given that "[w]e have consistently interpreted" our "inextricably intertwined" pendent

jurisdiction "very narrowly." *Cunningham*, 229 F.3d. at 1284.[2]

* * *

For the foregoing reasons, I concur in part, concur in the judgment in part, and dissent in part.

---

[2] Finally, on my view of the case, mandamus would be inappropriate. Although on this appeal we do not have the power ourselves to declare that the order invalidating the agreements must be reconsidered, any appellate ruling vacating the prior restraint order would have binding precedential effect that could be the subject of further motions practice in the district court that might afford Defendant appropriate relief. And to the extent that any absent class member whose agreements were voided were to later succeed in obtaining relief as an absent class member in this action, Defendant could challenge the invalidation of the agreements in an appeal from the final judgment.