Matthew C. Helland (SBN 250451)
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

C. Andrew Head (admitted pro hac vice)
ahead@headlawfirm.com
Bethany Hilbert (admitted pro hac vice)
bhilbert@headlawfirm.com
HEAD LAW FIRM, LLC
4422 N. Ravenswood Ave.
Chicago, IL 60640
Telephone: (404) 924-4151
Facsimile: (404) 796-7338

Attorneys for Plaintiffs
*Additional Counsel Listed on Following Page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO DOMINGUEZ, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br><br>Defendant. | Case No. 8:20-cv-01784-MRA-KES<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF FLSA AND PAGA SETTLEMENT**<br><br>Date:   August 11, 2026<br>Time:   10:00 A.M.<br>Room:  9B |

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

Jason Christopher Marsili (CA SBN 233980)
jmarsili@rmrllp.com
ROSEN MARSILI RAPP LLP
3600 Wilshire Blvd., Suite I 800
Los Angeles, CA 90010-2622
Telephone: (213) 389-6050
Facsimile: (213) 389-0663

Attorneys for Plaintiffs

MEM. SUPP. MOT.  FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................iii

TABLE OF AUTHORITIES ..........................................................................................v

MEMORANDUM OF LAW .........................................................................................1

    I.     INTRODUCTION ................................................................................1

    II.    FACTUAL AND PROCEDURAL BACKGROUND ..........................1

        A.    Factual Allegations and Claims Alleged .....................................1

        B.    Procedural Background ................................................................2

    III.   THE SETTLEMENT ...........................................................................4

        A.    Settlement Terms ........................................................................4

        B.    Damages Analysis and Value of the Settlement..........................8

    IV.   ARGUMENT AND CITATION OF AUTHORITIES FOR APPROVAL...........................................................................................10

        A.    Standard for Court Approval of FLSA Settlements ..................10

        B.    Standard for Court Approval of the PAGA Settlement.............11

        C.    The FLSA Collective-Only Settlement Is Fair and Reasonable ..................................................................................11

            1.    The Range of Recovery Supports Approval ...................12

            2.    The Stage of Proceedings and Discovery Supports Approval .........................................................................13

            3.    The Litigation Risks Support Approval ..........................14

            4.    The Scope of Release Supports Approval.......................15

            5.    View of Counsel and Plaintiffs Support Approval .........15

            6.    View of Defendant ..........................................................16

            7.    There is No Possibility of Fraud or Collusion ................16

        D.    The PAGA Settlement is Fair and Reasonable..........................16

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

E.    The Service Payments, Reimbursement of Counsel's Costs and Expenses, and Counsel's Award of Attorney's Fees from Settlement, Warrant Approval ...................................................... 18

V.    CONCLUSION ............................................................................. 24

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. FedEx Ground*, 2016 WL 1427358

(N.D. Cal. Apr. 12, 2016)......................................................................18

*Aronson v. Gannett Co.*, No. CV 19-996 PSG (JEMX), 2023 WL

2025706 (C.D. Cal. Feb. 15, 2023) .......................................................11

*Boeing v. Van Gemert*, 444 U.S. 472 (1980)..............................................18

*Boyd v. Bank of Am.*, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .....................17

*Cruz v. Sky Chefs*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)...........................18

*Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255

(N.D. Cal. Oct. 11, 2017) ......................................................................17

*Dashiell v. Cnty. of Riverside*, 2018 WL 3629915

(C.D. Cal. July 19, 2018)........................................................................12

*Dominguez v. Better Mortg. Corp.*, 88 F.4th 782 (9th Cir. 2023)........................2, 23

*Edwards v. Chartwell Servs., Inc.*, 2018 WL 10455206

(C.D. Cal. Aug. 27, 2018) ......................................................................23

*Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316

(C.D. Cal. June 12, 2014) .......................................................................13

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d

1074 (C.D. Cal. 2017) ...........................................................................11

*Green v. Lawrence Serv. Co.*, No. LACV1206155JAKVBKX, 2014

WL 12778929 (C.D. Cal. Apr. 1, 2014)...............................................20, 22

*Gutierrez v. Stericycle, Inc.*, No. LACV1508187JAKJEMX, 2019 WL

12470143 (C.D. Cal. Mar. 22, 2019)...................................................21, 22

*Hernandez v. Dutton Ranch Corporation*, 2021 WL 5053476

(N.D. Cal. Sept. 10, 2021) .....................................................................17

*Herrera v. Cnty. of Los Angeles*, No. 2:22-CV-01013-HDV-PDX,

2026 WL 507915 (C.D. Cal. Feb. 23, 2026).............................................23

v

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

*Hopson v. Hanesbrands Inc.*, 2009 WL 928133

    (N.D. Cal. Apr. 3, 2009) ................................................................. 13

*In re Hill*, 775 F.2d 1037 (9th Cir. 1985) ................................................ 18

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............. 18

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........... 18

*In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813

    (E.D. Cal. 2016) ................................................................................ 20

*Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL

    4773057 (N.D. Cal. Oct. 3, 2018) .................................................... 17

*Johnson v. Insulet Corp.*, No. 2:20-CV-05418-VAP-KESX, 2023 WL

    11944334 (C.D. Cal. May 9, 2023) ....................................... 10, 11, 12

*Kang v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2022 WL

    1128721 (N.D. Cal. Apr. 15, 2022) .................................................. 22

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ........... 11

*McElmurry v. U.S. Bank Nat. Ass'n,* 495 F.3d 1136 (9th Cir. 2007) ........ 11

*McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847

    (9th Cir. 2017) .................................................................................. 14

*McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2018 WL

    5982863 (N.D. Cal. Nov. 14, 2018) ................................................. 17

*Medoff v. Minka Lighting, LLC*, No. 2:22-CV-08885 -HDV, 2024 WL

    5275593 (C.D. Cal. July 10, 2024) ................................................... 19

*Newell v. Ensign United States Drilling (California) Inc.*, 2021 WL

    6000227 (E.D. Cal. Dec. 20, 2021) .................................................. 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ....... 18

*Potter v. Big Tex Trailer Mfg., Inc.*, 2019 WL 8512459

    (C.D. Cal. Sept. 26, 2019) ............................................................... 13

*Raffin v. Medicredit, Inc.*, No. CV154912MWFPJWX, 2018 WL

    8621204 (C.D. Cal. Nov. 30, 2018) ................................................. 23

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

*Reyes v. Experian Info. Sols., Inc.*, No. 8:16-CV-00563-SVW-AFM, 2025 WL 1571756 (C.D. Cal. May 30, 2025).........................................................23

*Rubin-Knudsen v. Arthur Gallagher & Co.*, No. EDCV186227JGBSPX, 2021 WL 4924765 (C.D. Cal. Mar. 19, 2021).........................................................19

*Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010 (C.D. Cal. Dec. 5, 2019).........................................................23

*Tamimi v. SGS N. Am. Inc.*, No. CV 19-965 PSG (KSX), 2021 WL 12306353 (C.D. Cal. Sept. 1, 2021).........................................................19

*Thomas v. Cognizant Tech. Sols. U.S. Corp.*, 2013 WL 12371622 (C.D. Cal. June 24, 2013).........................................................23

*Vazquez v. USM Inc.*, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016).........................................................18

*Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016).........................................................16, 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).........................................................18

*Williams v. MGM-Pathe Communication Co.*, 129 F.3d 1026 (9th Cir. 1997).........................................................18

**Statutes**

Cal. Lab. Code § 2699.........................................................11

**Regulations**

29 C.F.R. § 541.601.........................................................14

Cal. Code Regs., tit. 8, § 11040.........................................................14

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

## MEMORANDUM OF LAW

### I.    INTRODUCTION

After nearly six years of litigation, a trip to the Ninth Circuit, three failed mediations, and three sets of defense counsel, Plaintiffs come before this Court seeking preliminary approval of a $7,185,000 settlement to resolve the claims of the 211 Opt-in Plaintiffs who remain in this action, plus the PAGA claims for 116 members of the PAGA Group. Because this is an excellent result for Plaintiffs and the PAGA Group, the Court should grant preliminary approval to the settlement, authorize distribution of settlement notice, and set a final approval hearing.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

#### A. Factual Allegations and Claims Alleged

Plaintiff filed this putative class and collective action on September 18, 2020 (ECF No. 1) alleging that Better misclassified underwriting employees as exempt from the overtime requirements of state and federal law, thereby failing to pay them proper wages when they worked overtime. Plaintiff also alleged related California Labor Code and wage order violations for failure to pay overtime pay, as well as violations for failing to provide itemized wage statements, failing to authorize and permit meal and rest breaks and pay premium compensation for missed breaks, failing to timely pay wages owed upon the termination of employment, and for violation of California business and Professions Code sections 17200, *et seq*.

On July 8, 2021, following the expiration of the 65-day PAGA notice period during which the LWDA did not indicate an intention to investigate the allegations on its own, Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 44), adding in putative class claims seeking penalties under California's Private Attorneys General Act ("PAGA") for violations of the California Labor Code and an additional claim under California law alleging failure to reimburse business expenses. Prior to Defendant answering that FAC, Plaintiff filed a Second Amended Complaint ("SAC") (ECF No. 49) revising those claims to address what

1

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

Defendant believed were deficiencies with the claims added in the FAC.

## B. Procedural Background

This settlement comes after nearly six years of protracted litigation primarily because, in an immediate response to Plaintiff's complaint, Better rolled out (1) an employment agreement containing an arbitration provision with a class/collective action waiver ("Employment Agreement"); (2) a retention bonus agreement offering $10,000 to employees who remain employed for six months ("Retention Agreement"); and (3) a release agreement with a 5 day response deadline, offering $5,000 in exchange for a release of state law claims raised in this case ("Release Agreement"). Defendant then decided to require all underwriters to sign the same Employment Agreements containing an arbitration provision with a class/collective action waiver beginning in January 2021. As a result, to date, this litigation has primarily involved determining whether those Employment Agreements are enforceable and whether all, or any, of the underwriters who signed those Employment Agreements should be compelled to arbitration.

Since filing the Complaint in 2020, the parties have litigated substantive disputed issues including:

- Better's unopposed motion to set aside default was granted [ECF 42];
- Judge Staton granted Plaintiff's motion to invalidate Better's release agreements obtained from underwriters after suit was filed, and Better's arbitration class/collective waiver agreements directed at currently employed underwriters [ECF 91]; Better appealed, and the Ninth Circuit affirmed Judge Staton's finding of misleading and coercive conduct and restraint on communications with putative collective members, denying Better's appeal as to the invalidation of agreements due to lack of appellate jurisdiction;[1]

---

[1] *Dominguez v. Better Mortg. Corp.*, 88 F.4th 782 (9th Cir. 2023).

2

MEM. SUPP. MOT.  FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

- Judge Staton denied Defendant's motions to preemptively deny FLSA collective action and Rule 23 class certification [ECF 92];
- Judge Staton granted Plaintiff's motion for curative notice regarding the release and arbitration agreements [ECF 102];
- The parties resolved disputed issues by stipulating to the issuance of a corrective notice to underwriters confirming that Better would not enforce the release in its severance agreements as to their potential claims or participation in this case and would not seek reimbursement of severance payments made [ECF 124];
- Judge Staton granted Plaintiff's opposed motion for conditional certification of a FLSA collective action and for issuance of FLSA opt-in notice to the putative collective of underwriters [ECF 125] and approved the parties' resolution of disputed issues over the opt-in Notice [ECF 134];
- Better moved to compel arbitration as to all opt-in Plaintiffs who signed arbitration agreements; this Court denied Better's opposed motion as to all 158 opt-ins who were active employees when first presented with the arbitration agreements, granting it as to those who began working for Better after January 1, 2021 [ECF 232], and approved the parties' subsequent stipulations as to the extent of that ruling [ECF 236].

As a result of the various rulings, by the time this settlement was finally reached in 2026 there are 211 named and opt-in Plaintiffs remaining as parties in the action (the "Plaintiffs").

The parties had previously attempted, over the course of this five-plus year litigation, to resolve the case through three separate mediation sessions (conducted in February, 2021; December, 2022; and March, 2024, respectively), with mediator David Rotman, but were unable to agree to a resolution. (Helland Decl. ¶ 4.) After Better's second outside counsel law firm to appear in the action was replaced by

Better's third outside counsel law firm in 2025, the parties resumed negotiations and ultimately reached agreement by execution of a Term Sheet on March 13, 2026 followed by the long-form Settlement Agreement (attached as Helland Declaration Exhibit 1) (the "Agreement").

## III.   THE SETTLEMENT

### A. Settlement Terms

The settlement is structured as a FLSA collective-only[2] settlement providing offers to only those 211 Plaintiffs remaining in the case after the Court's rulings ("Opt-in Plaintiffs" as defined in the Agreement, ¶ 2(bb).)[3] Those Opt-in Plaintiffs who respond to their offer communicated by the Settlement Notice by timely submitting a Notice of Denial will not release any claims, but will not receive the offered settlement amounts, and will be dismissed without prejudice from the action, with tolling. (Agreement, ¶ 2(z).) The settlement does not release absent class member claims or involve Rule 23 class certification, and any Rule 23 California class claims are dismissed without prejudice. (Agreement, ¶ 2(nn).) The settlement does, however, release California claims alleged in the complaint for California Opt-in Plaintiffs who do not submit a Notice of Denial. (*Id.*) In addition, the settlement resolves the PAGA claims asserted in Plaintiff's LWDA PAGA notice for the aggrieved employees. (Agreement, ¶ 2(oo).)

Under the Agreement, Better agrees to pay a Gross Settlement Amount ("GSA") of $7,185,000[4], which is non-reversionary. (Agreement, ¶ 19.) Defendant

---

[2] The Agreement provides that the Parties will stipulate to FLSA Final Collective Certification for settlement purposes only or, if the Court requires, will request that the Court grant final certification of the FLSA collective action consistent with the Agreement. (Agreement, ¶ 18.)

[3] The plaintiffs who have been compelled to arbitrate their claims are not part of the Settlement and are no longer pending in front of this Court.

[4] A total of $485,000 will be credited toward this amount as having already been paid to the 97 individuals who signed the Release Agreements as described <u>supra</u> in

MEM. SUPP. MOT.  FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

will separately pay Defendant's payroll taxes and the settlement administration costs (which administration costs will not exceed $15,000). (Agreement, ¶¶ 2(qq), 19.) Defendant is required to fund the Qualified Settlement Fund ("QSF") by the later of January 8, 2027 or 10 business days after the settlement effective date. (Agreement, ¶ 20.) The GSA is inclusive of:

- Attorneys' fees in the requested amount of Thirty Three percent (33%) of the GSA, which will compensate Plaintiffs' counsel for work performed through the date of the Agreement as well as all work required to effectuate the settlement, and for reimbursement of their litigation costs and expenses in an amount not to exceed $70,000, both of which are subject to Court approval (Agreement, ¶ 21; Helland Decl. ¶ 17);

- An enhancement payment to the Named Plaintiff in the requested amount of $12,500, subject to Court approval or modification, in recognition of his efforts in initiating and prosecuting the case, and for which he will provide Better with a general release of his claims (Agreement, ¶¶ 2(o), 22);

- A payment to the LWDA in the amount of $268,312.50, which is 75% of the $357,750 of the GSA that is designated in satisfaction of the PAGA claims. The remaining 25% of the designated PAGA amount will be distributed to the PAGA group (Agreement, ¶ 24); and

- Individual settlement payments to the Participating Plaintiffs[5]. (Agreement, ¶ 25)

---

§ I.B. Better's actual payment will therefore be $6,700,000, plus Defendant's share of payroll taxes and the costs of administration. (Agreement, ¶ 2(r).)

[5] "Participating Plaintiffs" are defined in the Agreement as all individuals who filed a consent to join form in the Action that was not withdrawn, whose claims have not been compelled to arbitration, whose employment with Defendant began before Jan 1, 2021, and who did not timely submit a Notice of Denial by the Notice Deadline. (Agreement, ¶ 2(hh))

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

If the Court approves the payments outlined above, the amount available to be distributed to Opt-in Plaintiffs will be approximately $3,888,750, plus the $485,000 already paid, for a total of $4,373,750. (Helland Decl. ¶ 11.) The individual settlement payments to Participating Plaintiffs will be made from the Net Settlement Amount (the GSA minus attorneys' fees and costs, the enhancement payment to the Named Plaintiff, and the designated PAGA amount) ("NSA") on a pro rata basis based on their work weeks in a covered position during the applicable covered periods. (Agreement, ¶ 26(a)(i).) The Non-California Opt-in Plaintiffs will be allocated one settlement share for each FLSA covered workweek and the California Opt-in Plaintiffs will be allocated three settlement shares for each California covered workweek worked in California. (*Id.*) The shares will then be aggregated to determine the per-share value from the NSA and each Plaintiff's individual settlement allocation will be determined by multiplying the per-share value by the total settlement shares assigned to them. (Agreement, ¶ 26(a)(ii).) Plaintiffs who signed Release Agreements in 2020 in exchange for a $5,000 payment will have their settlement allocation reduced by $5,000. (Agreement, ¶ 26(a)(iii).) No Plaintiff will receive less than $1,000. (Agreement, ¶ 26(a)(iv).) Fifty percent of each individual settlement payment to Non-California Plaintiffs and 25% of each individual settlement payment to California Plaintiffs will be treated as wages subject to applicable tax withholding. The remaining portion will be treated as non-wage liquidated damages, penalties, and/or interest and will not be subject to payroll tax withholding. (Agreement, ¶ 38.)

Members of the PAGA Group will additionally receive a pro rata portion of the remaining 25% share of the PAGA settlement amount after payment to the LWDA ($89,437.50) based on their number of pay periods worked in a covered position in California during the PAGA period. The PAGA payments will be treated as non-wage penalties and reported on an applicable IRS Form 1099. Members of the PAGA Group may not opt out of the PAGA payment. (Agreement,

6

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

¶ 25(b).)

In exchange for those individual settlement payments, Plaintiffs will release all claims, rights, demands, liabilities, and causes of action that were pled in the SAC, based on the identical factual predicate therein, through September 30, 2021, for time worked for Defendant as an Underwriter classified by Defendant as exempt. The enhanced settlement share for California Plaintiffs reflects the additional California-specific claims and remedies being released. (Agreement, ¶ 2(nn).) Members of the PAGA Group will release those claims for civil penalties under PAGA that were asserted against Defendant as set forth in the PAGA Notice submitted to the LWDA by the Named Plaintiff on September 23, 2020. (Agreement, ¶ 2(oo).)

Settlement approval is structured in two stages. (Agreement, ¶¶ 42-43.) First, after preliminary approval of the settlement, all Opt-in Plaintiffs will be mailed and e-mailed a Settlement Notice including: (a) information regarding the nature of the case; (b) a summary of the principal terms of the Settlement; (c) the definition of Participating Plaintiffs; (d) the estimated Individual Settlement Payments and the formula for calculating those payments; (e) the dates comprising the applicable covered periods; (f) instructions on how to timely submit a Notice of Denial to the Settlement Administrator by the Notice Deadline; (g) a statement that submitting a timely Notice of Denial will result in exclusion from the Settlement, except as to the PAGA settlement (if applicable); (h) instructions on how to dispute the Work Weeks information; (i) contact information for Plaintiffs' Counsel and the Settlement Administrator; and (j) a description of the Released Claims. The Settlement Notice will also be posted on the settlement website. (Agreement, ¶ 31.)

Defendant's records establishing covered workweeks are presumed correct unless the Opt-in Plaintiff is able to dispute their individual settlement payment calculations by submitting to the Settlement Administrator evidence establishing the dates they contend they worked in covered positions. All disputes will be

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

resolved prior to or in connection with a motion for final approval. (Agreement, ¶ 32.)

The Opt-in Plaintiffs may also submit a written Notice of Denial within 30 days after the settlement notice is initially mailed, which results in the individual being excluded from the Settlement and not releasing any claims other than PAGA claims if they are a member of the PAGA Group. If an Opt-in Plaintiff files a Notice of Denial, their Consent form previously filed in the case will be dismissed without prejudice with thirty days to re-file to maintain all applicable tolling. A Notice of Denial will have no effect on the GSA. (Agreement, ¶¶ 2(y)-(z).)

Second, after the notice period has exhausted, the parties will seek final approval of the settlement and will present a proposed Final Approval Order and Judgment incorporating the settlement. The Court will have continuing jurisdiction over the Action for purposes of: (1) enforcing the Agreement; (2) addressing settlement administration matters; and (3) addressing such post-Judgment matters as may be appropriate under Court rules and applicable law. (Agreement, ¶¶ 43-44.) After final approval is granted, the settlement administrator will mail the settlement payments to all Participating Plaintiffs, which will be valid and negotiable for 180 days after issuance, after which they will be void. With 90 days remaining in the check-cashing period, the settlement administrator will send a reminder letter by mail and email to any Participating Plaintiff who has not yet cashed their check. During the last 60 days of the check-cashing period, the settlement administrator will make reasonable telephone outreach to any Participating Plaintiff who has still not cashed their check. (Agreement, ¶ 36.)

### B. Damages Analysis and Value of the Settlement

Plaintiffs' Counsel calculated damages attributable to the 211 Opt-in Plaintiffs who are eligible to participate in the settlement. (Helland Decl. ¶¶ 6-9.) The calculations assumed 50 hours of overtime worked per week, spread over 6 days of work. (*Id.* ¶ 7.) Damages under the FLSA (and California law) were

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

calculated *without* applying the fluctuating workweek method, meaning damages were calculated according to the highest possible regular rate for regular earnings. (*Id.*) Counsel applied a three-year FLSA statute of limitations (i.e., assuming the finding of a willful violation), calculated from each Opt-in Plaintiff's consent filing date, after applying statutory tolling to which the parties agreed during the litigation.[6] (*Id.*) The damages period ended September 30, 2021. (*Id.*) Counsel calculated straight FLSA damages, without including liquidated damages. (*Id.*)

For California Opt-in Plaintiffs, Counsel calculated overtime damages under both California law and the FLSA and applied the higher measure of damages for each pay period. (Helland Decl. ¶ 8.) California Opt-in Plaintiffs were eligible for overtime damages going back four years from filing, to September 18, 2016. (*Id.*) Counsel assumed one missed meal period and one missed rest period per day, with a 50% chance of recovering meal and rest period premiums. (*Id.*) Counsel also calculated wage statement and waiting time penalties for California Opt-in Plaintiffs. (*Id.*)

Counsel calculated damages many times throughout the litigation using variations of these inputs and across various datasets provided by Defendant going back to early 2021. (Helland Decl. ¶ 6.) Defendant provided updated and more detailed data in the course of finalizing the Settlement. (*Id.*) Using the data that will be used to allocate the settlement, Plaintiffs' Counsel calculates total damages to be approximately $13.87 million. (*Id.* ¶ 9.) The overtime damages total approximately $11.14 million, and the California meal/rest premium, wage statement penalty, and waiting time penalty claims total approximately $2.73 million. (*Id.*)

Defendant also provided data from which Plaintiffs' Counsel could calculate

---

[6] Pursuant to stipulation, the FLSA statute of limitations was tolled for individuals who had not joined the case for the following time periods: December 4, 2020 through June 28, 2021 and October 1, 2021 through May 17, 2022. (Helland Decl. ¶ 3.)

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

potential PAGA penalties. (Helland Decl. ¶ 10.) The PAGA Group includes 116 employees, covering the period from September 23, 2019 through September 30, 2021. (*Id.*) Of the 116 members of the PAGA Group, 68 are California Opt-ins. (*Id.*) There are approximately 3,129 pay periods in the covered time period. (*Id.*) Attributing one $100 penalty per pay period for each alleged violation – overtime, meal period, rest period, wage statement, and unreimbursed business expenses – yields $1,564,500 in potential PAGA penalties. (*Id.*)

**IV.   ARGUMENT AND CITATION OF AUTHORITIES FOR APPROVAL**

Because the settlement does not involve Rule 23 class certification, and does not effectuate a release of any claims by absent class members who are not Plaintiffs, settlement approval is to be analyzed under the framework applicable to FLSA collective-only settlements and (as to the PAGA claims only) PAGA settlements, neither of which implicate or require application of class action settlement analysis under Fed. R. Civ. P. 23(e).

**A. Standard for Court Approval of FLSA Settlements**

Although not explicitly required by the Ninth Circuit, courts in this district generally require judicial fairness approval of FLSA collective member settlements under a "totality of circumstances approach," while recognizing that "[w]hatever role a court plays in certifying an FLSA class, it is not bound to exercise the same oversight of the settlement of a collective action as it must a class action under Federal Rule of Civil Procedure 23(e). *Johnson v. Insulet Corp.*, No. 2:20-CV-05418-VAP-KESX, 2023 WL 11944334, at *3 (C.D. Cal. May 9, 2023). This is because FLSA collective-only settlements, as here, do not implicate the Court's role in protecting unnamed class members; instead, "members of an FLSA collective action have opted in affirmatively; a court's involvement in the management of their action 'has less to do with the due process rights' of those to be bound by a settlement, 'and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing

10

collective actions in an orderly fashion.'" *Id.*; *McElmurry v. U.S. Bank Nat. Ass'n,* 495 F.3d 1136, 1139 (9th Cir. 2007) ("only those plaintiffs who expressly join the collective action are bound by its results."). If an FLSA settlement reflects a "reasonable compromise over issues," that are "actually in dispute," the court may approve the settlement "to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Court approval of FLSA settlements helps ensure that the resolution is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* at 1354. Thus, the Court's inquiry is generally whether the settlement is "a fair and reasonable resolution of a bona fide dispute." *Johnson*, 2023 WL 11944334, at *3.

This Court has already conditionally certified a collective action based on a finding that the Plaintiffs were similarly situated. Conditional certification of a FLSA collective is sufficient for purposes of approving the settlement. *Id.* at *4.

### B. Standard for Court Approval of the PAGA Settlement

Given that PAGA claims may have broader implications for government and employer accountability, courts are required to "review and approve any settlement of any civil action filed pursuant to [PAGA]". Cal. Lab. Code § 2699(l)(2). However, the Ninth Circuit has also not defined the standard for approving PAGA settlements, and "[PAGA] is surprisingly short on specifics regarding the appropriate standard for examining proposed settlements of PAGA claims. *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). Courts in this District have generally approved PAGA settlements "upon a finding that the settlement (1) meets the statutory requirements of PAGA and (2) is 'fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals.'" *Aronson v. Gannett Co.*, No. CV 19-996 PSG (JEMX), 2023 WL 2025706, at *3 (C.D. Cal. Feb. 15, 2023) (citations omitted).

### C. The FLSA Collective-Only Settlement Is Fair and Reasonable

While recognizing that Rule 23 class action principles do not necessarily

11

apply in FLSA collective actions, some courts in this district have nevertheless borrowed from Rule 23 approval factors in reviewing FLSA settlements. *See*, *e.g.*, *Dashiell v. Cnty. of Riverside*, 2018 WL 3629915,*3 (C.D. Cal. July 19, 2018). Courts in this district "often consider the following factors when evaluating settlements under FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.*; *Johnson*, 2023 WL 11944334, at *5.

When reviewing these factors, the Court should bear in mind that the *Lynn's Foods* analysis primarily inquires as to whether a settlement involves overreach by an unscrupulous employer seeking to extinguish statutory rights, or instead represents a reasonable compromise of disputed issues. Here, the settlement far exceeds the baseline of a "reasonable" compromise, and therefore easily meets the standard for approval. The settlement is an excellent result for the 211 Opt-in Plaintiffs participating in the settlement, and warrants approval.

### 1. *The Range of Recovery Supports Approval*

The possible range of recovery here supports settlement approval. Plaintiffs have secured a gross settlement of $7,185,000. This is a substantial recovery in light of Plaintiffs' damage calculation of $13.87 million in unliquidated unpaid overtime and California penalties.[7] The gross settlement is therefore valued at almost **52 percent of the reasonable estimated recovery**. Provided the Court approves all aspects of the settlement, the amount available for distribution to Plaintiffs will be at least $3,888,750. Adding in the $485,000 already paid, the net recovery, after fees and costs is $4,373,750, which is over 31.5% of the reasonable

---

[7] The reasonableness of the PAGA recovery is addressed below.

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

estimated recovery. (*See* Helland Decl. ¶ 11.) The 52 percent gross recovery and 31.5 percent net recovery are both excellent results. *See*, *e.g.*, *Potter v. Big Tex Trailer Mfg., Inc.*, 2019 WL 8512459, at *7 (C.D. Cal. Sept. 26, 2019) (approving wage and hour settlement that recovered approximately 32 percent of the estimated damages); *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *7 (C.D. Cal. June 12, 2014) (approving wage and hour settlement recovering 31% of damages); *Newell v. Ensign United States Drilling (California) Inc.*, 2021 WL 6000227, at *13 (E.D. Cal. Dec. 20, 2021) (approving FLSA settlement with recovery of between 20 and 40 percent of possible damages); *Hopson v. Hanesbrands Inc.*, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) (approving settlement constituting 39 percent of maximum recovery for lost wages).

### 2.   *The Stage of Proceedings and Discovery Supports Approval*

The Parties have been litigating this case for almost six years. The litigation has been marked by heavily contested motion practice and a trip to the Ninth Circuit. That litigation benefitted both parties, as Plaintiffs secured a ruling invalidating certain arbitration and release agreements that would have eliminated the claims for many Opt-in Plaintiffs participating in the case, and Defendant was successful in compelling other Plaintiffs to arbitration. (*See* Helland Decl. ¶ 12.) The litigation therefore focused the case for settlement, even though it did not directly address the merits of Plaintiffs' claims. However, the litigation also resulted in substantial delay. This case seeks damages Plaintiffs incurred during the early days of COVID, in a recovery window that ended almost five years ago. The time for settlement has come. The stage of the proceedings warrants settlement approval.

There was also substantial discovery in the case. Most of the formal discovery addressed Defendant's arbitration and release roll out. (Helland Decl. ¶ 12.) But the parties also exchanged information for settlement purposes as far back as early 2021. (*Id.* ¶ 6.) Defendant supplemented that data over time. (*Id.*)

13

Plaintiffs' Counsel believed they had the information necessary to value Plaintiffs' Claims. (*Id.*) The amount of discovery completed warrants settlement approval.

### 3.    The Litigation Risks Support Approval

Plaintiffs' Counsel have significant experience litigating FLSA cases in general and litigating mortgage underwriter cases specifically. (Helland Decl. ¶ 14; Head Decl. ¶¶ 5-9.) Counsel are intimately familiar with the arguments surrounding whether mortgage underwriters should be classified as non-exempt under the FLSA. *See*, *e.g.*, *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847 (9th Cir. 2017) (holding, in case where Mr. Helland was lead counsel, that mortgage underwriters do not qualify for the FLSA's administrative exemption). Plaintiffs believe they have a high likelihood of success on Defendant's administrative exemption defense.

However, Opt-in Plaintiffs who did not work in California face exposure on Defendant's highly compensated employee defense. That defense applies to employees who earned more than $100,000 on an annualized basis prior to 2020, and more than $107,432 on an annualized basis starting January 1, 2020. *See* 29 C.F.R. § 541.601(a)(1). This exemption provides that "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(c). Accordingly, an employee who meets the salary threshold only needs to perform *one* of the exempt duties or responsibilities under a white collar exemption to be properly classified as exempt. *Id.* Because *McKeen-Chaplin* only addressed one duties prong of the administrative exemption, 862 F.3d at 849 n.1, Opt-in Plaintiffs faced substantial exposure under the FLSA's highly compensated exemption.

In contrast, California law does not have a highly compensated exemption. *See* Cal. Code Regs., tit. 8, § 11040 (no highly compensated exemption). Accordingly, California Opt-in Plaintiffs do not face the same litigation risk on the

14

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

merits of their claims. Not only that, California Opt-in Plaintiffs are entitled to a more favorable overtime calculation (overtime after 8 hours in a day and double time after 12), and have claims for missed meal and rest periods, waiting time penalties, and wage statement penalties. *See* ECF No. 40 (Second Amended Complaint), ¶¶ 55-100. California Opt-in Plaintiffs therefore have much more valuable claims than their non-California counterparts.

Although there is no Rule 23 class settlement here, the California Opt-in Plaintiffs nevertheless release the state law claims that were pled in the complaint. These claims are valuable, mostly due to the much higher likelihood of success on the overtime claim but also due to the damages that can be recovered. The value differential warrants the 3:1 weighting in favor of California Opt-in Plaintiffs in the settlement allocation. (Agreement, ¶ 26(a)(i).)

For all these reasons, the litigation risks support approval of the settlement.

### 4. *The Scope of Release Supports Approval*

The Parties took great care to negotiate a narrow, focused release. The release is limited to claims "that were pled in the Action against Defendant by the Operative Complaint, based on the identical factual predicate therein, through September 30, 2021, for time worked for Defendant as an Underwriter classified by Defendant as exempt from the overtime laws . . . ." (Agreement, ¶ 2(nn).) Moreover, the release makes clear that it is "limited to Participating Plaintiffs"; that it includes California Claims only for Participating Plaintiffs, with no Rule 23 class release; that members of the PAGA Group who are not Participating Plaintiffs do not release underlying non-PAGA claims, that the release ends September 30, 2021. (*Id.*) The narrow, focused release supports settlement approval.

### 5. *View of Counsel and Plaintiffs Support Approval*

Plaintiffs' Counsel support the settlement as an excellent result. The Named Plaintiff also supports the result. This factor supports approval.

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

### 6.  *View of Defendant*

Defendant denies the allegations in the litigation and any liability, fault, or wrongdoing, and contends that it complied in good faith with applicable federal and California wage and hour laws. As such, the Settlement is not an admission of liability or wrongdoing by Defendant. However, Defendant recognizes that continued defense of the litigation would be prolonged and expensive, requiring substantial time, energy, and resources, particularly if any findings were appealed. Defendant therefore agrees to resolve the litigation to avoid the burden, expense, and uncertainty of continued litigation and to focus on growth and profitability in the improving U.S. mortgage market.

### 7.  *There is No Possibility of Fraud or Collusion*

Lastly, the Settlement warrants approval because there is no possibility of fraud or collusion. This litigation has been heavily contested. Defendant hired three sets of outside counsel. The parties mediated three times with one of the most well-respected (and expensive) mediators in California. This is a bona fide settlement.

### D. The PAGA Settlement is Fair and Reasonable

The Settlement allocates $357,750 to PAGA claims. As noted above, the maximum possible PAGA recovery is $1,564,500. However, courts retain great discretion in the amount of PAGA penalties to award, and there is a risk in any PAGA case of a substantial reduction in penalties at trial. Moreover, where a settlement otherwise provides for substantial recovery, "the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (internal quotation omitted).

Here, California Opt-in Plaintiffs will receive substantial value for their FLSA and Labor Code claims. As for members of the PAGA Group who are not

Opt-in Plaintiffs, the putative Rule 23 class allegations preserved the statute of limitations on their Labor Code claims, which are unaffected by the PAGA release. Those PAGA Group members will receive a PAGA Payment Enclosure letter (exhibit B to the settlement) after final approval. And as to the public purposes of PAGA, Defendant reclassified its mortgage underwriters almost five years ago, meaning the deterrent effect of PAGA has already been accomplished.

The substantial $357,750 PAGA allocation, which represents almost 23% of possible PAGA penalties, is more than sufficient to warrant approval. For example, a recent hybrid PAGA/FLSA case involving unpaid wages to farm workers approved a PAGA settlement of just under $200,000 (after fees and expenses) in the face of almost $20 million in potential PAGA exposure. *Hernandez v. Dutton Ranch Corporation*, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) (granting final approval to settlement in which PAGA allocation represented "approximately 2%-4% of the PAGA exposure,"); *see also Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at *1-2 (N.D. Cal. Oct. 11, 2017) (granting preliminary approval for $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person); *Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (approving a PAGA settlement of 0.6% of its total value because of the "risks of no recovery"); *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding settlement for $50,000 in PAGA penalties adequate where the total possible recovery for penalties was estimated at $4.7 million).

The PAGA allocation amounts to almost 5 percent of the gross settlement, which is considerably more than the portions that are routinely approved in other hybrid Labor Code and PAGA actions. *See, e.g.*, *Boyd v. Bank of Am.*, 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (approving PAGA penalties worth 0.32% of gross settlement); *Viceral*, 2017 WL 661352, at ** 1, 3 (approving PAGA

17

penalties worth 0.33% of gross settlement and worth 0.15% of total estimated value of PAGA claims); *Alexander v. FedEx Ground*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%). The Court should approve the PAGA settlement.

## E. The Service Payments, Reimbursement of Counsel's Costs and Expenses, and Counsel's Award of Attorney's Fees from Settlement, Warrant Approval

Plaintiffs intend to file a separate fee petition to be heard in conjunction with final approval.[8] For purposes of this motion, Plaintiffs' counsel, Head Law Firm, LLC ("HLF") and Nichols Kaster, LLP ("NK") (collectively "Plaintiffs' Counsel"), request preliminary approval of attorneys' fees at 33% of the total gross settlement amounts paid or otherwise made available[9] to Plaintiffs ($2,371,000), which Plaintiffs will demonstrate to be consistent with applicable Ninth Circuit authority awarding fees under the percentage of the fund method, as validated by a lodestar cross-check. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)[10]; *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of 33.3% of

---

[8] There is no clear sailing provision in the settlement agreement.

[9] The percentage of the fund method is based on the amount of total recovery made available, as opposed to the total amount of claims made, and is well established in federal courts and the Ninth Circuit. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Hill*, 775 F.2d 1037 (9th Cir. 1985); *Williams v. MGM-Pathe Communication Co.*, 129 F.3d 1026 (9th Cir. 1997). The goal of the percentage of the fund, which courts have found preferable, is to award "reasonable compensation for creating a common fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

[10] Plaintiffs will address the *Vizcaino* factors in their separate fee petition.

18

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

$1.725 million); *see generally Medoff v. Minka Lighting, LLC*, No. 2:22-CV-08885-HDV, 2024 WL 5275593, at *1 (C.D. Cal. July 10, 2024) (compiling cases, recognizing it is "not uncommon for courts to award one-third of the gross settlement fund as attorneys' fees where the circumstances warrant it."); *Rubin-Knudsen v. Arthur Gallagher & Co.*, No. EDCV186227JGBSPX, 2021 WL 4924765, at *7 (C.D. Cal. Mar. 19, 2021) ("courts within this Circuit routinely award attorneys' fees equal to one-third of a gross settlement amount."); *Tamimi v. SGS N. Am. Inc.*, No. CV 19-965 PSG (KSX), 2021 WL 12306353, at *10 (C.D. Cal. Sept. 1, 2021) ("[A]n award of one-third of the settlement amount is common in similar [wage and hour] cases.").

Plaintiffs' Counsel also request preliminary approval for reimbursement of actual litigation expenses up to $70,000.[11]  Finally, to recognize the time and effort that Named Plaintiff Dominguez expended for the benefit of the opt-in Plaintiffs and PAGA aggrieved individuals, the results he made possible for the individuals benefitting from this settlement, and the risks he accepted by leading and participating in the protracted litigation that has spanned over five years, Plaintiff requests preliminary approval of an Enhancement Payment of $12,500 for Plaintiff Dominguez.

### 1. The Settlement Is Highly Beneficial to Plaintiffs and PAGA Members

Opt-in Plaintiffs joined the case by filing Consents agreeing to be represented by Plaintiffs' Counsel, pursuant to Court-authorized Notice that stated:

> The Plaintiff's attorneys have taken this case on a contingency fee basis. This means they will only be paid if there is a monetary recovery through a settlement, judgment, or award in your favor. If there is no recovery, you will not owe them anything. If there is a recovery, Better will be required to pay the Plaintiff's attorney's fees

---

[11] Settlement Administrator costs, estimated not to exceed $15,000, shall be paid directly by Defendant not from the Fund. (Agreement, ¶ 23)

MEM. SUPP. MOT.  FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

and costs as a part of any money judgment, award, or settlement. You will not have to pay the attorneys anything out of your own pocket. The Court will ultimately determine the reasonableness of any fees and costs to be paid to Plaintiff's counsel.

(Order [ECF 132]).

As explained above, the settlement represents a favorable recovery based on the claims litigated. As a result of Plaintiffs' Counsel's work over a nearly six year period, any opt-in Plaintiff not compelled to arbitration who does not submit a Notice of Denial (declining to participate in the settlement) is eligible to receive their offered pro rata share of an excellent settlement result. The settlement amount alone warrants the requested fee recovery.

But here, the requested fee is also appropriate because Plaintiffs' Counsel's work yielded early returns for the putative collective of underwriting employees in two significant ways even *before* this settlement.

First, Plaintiffs' Counsel's work was the catalyst that brought about a change in Better's pay policies for underwriting employees, resulting in Better reclassifying all underwriting employees at issue in this litigation to non-exempt and eligible for overtime premium wages effective September 30, 2021. This change in the parties' relationship within months after the lawsuit being filed, benefiting the participating underwriters by eliminating the non-payment of overtime premium wages at issue going forward, supports the attorney's fees requested. *See, e.g., Green v. Lawrence Serv. Co.*, No. LACV1206155JAKVBKX, 2014 WL 12778929, at *9 (C.D. Cal. Apr. 1, 2014); *see generally In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 825 (E.D. Cal. 2016) ("The timing [within several months of the lawsuit being filed] of the change in the amount of autopay, from one-half to one full hour of pay, is circumstantial evidence from which the Court finds that this lawsuit was the reason that Taco Bell changed its autopay policy.").

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

Second, Plaintiffs' Counsel's efforts caused Better to issue Release Agreements directed *specifically to this lawsuit* that paid underwriters (including 97 Plaintiffs who will be offered payments under this settlement) $5,000 upon signing. Those $5,000 payments already received by 97 of the potential participants in this settlement are credited by the Parties' Settlement Agreement as partial pre-payment of the total settlement fund amount, and those 97 potential participants will receive their pro rata allocation offset by the $5,000 they already received, which is consistent with this Court's prior ruling.[12] Those $485,000 pre-payments, when combined with the additional $6,700,000 funds being offered by this settlement, total $7,185,000 in settlement funds already paid and otherwise made available to the potential settlement participants.

Consistent with rulings from this district, those prior $5,000 settlement payments are properly included in the gross settlement fund amount from which Plaintiffs' Counsel's percentage of the fund fees are calculated. In *Gutierrez v. Stericycle, Inc.*, the settlement agreement (as here) provided that the gross fund value included the settlement fund plus the additional amount ($460,000) pre-paid by defendant by individual settlements for calculation of attorney's fees, which pre-paid amount would then be deducted from defendant's gross fund amount funding obligation as a credit for "the amount [defendant] has paid to individual class member[s] who have previously entered into an individual settlement agreement of wage and hour claims under which that class member received a payment." *Gutierrez v. Stericycle, Inc.*, No. LACV1508187JAKJEMX, 2019 WL 12470143, at *2 (C.D. Cal. Mar. 22, 2019). Following rulings in which such preliminary individual settlement amounts were included in the value of class and collective

---

[12] The Court's Order invalidating those Release Agreements as "obtained through coercive or misleading information" held: "In invalidating the Release Agreements, the Court prohibits Defendant from requesting reimbursement of any payments made. *The Court will determine later whether Defendant may be entitled to an offset for payments made*." (Order [ECF 91]) (emphasis added).

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

action settlement funds, Judge Kronstadt approved attorney's fees as a percentage of the total gross fund amount inclusive of the individual settlement amounts already paid to settlement participants. *Id.* at \*5; *see also Green*, 2014 WL 12778929, at \*9 (considering $158,000 of individual settlement amounts that defendant paid to certain settlement participants in addition to gross settlement amount in finding fees reasonable); *see generally Kang v. Wells Fargo Bank, N.A.*, No. 17-CV-06220-BLF, 2022 WL 1128721, at \*4 (N.D. Cal. Apr. 15, 2022) ("For claims brought under California law, the Ninth Circuit continues to recognize a catalyst theory for entitlement to fees").

### 2. Plaintiffs' Counsel Devoted Substantial Time and Resources

As will be demonstrated when the issue is fully presented in a fee petition, the requested fee constitutes a low (less than 2x) multiplier over lodestar. Plaintiffs' Counsel took this matter on a pure contingency basis, expending time and effort - and advancing litigation costs and expenses approaching $70,000 to date -- without any guarantee of recovery. (Helland Decl. ¶ 15; Head Decl. ¶ 4.) In prosecuting this action, Plaintiffs' Counsel gave up the opportunity to perform other work during this nearly six year time period. (Helland Decl. ¶ 16; Head Decl. ¶ 4.)

### 3. Plaintiff's Significant Contributions Warrant the Enhancement Award

Plaintiff made important contributions to the prosecution and fair resolution of this action on behalf of the underwriting employees who will be offered payments under the settlement. (Dominguez Decl. ¶¶ 5-7.)  Plaintiff Dominguez has been integral to the litigation for nearly six years now, including providing declaration testimony, participating in discovery, and representing the potential settlement recipients in three separate mediations over the years. (*Id.*) And in affiliating himself publicly with this case, he faced the risk that his current or future employers might retaliate against him for his involvement in this lawsuit, and experiences real risk that a prospective employer might learn that he brought this

lawsuit – a risk made more likely due to the tremendous publicity and news coverage that resulted from Plaintiff's appellate win before the Ninth Circuit in *Dominguez*, 88 F.4th 782.

In conjunction with final approval, Plaintiff will seek approval of an enhancement payment to named Plaintiff Lorenzo Dominguez of $12,500. Courts in this district have long recognized that named plaintiff enhancement payments between $10,000-$15,000 (and higher) are appropriate under similar circumstances. *See, e.g.*, *Herrera v. Cnty. of Los Angeles*, No. 2:22-CV-01013-HDV-PDX, 2026 WL 507915, at *2 (C.D. Cal. Feb. 23, 2026) ("The Court finds that the incentive award of $25,000 to the class representative is appropriate and reasonable."); *Reyes v. Experian Info. Sols., Inc.*, No. 8:16-CV-00563-SVW-AFM, 2025 WL 1571756, at *1 (C.D. Cal. May 30, 2025) (approved service award payment of $15,000); *Raffin v. Medicredit, Inc.*, No. CV154912MWFPJWX, 2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) ("In light of the caselaw supporting a $15,000 incentive award and the significant time and effort Lead Plaintiff expended in this litigation, the Court finds the award of $15,000 appropriate."); *Sebastian v. Sprint/United Mgmt. Co.*, 2019 WL 13037010, at *9 (C.D. Cal. Dec. 5, 2019) (approving a $10,000 enhancement award); *Edwards v. Chartwell Servs., Inc.*, 2018 WL 10455206, at *1-2, *8 (C.D. Cal. Aug. 27, 2018) (same); *Thomas v. Cognizant Tech. Sols. U.S. Corp.*, 2013 WL 12371622, at *9 (C.D. Cal. June 24, 2013) (same). Given the pace of inflation over recent years, it is appropriate for courts to update the standard dollar amounts routinely approved as enhancement awards. Plaintiff therefore respectfully requests approval of the requested $12,500 award, which he will support more fully in conjunction with final approval.

//

//

//

//

23

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT

## V. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the settlement, authorize distribution of settlement notice, and set a hearing date for final approval.

Dated: July 1, 2026

HEAD LAW FIRM, LLC
NICHOLS KASTER, LLP
ROSEN MARSILI RAPP LLP

By: _/s/ Matthew C. Helland_
Matthew C. Helland

Attorneys for Plaintiffs

MEM. SUPP. MOT. FOR APPROVAL OF FLSA AND PAGA SETTLEMENT