# EXHIBIT 1

MARIE BURKE KENNY (Bar No. 183640)
marie.kenny@procopio.com
VIRGINIA L. MILLER (Bar No. 211124)
gina.miller@procopio.com
KARINA J. LO (Bar No. 322909)
karina.lo@procopio.com
PROCOPIO, CORY, HARGREAVES
 & SAVITCH LLP
200 Spectrum Center Dr., Suite 520
Irvine, CA 92618
Telephone:  (949) 247-7300
Facsimile:   (619) 744-5436

Attorneys for Defendant BETTER
MORTGAGE CORPORATION

MATTHEW C. HELLAND (SBN 250451)
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs

*Additional Counsel Listed on Following Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO DOMINGUEZ, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BETTER MORTGAGE CORPORATION,<br><br>Defendant. | Case No. 8:20-cv-01784-MRA-KES<br><br>**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE SETTLEMENT AGREEMENT AND RELEASE**<br><br>Complaint Filed:  September 18, 2020<br>Trial Date:  None |

STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE

Jason Christopher Marsili (CA SBN 233980)
jmarsili@rmrllp.com
ROSEN MARSILI RAPP LLP
3600 Wilshire Blvd., Suite I 800
Los Angeles, CA 90010-2622
Telephone: (213) 389-6050
Facsimile: (213) 389-0663

C. Andrew Head (admitted pro hac vice)
ahead@headlawfirm.com
Bethany Hilbert (admitted pro hac vice)
bhilbert@headlawfirm.com
HEAD LAW FIRM, LLC
4422 N. Ravenswood Ave.
Chicago, IL 60640
Telephone: (404) 924-4151
Facsimile: (404) 796-7338

Attorneys for Plaintiffs

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

## STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE SETTLEMENT AGREEMENT AND RELEASE

1.      This Stipulation of FLSA Collective and PAGA Representative Action Settlement and Release ("Settlement" or "Settlement Agreement") is made and entered into by and between Plaintiff Dominguez ("Named Plaintiff"), on behalf of himself and the Participating Plaintiffs, as defined below, and as a proxy or agent of the California Labor and Workforce Development Agency ("LWDA"), and Defendant Better Mortgage Corporation ("Defendant") (collectively, the "Settling Parties").

## DEFINITIONS

2.      The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a.      "Action" means the above captioned lawsuit, pending in the United States District Court for the Central District of California (Case No. 8:20-cv-01784-MRA-KES).

b.      "Attorneys' Fees and Costs" means attorneys' fees approved by the Court for Plaintiffs' Counsel's litigation and resolution of the Action, and all costs incurred and to be incurred by Plaintiffs' Counsel in the Action, including, but not limited to, costs associated with documenting the Settlement, securing the Court's approval of the Settlement, administering the Settlement, obtaining entry of the Judgment terminating the Action, and expenses for any experts.

c.      "California Covered Period" means the period from September 18, 2016 through the September 30, 2021 date Defendant reclassified underwriting positions to non-exempt for California Opt-In Plaintiffs.

d.      "California Opt-In Plaintiffs" means all current and former employees of Defendant who (i) worked in a Covered Position in California during the California Covered Period, (ii) filed a consent to join form pursuant to 29 U.S.C. § 216(b), (iii) were not compelled to arbitration, and (iv) whose employment with Defendant began before January 1, 2021, or, if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor in interest.

e.      "California Work Week" means a Work Week worked by a California Opt-In Plaintiff in a Covered Position in California during the California Covered Period.

f.      "Counsel for Plaintiff and Participating Plaintiffs" ("Plaintiffs'

Counsel") means Nichols Kaster LLP, Rosen Marsili Rapp LLP, and Head Law Firm, LLC.

g.    "Work Weeks" means all full or partial weeks worked by Participating Plaintiffs in a Covered Position during the Covered Periods.

h.    "Court" means the United States District Court for the Central District of California, or any other court taking jurisdiction of the Action.

i.    "Covered Periods" means: (1) September 18, 2017 to September 30, 2021 for the Non-California Opt-In Plaintiffs ("FLSA Covered Period"); (2) September 18, 2016 to September 30, 2021 for the California Opt-In Plaintiffs ("California Covered Period"); and (3) September 23, 2019 to September 30, 2021 for PAGA Members ("PAGA Covered Period").

j.    "Covered Position" means the positions worked by underwriters (specifically, Underwriter, Senior Underwriter, Underwriting Team Lead, and Underwriting Associate, as those positions were identified by Defendant in court filings in the Action [ECF Nos. 120, 120-2]) and that were classified and paid by Defendant as salaried exempt ("Underwriter"). This definition excludes any time worked in a position above underwriting level (such as an Underwriting Manager) or other than Underwriter, or as an employee Defendant classified and/or paid as non-exempt. "Covered Position" also includes individuals who were on the original FLSA notice lists (produced by Defendant in 2022) or contend they worked as an Underwriter for Defendant.

k.    "Defendant" means Better Mortgage Corporation.

l.    "Defendant's Counsel" means Procopio, Cory, Hargreaves, & Savitch LLP.

m.    "Defendant's Payroll Taxes" means only the employer's share of payroll taxes required by law on the wage portion of any Individual Settlement Payment under this Settlement Agreement and does not include the employee's share of payroll taxes or withholdings. Defendant's Payroll Taxes shall be paid separately by Defendant and shall not be deducted from the Gross Settlement Amount, the Net Settlement Amount, or any Individual Settlement Payment.

n.    "Effective Date" means the date on which the Final Approval Order becomes Final. "Final" means the latest of the deadline for filing an appeal, or if a Participating Plaintiff files an appeal or petition for review, the date of the final resolution of that appeal or petition for review, including any requests for rehearing or petitions for writ of certiorari, resulting in affirmance of the Final Approval Order.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE SETTLEMENT AGREEMENT AND RELEASE**

o. "Enhancement Payment" means the amount the Court approves to be paid to the Named Plaintiff in recognition of the Named Plaintiff's efforts in bringing and prosecuting the Action on behalf of himself, the Participating Plaintiffs, and, with respect to the PAGA claims, the State of California. The parties agree to an Enhancement Payment to Named Plaintiff of Twelve Thousand Five Hundred Dollars ($12,500), subject to Court approval or modification.

p. "Final Approval" or "Final Approval Order" means the Court order granting final approval of the Settlement Agreement as to Participating Plaintiffs.

q. "FLSA Work Week" means, for each Participating Plaintiff, a Work Week within the Covered Period that was within the period beginning three (3) years preceding the filing of their Consent form in the Action, as adjusted to account for additional tolling agreements in the Action, through September 30, 2021.

r. "Gross Settlement Amount" means the non-reversionary maximum amount that Defendant, and/or its successor in interest on the liabilities related to the claims pled in the Action if any, shall pay in connection with this Settlement, in exchange for the release of the Participating Plaintiffs' Released Claims. The Gross Settlement Amount is the gross sum of Seven Million, One Hundred and Eighty Five Thousand Dollars ($7,185,000). The Gross Settlement Amount includes: (a) all Individual Settlement Payments to Participating Plaintiffs; (b) payment to the California Labor & Workforce Development Agency ("LWDA") and members of the PAGA Group under the Private Attorneys' General Act ("PAGA"); (c) the Enhancement Payment to the Named Plaintiff; and (d) Attorneys' Fees and Costs to Plaintiffs' Counsel. Except for Defendant's Payroll Taxes and the Settlement Administration Costs, the Parties agree that Defendant will have no obligation to pay any amount in connection with this Settlement Agreement apart from the Gross Settlement Amount. The Gross Settlement Amount shall be reduced by the $485,000 Defendant previously paid to 97 individual Opt-In Plaintiffs in 2020 pursuant to release agreements entered in connection with this litigation, such that the total common fund created for the benefit of Opt-In Plaintiffs by this litigation is $7,185,000, but the total payment due from Defendant, before separately paying Defendant's Payroll Taxes and the Settlement Administration Costs, will not exceed $6,700,000.

s. "Individual Settlement Payment" means each Participating Plaintiff's share of the Net Settlement Amount, to be distributed to Participating Plaintiffs.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE SETTLEMENT AGREEMENT AND RELEASE**

t.      "Labor and Workforce Development Agency Payment" or "LWDA Payment" means the amount that the Parties have agreed to allocate from the Gross Settlement Amount to the LWDA in connection with the claim brought under the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, et seq., ("PAGA"). The Parties have agreed that Three Hundred Fifty Seven Thousand Seven Hundred and Fifty Dollars ($357,750) of the Gross Settlement Amount will be allocated to the resolution of any claims arising under PAGA. Pursuant to PAGA, Seventy-Five Percent (75%), or Two Hundred Sixty Eight Thousand Three Hundred and Twelve Dollars and Fifty Cents ($268,312.50) , of the PAGA Settlement Amount will be paid to the LWDA.

u.      "Named Plaintiff" means Lorenzo Dominguez, the plaintiff who initiated and prosecuted this Action on behalf of himself and other individuals who filed consents to join pursuant to 29 U.S.C. § 216(b), and who, with respect to the PAGA claims asserted in this Action, represents the State of California.

v.      "Named Plaintiff's General Release of Claims and Rights" means Lorenzo Dominguez's additional release of rights and claims, effective upon the Effective Date, in consideration of Defendant's promises and agreements set forth in this Settlement Agreement, as follows: the Named Plaintiff fully releases the Releasees from any and all Released Claims and also generally releases and discharges the Releasees from any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, claims, charges, complaints, demands, obligations, liabilities, damages, attorneys' fees, costs, expenses, and rights of any kind whatsoever, whether in law or equity, known or unknown, suspected or unsuspected, fixed or contingent, that the Named Plaintiff now has or may hereafter claim to have against any of the Releasees, arising out of or relating in any way to the Named Plaintiff's recruitment, hire, employment, compensation, benefits, classification, leave requests, leaves of absence, accommodation requests, or separation from employment with Defendant, or the facts, transactions, events, allegations, or claims asserted in the Action. Without limiting the foregoing, this general release includes any claims arising under the Fair Labor Standards Act, the California Labor Code, the applicable IWC Wage Orders, the California Business and Professions Code section 17200 et seq., PAGA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 1981, the Civil Rights Act of 1991, the Equal Pay Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the California Family Rights Act, the Employee Retirement Income Security Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the California WARN Act, and any other federal, state, or local statute, regulation,

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

ordinance, common law, or equitable theory relating to wages, hours, meal periods, rest periods, wage statements, waiting time penalties, expense reimbursement, unfair competition, retaliation, discrimination, harassment, leave rights, wrongful termination, contract, tort, penalties, interest, attorneys' fees, or costs, whether or not such claims were asserted in the Action. The Named Plaintiff expressly waives and relinquishes, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542, which provides: *"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."* Notwithstanding the foregoing, the Named Plaintiff's General Release of Claims and Rights does not extend to claims for workers' compensation benefits, unemployment insurance benefits, vested retirement benefits, any claim that cannot be released as a matter of law, or any claim to enforce this Settlement Agreement. The Named Plaintiff's General Release of Claims and Rights shall become effective only upon the Effective Date.

w.    "Net Settlement Amount" means the Gross Settlement Amount less: (i) the Enhancement Payment; (ii) Attorneys' Fees and Costs to Plaintiffs' Counsel; (iii) the payment to the LWDA; and (iv) the payments to the members of the PAGA Group. The Parties acknowledge that all of these amounts are subject to the Court's approval.

x.    "Non-California Opt-In Plaintiffs" means all current and former employees of Defendant who (i) worked in a Covered Position, but did not work in a Covered Position within California, during the FLSA Covered Period, (ii) filed a consent to join form pursuant to 29 U.S.C. § 216(b), (iii) were not compelled to arbitration, and (iv) whose employment with Defendant began before January 1, 2021; or, if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor in interest.

y.    "Notice Deadline" means the date thirty (30) days after the Settlement Notice is initially mailed to the Participating Plaintiffs, by which Participating Plaintiffs must submit a Notice of Denial in order to timely deny participation in the settlement, as set forth in the next subsection.

z.    "Notice of Denial" means a valid and timely written denial of participating in the settlement submitted by a California Opt-in Plaintiff or a Non-California Opt-in Plaintiff, substantially in the form attached hereto as **Exhibit A**, which results in (i) such individual being excluded from Participating Plaintiffs; (ii) such individual giving no release of Released Claims, except of PAGA Claims to the extent they are a member of the PAGA Group; (iii) such individual withdrawing

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

his/her Consent form filed in the Action by dismissal without prejudice upon the Effective Date, with thirty days to re-file to maintain all applicable tolling from the Action; and (iv) no effect on the Gross Settlement Amount, except as provided in Section 33.

aa.    "Operative Complaint" means the Second Amended Complaint filed on August 3, 2021.

bb.    "Opt-in Plaintiffs" means all California Opt-in Plaintiffs and Non-California Opt-in Plaintiffs.

cc.    "PAGA Covered Period" means the period from September 23, 2019 through September 30, 2021 for the PAGA Group.

dd.    "PAGA Group" means all current and former employees of Defendant who worked as an Underwriter in California during the PAGA Covered Period, or, if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor in interest. Defendant represents that there are approximately 112 individuals who comprise the PAGA Group.

ee.    "PAGA Member" means a member of the PAGA Group, namely any current or former employee of Defendant who worked as an Underwriter in California during the PAGA Covered Period, or, if such person is incompetent or deceased, the person's legal guardian, executor, heir, or successor in interest.

ff.    "PAGA Payment Enclosure Letter" means the Court-approved letter enclosing the PAGA Settlement Amount Payment(s) to be sent to members of the PAGA Group who are not Participating Plaintiffs, after Final Approval, substantially in the form attached hereto as **Exhibit B**.

gg.    "PAGA Settlement Amount" means Three Hundred Fifty Seven Thousand Seven Hundred and Fifty Dollars ($357,750) allocated from the Gross Settlement Amount to resolve claims for civil penalties under PAGA.

hh.    "Participating Plaintiffs" means all individuals who filed a consent to join form in the Action pursuant to 29 U.S.C. § 216(b) that was not withdrawn by the date the Agreement is executed by all parties, whose claims have not been compelled to arbitration in the Action, whose employment with Defendant began before January 1, 2021, and who did not timely submit a Notice of Denial by the Notice Deadline.  Members of the PAGA Group may not opt out of the PAGA component of the Settlement.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

ii.    "Parties" means the parties to this Agreement: Named Plaintiff and Defendant.

jj.    "Plaintiffs' Counsel" means Nichols Kaster LLP, Rosen Marsili Rapp LLP, and Head Law Firm, LLC, as counsel for Plaintiff and the Participating Plaintiffs.

kk.    "Preliminary Approval" or "Preliminary Approval Order" means the Court order granting preliminary approval of the Settlement Agreement.

ll.    "Qualified Settlement Fund" means a qualified settlement fund under Section 468B of the Internal Revenue Code established by the Settlement Administrator for the purpose of administering this Settlement.

mm.    "Releasees" or "Released Parties" means Defendant and its present and former parent companies, subsidiaries, affiliates, divisions, and joint ventures, and all of their past and present shareholders, officers, directors, employees, agents, servants, owners, members, investors, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, registered representatives, attorneys, insurers, partners, profit sharing, savings, health and other employee benefit plans of any nature, the successors of such plans and those plans' respective trustees, administrators, agents, employees, attorneys, fiduciaries, and other persons acting on their behalf, and each of them, and the predecessors and successors, assigns and legal representatives of all such entities and individuals.

nn.    "Released Claims" means release of Releasees from all claims, rights, demands, liabilities, and causes of action that were pled in the Action against Defendant by the Operative Complaint, based on the identical factual predicate therein, through September 30, 2021, for time worked for Defendant as an Underwriter classified by Defendant as exempt from the overtime laws ("exempt"), including, without limitation, all claims for alleged violation of the Fair Labor Standards Act for failure to pay overtime compensation, and California law claims for failure to pay overtime compensation; failure to provide accurate itemized wage statements; failure to provide, authorize, and permit meal and rest periods and failure to pay meal and rest period premiums; failure to timely pay wages upon separation of employment; failure to reimburse necessary business expenses under California Labor Code section 2802; and unfair competition under California Business and Professions Code section 17200, et seq., together with claims for civil penalties under the California Private Attorneys General Act ("PAGA") to the extent asserted in the Action, and including all attorneys' fees and costs incurred by Plaintiffs' counsel in the Action; provided, however, that: (a) the release is limited to Participating

STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs; (b) for Participating Plaintiffs, the release covers FLSA overtime claims for time worked as an Underwriter classified by Defendant as exempt, plus California claims as pled for individuals who opted in and worked in California as an Underwriter classified by Defendant as exempt; (c) no Rule 23 class claims are released, and such putative class claims are expressly excluded from this settlement and shall be dismissed without prejudice; (d) this release does not apply to members of the PAGA Group who are not Participating Plaintiffs, and as to those individuals, this Settlement releases only the PAGA claims set forth in the separate PAGA Release of Claims provision and does not release any underlying non-PAGA claims; (e) no claims are released for any time period after September 30, 2021; and (f) the release of claims shall become effective only upon the Effective Date of the settlement.

oo.    "Released PAGA Claims" means the PAGA claims described below that shall be deemed released for the PAGA Group, to the fullest extent permitted by law, on behalf of the Named Plaintiff, the PAGA Group, the LWDA, and the State of California, against Defendant and the Releasees. Released PAGA Claims include only those claims for civil penalties under PAGA for the PAGA Group that were asserted against Defendant as set forth in the PAGA Notice submitted to the LWDA by the Named Plaintiff on September 23, 2020, during the PAGA Covered Period, arising out of time worked as an Underwriter classified as exempt. Such Released PAGA Claims include, as specified in the PAGA Notice, claims during the PAGA Covered Period against Defendant arising out of time worked as an Underwriter classified as exempt for civil penalties predicated on alleged violations of California Labor Code sections 201, 202, 203, 204, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1197.1, 1198, 2699(a), and 2802, and the applicable IWC Wage Order, based on allegations of failure to pay overtime wages, failure to provide compliant meal periods and rest periods and associated premium pay, failure to timely pay wages during employment, failure to timely pay final wages upon separation, failure to furnish accurate itemized wage statements, failure to maintain required payroll records, and failure to reimburse necessary business expenses.

pp.    "Settlement Administrator" means the third-party settlement administration firm jointly selected by the Parties and approved by the Court. The Parties currently intend to engage Rust Consulting as the Settlement Administrator. The Settling Parties represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

qq.   "Settlement Administration Costs" means the costs payable separately by Defendant and not from the Gross Settlement Amount to the Settlement Administrator for administering this Settlement, including, but not limited to, printing, distributing, and tracking documents for this Settlement; calculating estimated Individual Settlement Payments to Participating Plaintiffs and PAGA payments to members of the PAGA Group; tax reporting; distributing the Individual Settlement Payments, the LWDA Payment, PAGA payments to members of the PAGA Group, the Enhancement Payment, and Attorneys' Fees and Costs; and providing necessary reports, declarations, and other duties and responsibilities set forth herein to process this Settlement, and as requested by the Settling Parties. The Settlement Administration Costs are expected to be $15,000 or less and shall not exceed that amount.

rr.   "Settlement Notice" means the Court-approved notice of settlement to be sent by the Settlement Administrator to Opt-in Plaintiffs regarding the FLSA and PAGA settlement, substantially in the form attached hereto as **Exhibit C**.

## RECITALS

3.   On September 18, 2020, Plaintiff initiated this Action in the United States District Court for the Central District of California, Case No. 8:20-cv-01784. Named Plaintiff alleges that Defendant violated the Fair Labor Standards Act and the wage and hour laws of the State of California, with respect to Plaintiff and other employees in Covered Positions, by classifying and paying Underwriters as exempt from federal and California overtime laws resulting in (1) failing to pay overtime compensation in violation of the Fair Labor Standards Act; (2) failing to pay overtime compensation in violation of California law; (3) failing to provide itemized wage statements; (4) failing to authorize and permit meal and rest breaks and pay premium compensation for missed breaks; (5) failing to timely pay wages owed upon the termination of employment; and (6) violation of California business and Professions Code sections 17200, *et seq*.

4.   Plaintiff submitted a letter to the LWDA on September 23, 2020 regarding the allegations above and Plaintiff's intention to file a civil action under the Private Attorneys General Act, Cal. Labor Code §§ 2698, *et seq.* ("PAGA") unless the LWDA elected to investigate the allegations on its own.  The LWDA did not indicate an intention to investigate the allegations on its own within the applicable statutory time period.

5.      On July 8, 2021, following the expiration of the 65-day PAGA notice period, Plaintiff filed his First Amended Complaint, alleging causes of action arising under the PAGA.

6.      On August 3, 2021, pursuant to the Court's order granting the Parties' Joint Stipulation for Leave to File Second Amended Class and Collective Action Complaint, Plaintiff filed his Second Amended Class and Collective Action Complaint for Damages, Restitution, Penalties, and Injunctive Relief.

7.      The Second Amended Complaint ("Operative Complaint") asserted the following claims for the Covered Positions: (1) failure to pay overtime compensation in violation of the Fair Labor Standards Act; (2) failure to pay overtime compensation in violation of California law; (3) failure to provide accurate itemized wage statements; (4) failure to provide, authorize, and permit compliant meal and rest breaks and failure to pay premium compensation for noncompliant meal and rest periods; (5) failure to timely pay wages owed upon the termination of employment; (6) failure to reimburse necessary business expenses in violation of California Labor Code section 2802; (7) failure to pay civil penalties under the California Private Attorneys General Act, Labor Code section 2698, et seq.; and (8) violation of California Business and Professions Code sections 17200, et seq.

8.      On August 24, 2021, Defendant filed its Answer, denying each allegation in Plaintiff's Second Amended Complaint and asserting forty-two affirmative defenses.

9.      On October 24, 2022, the Court preliminarily certified the Action as a collective action with respect to Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) as follows: Defendant's current and former mortgage underwriters across the country who were paid a salary, i.e., classified as exempt, within four years and 71 days preceding the issuance of the Court's October 24, 2022 Order.

10.      The parties agree to waive appeals and to stipulate to final FLSA collective certification, if the Court so requires, for purposes of implementing this Settlement only; provided, however, that Named Plaintiff and Plaintiffs' Counsel reserve the right to appeal any denial or reduction in the amount of requested attorneys' fees and costs awarded by the Court.

11.      After attending three mediations with David A. Rotman, Esq., an independent and neutral mediator, and engaging in continued negotiating and conferring, the Parties agreed to resolve the claims asserted in the Action under certain settlement terms, which serves as the basis for this Agreement.

12.     Plaintiffs' Counsel has made an independent investigation of the facts and law relating to the allegations in the Action. In agreeing to this Settlement Agreement, Plaintiff has considered: (a) the facts developed leading up to and through the Parties' settlement negotiations and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendant; (c) the attendant risks of Defendant's potential inability to pay a judgment by the time trial and any appeals would conclude; and (d) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiff has concluded that the terms of this Settlement are fair, reasonable, and adequate, and that it is in the best interests of the Participating Plaintiffs to settle their claims against Defendant pursuant to the terms set forth herein.

13.     Defendant denies the allegations in the Action and denies any and all liability or wrongdoing, including any liability for the alleged violations. This Settlement Agreement shall not be construed as an admission by Defendant or any of the Releasees (as defined above) of any fault, liability, or wrongdoing, which Defendant expressly denies. Defendant contends, among other things, that it has attempted to comply in good faith at all times with the FLSA, California Labor Code, California Business and Professions Code, and that it paid all Participating Plaintiffs all wages owing to them. Defendant recognizes that the defense of the Action would be prolonged and expensive, requiring substantial amounts of time, energy, and resources devoted to the defense, especially if the findings are appealed. Instead of investing in continued litigation of the Action, Defendant prefers to focus on growth and profitability in the improving U.S. mortgage market.

14.     The Parties recognize that notice to the Opt-in Plaintiffs of the material terms of this Settlement is appropriate, and Court approval of this Settlement is required, to effectuate the Settlement, and that the Settlement will not become operative until the Court grants approval of it, the Settlement becomes Final and the Effective Date occurs.

15.     The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing final collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met. Should this Settlement not become Final, such stipulation to certification shall become null and void and shall have no bearing on, and shall not constitute an admission in connection with, the issue of whether or not collective and/or class certification would be appropriate in a non-settlement context. Defendant denies that collective action treatment is appropriate in the litigation context or for trial.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

16.    In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, it is hereby agreed, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that Named Plaintiff's and the Participating Plaintiffs' claims as described herein against Defendant shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Participating Plaintiffs' Released Claims shall be finally and fully compromised, settled and dismissed as to the Defendant and Releasees, in the manner and upon the terms and conditions set forth herein.

17.    The Parties agree to work together cooperatively to obtain expeditious preliminary and final approval of this Settlement.

## TERMS OF AGREEMENT

Named Plaintiff, on behalf of himself and the Participating Plaintiffs and as proxy or agent for the California Labor and Workforce Development Agency with respect to the PAGA claims, on the one hand, and Defendant, on the other hand, in consideration of the mutual covenants, promises, and undertakings set forth herein, agree, subject to the Court's approval, as follows:

18.    **Stipulation to FLSA Final Collective Certification for Settlement Purposes**. The Parties agree that, for settlement purposes only, if the Court so requires, they will request that the Court grant final certification of the FLSA collective action consistent with this Settlement Agreement, consisting solely of Participating Plaintiffs. The Parties agree that nothing in this Settlement Agreement, including the Parties' agreement regarding certification for settlement purposes, is in any way an admission that collective certification is proper and that evidence of this limited stipulation for settlement purposes only will not constitute such an admission in this or any other proceeding for any reason. If the Court does not approve the Settlement or it otherwise does not become effective, this stipulation to certification will be void and Defendant reserves the right to contest any issues relating to collective or class certification, liability, and damages, including its ability to move for decertification and assert any appeal rights it may have. The Parties further agree that this Settlement Agreement, and specifically the final FLSA collective action certification for purposes of settlement, is not a waiver of Defendant's claimed right to enforce class, collective, and representative action waivers in any other circumstance; except, however, as to Defendant's stipulated agreement in the Action filed in the Action [ECF 124], and communicated by Defendant's distribution of notice to Underwriters on January 4, 2023, that any Underwriter's 2022 severance agreement should not have included a release of overtime/wage and hour claims because they were potential class/collective members in the Action; that Defendant

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

will not enforce the release in any Underwriter's 2022 severance agreements as to their potential claims or participation in the Action; and that Defendant will not seek or request reimbursement of any severance payments made under those Severance Agreements (the "Severance Stipulation"), which stipulated agreement remains unaffected by this Settlement. This Settlement does not include certification of a Rule 23 class, and no Rule 23 class claims are released.  Plaintiff's Rule 23 class claims are expressly excluded from this Settlement and shall be dismissed without prejudice.

19. **Gross Settlement Amount**. Except for Defendant's Payroll Taxes and the Settlement Administration Costs, Defendant agrees to pay no more than the Gross Settlement Amount, as provided in this Settlement Agreement. The Gross Settlement Amount is Seven Million, One Hundred and Eighty-Five Thousand Dollars ($7,185,000), which is non-reversionary and inclusive of all Individual Settlement Payments, the LWDA Payment, PAGA payments to members of the PAGA Group, the Enhancement Payment, and Attorneys' Fees and Costs. Defendant shall separately pay Defendant's Payroll Taxes for the Individual Settlement Payments and the Settlement Administration Costs, which shall not be paid from the Gross Settlement Amount.

20. **Funding of the Settlement**. On the later date of (a) ten (10) business days after the Effective Date and (b) January 8, 2027, Defendant shall deposit the Gross Settlement Amount, minus the credited Four Hundred Eighty-Five Thousand Dollars ($485,000) already paid to 97 individuals, into the Qualified Settlement Fund established by the Settlement Administrator. Defendant shall make an additional deposit of the Defendant's Payroll Taxes into the Qualified Settlement Fund within ten (10) business days after the Settlement Administrator provides Defendant with the amount of the total employer tax contributions due, except that any deposits that would be due prior to January 8, 2027 shall be deemed timely if made on or before January 8, 2027. The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund.

21. **Attorneys' Fees and Costs**. Subject to Court approval, Plaintiffs' Counsel may apply for a Fee Award of up to Thirty Three percent (33%) of the Gross Settlement Amount, which shall compensate Plaintiffs' Counsel for attorney's fees for all work performed in the Action through the date of this Settlement Agreement, as well as all work remaining to be performed to effectuate this settlement, including documenting the Settlement, seeking Court approval, overseeing administration and implementation of the Settlement, and obtaining dismissal of the Action. Plaintiffs' Counsel may also apply for reimbursement of their litigation costs and expenses, subject to Court approval. There is no "clear sailing" agreement that Defendant may not oppose Plaintiffs' request for a Fee Award. The Settlement Administrator shall

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

pay the Court-approved Attorneys' Fees and Costs within fourteen (14) calendar days after Defendant deposits the Gross Settlement Amount into the Qualified Settlement Fund, or as soon thereafter as reasonably practicable. If the Court awards less than the amount requested, Plaintiffs' Counsel shall not have the right to terminate or revoke this Settlement Agreement, and the Settlement shall remain binding. Plaintiffs' Counsel shall retain the right to appeal any award of attorneys' fees and costs that is less than the amount requested, but in no event shall Defendant be required to pay more than the Gross Settlement Amount. Any amount not awarded as attorneys' fees or costs shall be redistributed to the Participating Plaintiffs on a pro rata basis and shall not revert to Defendant. The approved Fee Award and Attorneys' Fees and Costs, even if less than the amount requested, shall constitute full satisfaction of Defendant's obligations for any attorneys' fees or costs claimed by any person, attorney, or law firm on behalf of the Named Plaintiff or any Participating Plaintiff in connection with the Action. The Settlement Administrator shall issue an IRS Form 1099 to Plaintiffs' Counsel for all payments made to them, and Plaintiffs' Counsel shall be solely responsible for any taxes due on those payments.

22. **Enhancement Payment**. In recognition of Named Plaintiff's efforts in initiating and prosecuting the Action on behalf of Participating Plaintiffs, and in exchange for Named Plaintiff's General Release of Claims and Rights, Plaintiffs may apply for approval of the Enhancement Payment provided that such application or motion is consistent with this Settlement Agreement. There is no "clear sailing" agreement that Defendant may not oppose Plaintiffs' request for approval of the Enhancement Payment. The Enhancement Payment, if approved by the Court, will be paid from the Gross Settlement Amount within fourteen (14) calendar days after Defendant deposits the Gross Settlement Amount into the Qualified Settlement Fund, or as soon as reasonably practicable for the Settlement Administrator to do so. The Enhancement Payment will be characterized as a non-wage payment and reported on an IRS Form 1099. Named Plaintiff will be solely and legally responsible for any and all applicable taxes on the Enhancement Payment. If the Court approves a lesser Enhancement Payment, the difference shall be redistributed to the Participating Plaintiffs on a pro rata basis and shall not revert to Defendant. If no Enhancement Payment is awarded, then Named Plaintiff will not provide a General Release of Claims and Rights.

23. **Settlement Administration Costs**. Settlement Administration Costs shall be separately paid by Defendant and shall not be paid from the Gross Settlement Amount. The Settlement Administrator shall be paid for the reasonable costs of administering the Settlement and distributing payments under this Agreement, including, without limitation, printing, distributing, and tracking settlement documents; calculating estimated Individual Settlement Payments and PAGA

allocation payments; calculating Defendant's employer payroll tax amounts to be paid separately into the QSF; performing all required federal, state, and local tax reporting, including issuance of applicable IRS and California EDD forms; calculating and distributing the Net Settlement Amount, Individual Settlement Payments, the LWDA Payment, PAGA payments to members of the PAGA Group, the Enhancement Payment, and Attorneys' Fees and Costs; administering the Qualified Settlement Fund; and providing necessary reports and declarations. The Settlement Administration Costs are expected to be $15,000 or less and shall not exceed that amount. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize administration costs.

24. **Labor and Workforce Development Agency Payment**. Subject to Court approval, the Parties agree that Three Hundred Fifty Seven Thousand Seven Hundred and Fifty Dollars ($357,750) from the Gross Settlement Amount shall be designated in satisfaction of the PAGA claims for civil penalties asserted in the Action on behalf of the Named Plaintiff and the PAGA Group. Pursuant to PAGA, Seventy-Five Percent (75%), or Two Hundred Sixty Eight Thousand Three Hundred and Twelve Dollars and Fifty Cents ($268,312.50), of the PAGA Settlement Amount shall be paid to the Labor and Workforce Development Agency ("LWDA"), and Twenty-Five Percent (25%), or Eighty Nine Thousand Four Hundred and Thirty Seven Dollars and Fifty Cents ($89,437.50), shall be included in the PAGA Settlement Amount and distributed to members of the PAGA Group on a pro rata basis as set forth in Paragraph 26(b) below. The payment to the LWDA shall be made within fourteen (14) calendar days after Defendant deposits the Gross Settlement Amount into the Qualified Settlement Fund, or as soon thereafter as reasonably practicable. In connection with seeking approval of the Settlement, Plaintiffs' Counsel shall timely notify the LWDA of the Settlement and shall provide a copy of this Settlement Agreement to the LWDA in accordance with PAGA. If the LWDA objects to the amount allocated to PAGA and the Court sustains the objection, or if the Court denies approval of the Settlement based on the sufficiency of the PAGA allocation, the Parties shall meet and confer in good faith regarding a revised allocation. In no event, however, shall any such revision increase the Gross Settlement Amount.

25. **Net Settlement Amount**. The Net Settlement Amount will be used to satisfy Individual Settlement Payments to Participating Plaintiffs in accordance with the terms of this Settlement. The portion of the PAGA Settlement Amount allocated to members of the PAGA Group shall be distributed in accordance with Paragraph 26(b). No portion of the PAGA Settlement Amount or Net Settlement Amount will revert to or be retained by Defendant.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE SETTLEMENT AGREEMENT AND RELEASE**

26.  **Individual Settlement Payment Calculations**. The Net Settlement Amount shall be allocated to Participating Plaintiffs, and the portion of the PAGA Settlement Amount payable to aggrieved employees shall be allocated to members of the PAGA Group, on the following basis:

a. **Participating Plaintiffs**. Participating Plaintiffs shall receive Individual Settlement Payments from the Net Settlement Fund on a pro rata basis as follows:

i. Each Participating Plaintiff shall be assigned settlement shares based on their Work Weeks in a Covered Position during the applicable Covered Periods. Each Non-California Opt-In Plaintiff shall receive one (1) settlement share for each FLSA Work Week worked in a Covered Position in any state in the United States, excluding California, during the FLSA Covered Period. Each California Opt-In Plaintiff shall receive three (3) settlement shares for each California Work Week worked in a Covered Position in California during the California Covered Period, reflecting the additional California-specific claims and remedies being released.

ii. The total number of settlement shares for all Participating Plaintiffs shall be aggregated, and the amount available for distribution to Participating Plaintiffs shall be divided by that total to determine a per-share value. Each Participating Plaintiff's Individual Settlement Payment shall then be calculated by multiplying the per-share value by the total number of settlement shares assigned to that Participating Plaintiff.

iii. The Parties shall identify those Participating Plaintiffs who received Release Agreement payments in 2020 ("Release Recipients"). The Individual Settlement Payment for each Release Recipient shall then be reduced by the $5,000 Release Agreement payment received.

iv. Notwithstanding the foregoing, no Participating Plaintiff's Individual Settlement Payment amount shall be less than $1,000.

b. **Members of the PAGA Group**. Members of the PAGA Group shall receive a pro rata portion of the twenty-five percent (25%) share of

the PAGA Settlement Amount allocated to aggrieved employees, based on the number of pay periods they worked for Defendant in a Covered Position in California during the PAGA Covered Period. Such payments shall be treated as non-wage penalties and reported on an applicable IRS Form 1099, if required by law and not otherwise below tax reporting minimums as determined by the Settlement Administrator, and shall not be subject to FICA or FUTA withholding taxes. Members of the PAGA Group may not opt out of such payments.

27.     **Administration Process**. After reviewing and considering competitive bids from three settlement administrators, the Parties shall jointly select a proposed Settlement Administrator, subject to Court approval. The Parties shall jointly manage the Settlement Administrator's work. The Parties agree to cooperate in the administration of the Settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in administering the Settlement to the extent practicable. The Parties further agree that communications to and from the Settlement Administrator shall include both Plaintiffs' Counsel and Defendant's Counsel, except (i) Defendant's tax rate and related tax information shall not be distributed to Plaintiff's Counsel, (ii) the Participating Plaintiffs' and PAGA Group Members' Social Security numbers which shall be redacted as appropriate, and (iii) any communication received from an Opt-In Plaintiff that the Settlement Administrator determines reasonably appears to seek legal advice, requests an explanation of the legal rights being released or waived under this Settlement Agreement, or otherwise reflects a potentially privileged communication with Plaintiffs' Counsel shall be forwarded by the Settlement Administrator solely to Plaintiffs' Counsel and shall not be shared with Defendant's Counsel; provided, however, that all other communications, including factual and administrative inquiries such as disputes concerning work week calculations, address updates or payment information, shall be shared with both Plaintiffs' Counsel and Defendant's Counsel.

28.     **Delivery of Participating Plaintiff and PAGA Group Member Data**. Within thirty (30) days after the Court's Preliminary Approval Order, the Parties shall provide the Settlement Administrator with an excel spreadsheet containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, and Social Security numbers (redacted for Plaintiff's copy as set forth above), of each Opt-In Plaintiff. The Parties shall work in good faith to calculate the total number of applicable California Work Weeks and FLSA Work Weeks that each Opt-In Plaintiff worked in a Covered Position during the applicable Covered Periods, and the number of applicable PAGA pay periods for the PAGA Group and

submit such work week and pay period data to the Settlement Administrator within thirty (30) days after the Court's Preliminary Approval Order. To the extent necessary to calculate and distribute the PAGA allocation, Defendant shall also provide the Settlement Administrator with the data necessary to identify members of the PAGA Group and determine their qualifying pay periods during the PAGA Covered Period. Plaintiff's Counsel will update the contact information provided by Defendant from their records. The Settlement Administrator shall use the information provided by the Parties solely for purposes of administering the Settlement.

29. **Notice by First-Class U.S. Mail**. Within twenty (20) days after receiving the updated contact information from the Parties, the Settlement Administrator shall send the Court-approved Settlement Notice to each Opt-in Plaintiff by First-Class U.S. Mail, using the most recent known mailing address, and by email if an email address is available. Before mailing the Settlement Notice, the Settlement Administrator shall use reasonable efforts to update addresses through the National Change of Address database and other public or proprietary sources. The Settlement Administrator shall maintain a website that makes the Settlement Agreement, the Settlement Notice, and other relevant settlement documents available to Opt-in Plaintiffs. The Settlement Administrator shall also establish a toll-free telephone number and an email address for communications regarding the Settlement. The Settlement Administrator shall notify Plaintiffs' Counsel and Defendant's Counsel when the Settlement Notice has been mailed. After Final Approval, the Settlement Administrator will mail, by First-Class U.S. Mail, the PAGA Payment Enclosure Letter and PAGA payments to the LWDA and the PAGA Group. The Settlement Administrator shall discontinue the website and toll-free telephone number after the expiration of the 180-day check-cashing period for Individual Settlement Payment checks and PAGA payment checks.

30. **Confirmation of Contact Information**. Any Settlement Notice or PAGA Payment Enclosure Letter returned to the Settlement Administrator with a forwarding address shall be re-mailed within three (3) business days following receipt of the returned mail. If any Settlement Notice or PAGA Payment Enclosure Letter is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts to determine the correct address using a skip-trace or other search and shall promptly resend the Settlement Notice or PAGA Payment Enclosure Letter to any newly found address. Unless the Settlement Administrator receives a Settlement Notice returned from the United States Postal Service or via email notification as non-deliverable, the Settlement Notice shall be deemed mailed and received by the Participating Plaintiff to whom it was sent five (5) business days after mailing. In no circumstance shall any re-mailing extend the Notice Deadline.

STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE

31.     **Notice of Settlement**. After Preliminary Approval, all Opt-in Plaintiffs shall be mailed a Settlement Notice, and, after Final Approval, all members of the PAGA Group who are not Participating Plaintiffs shall be mailed a PAGA Payment Enclosure Letter. The Settlement Notice shall provide: (a) information regarding the nature of the Action; (b) a summary of the principal terms of the Settlement; (c) the definition of Participating Plaintiffs; (d) the estimated Individual Settlement Payments and the formula for calculating those payments; (e) the dates comprising the applicable Covered Periods; (f) instructions on how to timely submit a Notice of Denial to the Settlement Administrator by the Notice Deadline; (g) a statement that submitting a timely Notice of Denial will result in exclusion from the Settlement, except as to the PAGA settlement (if applicable); (h) instructions on how to dispute the Work Weeks information; (i) contact information for Plaintiffs' Counsel and the Settlement Administrator; and (j)  a description of the Released Claims. The Settlement Notice shall also be posted on the settlement website, the URL for which shall be included in the mailed and emailed notices.

32.     **Disputed Claims**. All disputes regarding Individual Settlement Payment calculations received or postmarked on or before the Notice Deadline shall be resolved before or in connection with the motion for Final Approval. To the extent any Opt-in Plaintiff disputes the number of Work Weeks shown in their Settlement Notice, that individual may submit to the Settlement Administrator evidence establishing the dates they contend they worked in a Covered Position for Defendant. Defendant's records shall be presumed correct unless the Participating Plaintiff proves otherwise with documentary evidence. The Settlement Administrator shall notify counsel for the Parties of any disputes received and provide the Parties' Counsel the communication and information received, unless such communication falls within the exception identified in section 27(iii). Each party shall then review its records and provide further information to the Settlement Administrator, as necessary. The Settlement Administrator shall evaluate the evidence submitted by the Opt-in Plaintiff and consult with Plaintiffs' Counsel and Defendant's Counsel. If the Parties are unable to resolve the dispute after meeting and conferring in good faith, the Settlement Administrator shall decide the dispute before Final Approval. The Settlement Administrator shall notify the disputing Participating Plaintiff of the decision.

33.     **Confidentiality and Publicity**. Prior to filing a Motion for Preliminary Approval, the Named Plaintiff and Plaintiffs' Counsel shall keep the fact, terms, and amount of the Settlement confidential and shall not disclose them to any person or entity except: (a) as necessary to communicate with Participating Plaintiffs regarding the Settlement; (b) as necessary to communicate with the Settlement Administrator, the LWDA, or the Court; (c) as necessary to prepare, file, and present the Motion for

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

Preliminary Approval and related papers; or (d) as otherwise required by law, court order, or ethical obligation to advise Plaintiffs' Counsel's clients. Prior to filing a Motion for Preliminary Approval, neither the Named Plaintiff nor Plaintiffs' Counsel shall publicize the Settlement or its terms through any press release, press conference, media contact, social media post, advertisement, solicitation, blog post, newsletter, or website posting. After the entry of the Preliminary Approval Order, the Parties shall not issue any press release, hold any press conference, or initiate contact with any member of the press or media to publicize the Settlement or its terms. If any Party or counsel is contacted by the press or media regarding the Settlement, the response shall be limited to stating that the case has been resolved. Nothing in this paragraph shall prevent Plaintiffs' Counsel from communicating with Participating Plaintiffs, members of the PAGA Group, the Settlement Administrator, the LWDA, their clients, or the Court as necessary to carry out the terms of the Settlement or fulfill their ethical or procedural obligations.

34.   **<u>Additional Mediation of Settlement Agreement If Required</u>**. In no event shall Notices of Denial terminate the settlement. The amount of settlement proceeds shall remain unchanged by timely filed Notices of Denial unless more than ten percent (10%) of potential Participating Plaintiffs timely submit a Notice of Denial in accordance with the terms for doing so, in which case the Parties must, after meeting and conferring in good faith, promptly mediate resolution with a mediator and take reasonable steps to effectuate final settlement for all non-excluding Participating Plaintiffs.

35.   **<u>Certification Reports</u>**. The Settlement Administrator will provide Counsel for the Parties a weekly report certifying the number of Opt-in Plaintiffs who have timely submitted a Notice of Denial, and, subject to the exception identified in section 27(iii), whether any Participating Plaintiff has submitted a challenge to any information contained in their Settlement Notice. The Settlement Administrator will also provide to counsel for both Parties any updated reports regarding the administration of the Settlement Agreement as needed or requested, consistent with the terms of this Agreement.

36.   **<u>Uncashed Settlement Checks</u>**. All Individual Settlement Payment checks shall remain valid and negotiable for one hundred eighty (180) days from the date of issuance, after which they shall be void. Beginning forty-five (45) days after check issuance, the Settlement Administrator shall advise the Parties of the number and total amount of uncashed checks. With ninety (90) days remaining in the check-cashing period, the Settlement Administrator shall send a reminder letter by U.S. mail and email, if available, to Participating Plaintiffs who have not yet cashed their checks. During the last sixty (60) days of the check-cashing period, the Settlement

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

Administrator shall make reasonable telephone outreach to Participating Plaintiffs who still have not cashed their checks. Any Participating Plaintiff who does not timely cash their Individual Settlement Payment check shall nevertheless remain bound by the Settlement and the Released Claims applicable to them. Upon expiration of the 180-day check-cashing period, any funds represented by uncashed Individual Settlement Payment checks shall be submitted by the Settlement Administrator to the applicable state unclaimed property fund/department.

37. **<u>Certification of Completion</u>**. Upon completion of administration of the Settlement, the Settlement Administrator will provide a written declaration under oath to certify such completion to the Court and counsel for all Parties.

38. **<u>Tax Treatment of Individual Settlement Payments</u>**. Fifty percent (50%) of each Individual Settlement Payment to Non-California Opt-In Plaintiffs and twenty-five percent (25%) of each Individual Settlement Payment to California Opt-In Plaintiffs shall be treated as wages subject to applicable withholding. The remaining portion of each Individual Settlement Payment shall be treated as non-wage liquidated damages, penalties and/or interest, shall be reported on an applicable IRS Form 1099, and shall not be subject to payroll tax withholding. The Settlement Administrator shall calculate Defendant's Payroll Taxes and provide Defendant with the total amount due within five (5) days after the final Individual Settlement Payment calculations are approved. Defendant shall deposit Defendant's Payroll Taxes into the Qualified Settlement Fund no later than the later of: (a) fifteen (15) days after the Settlement Administrator provides Defendant with the total amount due; or (b) January 8, 2027. The Settlement Administrator shall remit all required employee-side withholdings from the Qualified Settlement Fund to the appropriate governmental authorities. Defendant shall cooperate with the Settlement Administrator by providing such payroll and tax information as may be reasonably necessary to complete the required withholding and reporting for the wage and non-wage portions of the Individual Settlement Payments. The Settlement Administrator shall issue to the Named Plaintiff, Participating Plaintiffs, members of the PAGA Group, and Plaintiffs' Counsel respectively, all tax forms to the extent required by law, including Forms W-2 and 1099 subject to tax reporting minimums, as applicable.

39. **<u>Tax Liability</u>**. Defendant, Defendant's Counsel, Named Plaintiff, Plaintiffs' Counsel, and the Settlement Administrator make no representation as to the tax treatment or legal effect of the payments provided for in this Settlement Agreement, and the Named Plaintiff, Participating Plaintiffs, and members of the PAGA Group shall not be deemed to have relied on any statement, representation, or calculation made by any of them in that regard. The Named Plaintiff, Participating

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

Plaintiffs, and members of the PAGA Group shall be solely responsible for any taxes, interest, or penalties properly attributable to their tax obligation on their respective payments, except that Defendant shall remain solely responsible for Defendant's Payroll Taxes as provided in this Settlement Agreement.

40.    **No Prior Assignments**.    The Settling Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

41.    **Nullification**. In the event that: (a) the Court does not grant Final Approval of the Settlement as provided herein; or (b) the Settlement does not become Final for any other reason, then this Settlement Agreement and all of the terms and agreements contained herein, and any documents generated to bring it into effect, will be null and void, and the stipulation to collective certification shall likewise be void and of no further force and effect. Any amounts deposited into the Qualified Settlement Fund will be returned to Defendant, with the exception of the Settlement Administrator's costs incurred. Any order or judgment the Court enters in furtherance of this Settlement Agreement will likewise be treated as void from the beginning.

42.    **Preliminary Approval**. Named Plaintiff shall seek entry of a Preliminary Approval Order that: (a) certifies, for settlement purposes only, the FLSA collective action under 29 U.S.C. § 216(b), limited to Participating Plaintiffs; (b) approves the Parties' proposed notice plan; (c) preliminarily approves the Settlement Agreement; (d) approves the proposed Settlement Notice attached as **Exhibit C** and the proposed PAGA Payment Enclosure Letter attached as **Exhibit B**; and (e) appoints the Settlement Administrator; and (f) sets a date for the Final Approval Hearing. In connection with Preliminary Approval, Named Plaintiff shall submit this Settlement Agreement, which sets forth the terms of the Settlement, together with the proposed Settlement Notice and PAGA Payment Enclosure Letter. Plaintiffs' Counsel shall prepare the initial draft of the motion for preliminary approval of the Settlement. In accordance with California Labor Code section 2699, subdivision (l), Plaintiffs' Counsel shall provide a copy of this Settlement Agreement to the LWDA simultaneously with the filing of the motion for preliminary approval with the Court.

43.    **Final Approval.** Upon expiration of the Notice Deadline, Plaintiffs shall move for Final Approval of the Settlement Agreement, including final approval of the amounts properly payable for: (a) Individual Settlement Payments; (b) PAGA payments to members of the PAGA Group; (c) the LWDA Payment; (d) Attorneys' Fees and Costs; (e) the Enhancement Payment; and (f) Settlement Administration

Costs. Plaintiffs' Counsel shall be responsible for drafting all documents necessary to obtain Final Approval, and shall provide such documents to Defendant seven (7) days in advance of filing with the Court.  Plaintiffs' Counsel shall also be responsible for drafting the applications for Attorneys' Fees and Costs and the Enhancement Payment.

Final approval of the settlement of any claim by an Opt-In Plaintiff whose settlement would require bankruptcy court approval is also contingent on bankruptcy court approval, as to the individually allocated pro rata amount of such Opt-in Plaintiff's settlement amount and counsel's pro rata amount of fees and costs related thereto. Plaintiff's counsel will seek bankruptcy court approval of such individually allocated and Court-approved pro rata amounts. Any failure by the bankruptcy court to approve the pro rata allocation will have no effect on approval of the settlement. Instead, if the bankruptcy court does not approve the pro rata allocation that opt-in Plaintiff will be deemed to have excluded themselves from the settlement and there will be no release of claims for that Plaintiff.

44.   **Final Approval Order and Entry of Judgment**. Upon Final Approval of the Settlement, the Parties shall present to the Court a proposed Final Approval Order and Judgment. After entry of Judgment incorporating the settlement, the Court shall have continuing jurisdiction over the Action for purposes of: (1) enforcing this Agreement; (2) addressing settlement administration matters; and (3) addressing such post-Judgment matters as may be appropriate under Court rules and applicable law. Entry of Final Judgment shall operate to permanently bar and enjoin the Named Plaintiff and all Participating Plaintiffs from instituting, commencing, prosecuting, or pursuing, either directly or in any other capacity, any of the Released Claims.  The Final Approval Order and Judgment shall provide that the Named Plaintiff and each Participating Plaintiff are bound by this Agreement, including a covenant not to sue. Upon entry of Final Judgment, the Named Plaintiff and each Participating Plaintiff shall be deemed to have individually agreed to a covenant not to sue any of the Releasees, in any forum, by filing, initiating, maintaining, or affirmatively taking action to participate in any lawsuit, arbitration, administrative proceeding, or other action asserting or seeking relief on any of the Released Claims. This covenant not to sue shall constitute a complete defense to any Released Claims in an action brought in violation of the covenant not to sue in this Agreement, if such violation of the covenant not to sue is determined in that action or proceeding. In the event Defendant contends in any action or proceeding that Named Plaintiff or any Participating Plaintiff has instituted, commenced, maintained, or pursued any action asserting a Released Claim in breach of this covenant, the non-prevailing party shall be liable to the other party for all reasonable attorneys' fees and costs incurred by such prevailing party in such action or proceeding, to the extent permitted by law. Nothing in this

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

Agreement or the Final Approval Order, however, limits any individual's ability to communicate with, cooperate with, or participate in an investigation or proceeding conducted by any federal, state, or local governmental agency or commission regarding matters unrelated to the Released Claims, or to provide documents or other information to any such agency or commission, without notice to Defendant, so long as such communication, cooperation, or participation does not seek relief on the Released Claims. No individual may recover duplicative relief for claims released under this Settlement Agreement.

45. **No Admission of Liability**. This Settlement Agreement and all related documents are entered into solely for purposes of compromising disputed claims and shall not be construed as an admission by Defendant or any of the Releasees of any fault, liability, wrongdoing, or damages whatsoever, all of which Defendant and the Releasees expressly deny. Defendant and the Releasees further deny all claims asserted in the Action, as well as any claims that could have been asserted on behalf of the Participating Plaintiffs based on the facts alleged in the Action. Except for purposes of seeking Court approval of, enforcing, construing, or implementing this Settlement Agreement, resolving an alleged breach of this Settlement Agreement, establishing that claims were settled and released, or addressing tax or other legal issues arising from payments under this Settlement Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding, conduct, report, or account relating to this Settlement Agreement, shall be construed as any admission by Defendant or the Releasees of any liability, fault, wrongdoing, omission, or damages. The Parties agree that this Settlement Agreement reflects a compromise of disputed claims, and that California Labor Code section 206.5 is therefore inapplicable to the California Opt-In Plaintiffs.

46. **Judgment and Continued Jurisdiction**. Upon entry of the Final Approval Order and Judgment, the Named Plaintiff's and Participating Plaintiffs' claims in the Action shall be dismissed with prejudice to the extent set forth in this Settlement Agreement, and Plaintiff's putative Rule 23 class claims filed in the Action, which are not released by this Settlement, shall be dismissed without prejudice. After entry of Judgment, the Court shall have continuing jurisdiction until all payments and obligations provided for in this Settlement Agreement have been fully completed, solely for purposes of addressing: (a) the interpretation and enforcement of the terms of this Settlement Agreement; (b) settlement administration matters; and (c) such post-Judgment matters as may be appropriate under court rules or as otherwise set forth in this Settlement Agreement.

47. **Stay on Appeal**. In the event of a timely appeal from the Final Approval Order and Judgment, other than an appeal limited solely to Attorneys' Fees and Costs

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE SETTLEMENT AGREEMENT AND RELEASE**

or the Enhancement Payment, the Final Approval Order and Judgment shall be stayed, and none of the Gross Settlement Amount shall be distributed to Participating Plaintiffs, members of the PAGA Group, the Named Plaintiff, or Plaintiffs' Counsel, and the actions required by this Settlement Agreement shall not take place, until all appeal rights have been exhausted or the appeal is otherwise finally resolved. If Plaintiffs' Counsel appeals from an order reducing or denying requested Attorneys' Fees and Costs, the Settlement Administrator shall hold the disputed portion of the requested Attorneys' Fees and Costs in the Qualified Settlement Fund pending final resolution of that appeal but shall distribute the remainder of the Gross Settlement Amount in accordance with this Settlement Agreement. If the reduction of Attorneys' Fees and Costs is upheld on appeal, any portion of the requested Attorneys' Fees and Costs that remains unapproved shall be distributed to Participating Plaintiffs on a pro rata basis. Plaintiffs' Counsel shall bear responsibility for any increased settlement administration costs resulting solely from an appeal of Attorneys' Fees and Costs as described in this paragraph.

48.     **Release by Named Plaintiff and Participating Plaintiffs**. Upon the Effective Date, the Named Plaintiff's General Release of Claims and Rights shall take effect, and the Participating Plaintiffs shall release and forever discharge the Releasees from the Released Claims. To the extent that any member of the PAGA Group is not a Participating Plaintiff, that person shall release only the Released PAGA Claims and shall not release any individual or non-PAGA claims.

49.     **Release by PAGA Members, LWDA and State of California**. Upon the Effective Date, the Released PAGA Claims shall take effect, and the PAGA Members, the LWDA, and the State of California, to the fullest extent permitted by law, shall be deemed to have released and forever discharged the Releasees from the Released PAGA Claims.

50.     **Exhibits Incorporated by Reference**. The terms of this Settlement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. Any Exhibits to this Settlement are an integral part of the Settlement.

51.     **Entire Agreement**. This Settlement Agreement and any attached Exhibits constitute the entirety of the Settling Parties' settlement terms. No other prior or contemporaneous written or oral agreements may be deemed binding on the Settling Parties. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees, except for costs and attorney's fees allowed by fee-shifting statute(s) for collection or enforcement upon Defendant's default on obligations under this Agreement.

STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE

52.    **Amendment or Modification**. This Settlement Agreement may be amended or modified only by a written instrument signed by and between all Settling Parties or their respective successors-in-interest.

53.    **Authorization to Enter into Settlement Agreement**. Counsel for all Settling Parties represent and warrant that they are expressly authorized to negotiate this Settlement Agreement and to take all actions required or permitted to effectuate its terms.

54.    **Use of Best Efforts**. The Settling Parties and their counsel agree to cooperate and use their best efforts to implement all terms and conditions of this Settlement.

55.    **Binding on Successors and Assigns**. This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Settling Parties.

56.    **Governing Law**. All substantive terms of this Settlement Agreement shall be governed by and interpreted under the Fair Labor Standards Act and California law as applicable. Procedural matters shall be governed by applicable federal law and rules.

57.    **Execution and Counterparts**. The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them, including DocuSign or other electronic signature or scanned copies of the signature page, will be deemed to be one and the same instrument.

58.    **Acknowledgment that the Settlement Is Fair and Reasonable**. The Settling Parties believe this Settlement is fair, adequate, and reasonable, and was reached after extensive arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, risks, and costs of continued litigation.

59.    **Compliance with Protective Order and Non-Disclosure of Defendant's Mediation-Provided Information.** The terms of the Stipulated Protective Order [ECF 63] in the Action shall survive dismissal as to any Protected Material that maintained its designation as Protected Material upon entry of the Final Approval Order and Judgment. Named Plaintiff and Plaintiffs' Counsel further agree to keep confidential all data and documents produced by Defendant in connection with the mediations and/or settlement of this matter. Unless otherwise ordered by the Court or permitted in writing by Defendant, Named Plaintiff agrees not to disclose such mediation-related information or documents, and Plaintiffs' Counsel agrees not

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

to disclose such information or documents under any circumstances not required to fulfill or comply with an attorney's ethical obligation, except upon advance notice to Defendant if Plaintiffs' Counsel is threatened with or named in a lawsuit alleging malpractice and/or if their malpractice carrier requests access to the file, in which case any disclosure shall be solely for purposes of defending against such allegations or litigation. Notwithstanding the foregoing, Plaintiffs' Counsel may use information received regarding the collective or representative groups in support of motions for approval of the Settlement or as otherwise necessary to effectuate or enforce the Settlement. Plaintiffs' Counsel may also use any information the Court requests in connection with its evaluation of the Settlement.

60.    **Full Payment of Attorneys' Fees and Costs**. Named Plaintiff and Plaintiffs' Counsel understand and agree that any attorneys' fees and cost payments made under this Settlement shall constitute the full, final, and complete payment of all attorneys' fees and costs related to the Action, including all attorneys' fees and costs arising from or relating to the representation of Named Plaintiff, the Participating Plaintiffs, and any PAGA Group members, in the Action, and any other attorneys' fees and costs associated with the investigation, discovery, prosecution, and/or appeal of the claims released under this Settlement Agreement. Named Plaintiff and Plaintiffs' Counsel release any claim they may have against Defendant or the Releasees for attorneys' fees or costs arising from or relating to the representation of Named Plaintiff, the Participating Plaintiffs, the LWDA, the State of California, and any PAGA Members, or otherwise arising from the investigation, discovery, prosecution, and/or appeal of the claims released by this Settlement Agreement and the Action, through the Effective Date. Defendant's sole obligations to Plaintiffs' Counsel and the Settlement Administrator are set forth in this Settlement Agreement. Plaintiffs' Counsel shall not seek to recover any attorneys' fees or costs in excess of the amounts provided for in this Settlement incurred in the Action.

61.    **Invalidity of Any Provision**. Before declaring any provision of this Settlement Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement Agreement valid and enforceable.

62.    **Waiver of Certain Appeals**. The Settling Parties agree to waive any rights to appeal the Court's approval of this Settlement; provided, however, that Named Plaintiff or Plaintiffs' Counsel may appeal any reduction in the Attorneys' Fees and Costs below the amount requested, consistent with the terms of this Settlement Agreement, and any such appeal shall not affect the Court's Final Approval of the Settlement. Notwithstanding the foregoing, either Party may appeal any court order that materially alters the terms of this Settlement Agreement.

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE**
**SETTLEMENT AGREEMENT AND RELEASE**

63. **Captions**. The captions and section numbers in this Settlement Agreement are inserted for the reader's convenience, and in no way define, limit, construe, or describe the scope or intent of the provisions of this Settlement Agreement.

64. **Waiver**. No waiver of any condition or covenant contained in this Settlement Agreement or failure to exercise a right or remedy by any of the Settling Parties will be considered to imply or constitute a further waiver by such party of the same or any other condition, covenant, right or remedy.

65. **Representation by Counsel**. The Settling Parties acknowledge that they have been represented by counsel throughout all negotiations preceding the execution of this Settlement Agreement, and that this Settlement Agreement has been executed with the consent and advice of such counsel and has been fully reviewed. Named Plaintiff and Plaintiffs' Counsel further warrant and represent that there are no liens on this Settlement Agreement or on any amounts to be paid to them under its terms.

66. **All Terms Subject to Final Court Approval.** All amounts and procedures described in this Settlement Agreement are subject to final approval by the Court.

67. **Computation of Time.** For purposes of this Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day. The term "days" shall mean calendar days unless otherwise noted.

68. **Interim Stay of Proceedings.** The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement. Further, without further order of the Court, the Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement.

69. **Cooperation and Execution of Necessary Documents.** The Settling Parties agree to cooperate in good faith and to execute all documents reasonably necessary to effectuate the terms of this Settlement Agreement.

70. **Binding Agreement.** The Settling Parties represent that they understand and have full authority to enter into this Settlement and intend that this Settlement Agreement shall be fully enforceable and binding on all Settling Parties. The Settling Parties further agree that this Settlement Agreement may be admitted and disclosed

in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that might otherwise apply under federal or state law.

71.    **No Signature Required by Participating Plaintiffs.** Only the Named Plaintiff will be required to execute this Settlement Agreement. The Settlement Notice will advise all potential Participating Plaintiffs of the binding nature of the release, and such shall have the same force and effect as if this Settlement Agreement were executed by each Participating Plaintiff.

72.    **Notice to Settling Parties**.    Whenever this Settlement Agreement requires or contemplates that one party, the Court, or the Settlement Administrator shall or may give notice to another, notice shall be provided by email, facsimile and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

If to Defendant, then to:

Marie Burke Kenny (Bar No. 183640)
marie.kenny@procopio.com
Virginia L. Miller (Bar No. 211124)
gina.miller@procopio.com
Karina J. Lo (Bar No. 322909)
karina.lo@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
200 Spectrum Center Drive, Suite 520
Irvine, California 92618
Telephone: (949) 247-7300
Facsimile: (619) 744-5436

Attorneys for Defendant
Better Mortgage Corporation

If to Plaintiffs, then to all of:

Matthew C. Helland (Bar No. 250451)
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, California 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

C. Andrew Head
ahead@headlawfirm.com
Bethany Hilbert
bhilbert@headlawfirm.com
HEAD LAW FIRM, LLC
4422 North Ravenswood Avenue
Chicago, Illinois 60640
Telephone: (404) 924-4151
Facsimile: (404) 796-7338

Attorneys for Named Plaintiff and the Participating Plaintiffs

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Settlement Agreement as follows:


**PLAINTIFF:**    _____    Date: _____, 2026
                  Lorenzo Dominguez


**DEFENDANT:**    _Paula Tuffin_____    Date: June 30, 2026
                  On behalf of Better Mortgage Corporation


**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

C. Andrew Head
ahead@headlawfirm.com
Bethany Hilbert
bhilbert@headlawfirm.com
HEAD LAW FIRM, LLC
4422 North Ravenswood Avenue
Chicago, Illinois 60640
Telephone: (404) 924-4151
Facsimile: (404) 796-7338

Attorneys for Named Plaintiff and the Participating Plaintiffs

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:**   _Lorenzo Dominguez_   Date:06/30___, 2026
Lorenzo Dominguez

**DEFENDANT:**   _____   Date:_____, 2026
On behalf of Better Mortgage Corporation

**STIPULATION OF FLSA COLLECTIVE AND PAGA REPRESENTATIVE
SETTLEMENT AGREEMENT AND RELEASE**

# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*Dominguez v. Better Mortgage Corp.*
*Case No. 8:20-cv-01784-MRA-KES*

## <u>NOTICE OF DENIAL OF SETTLEMENT</u>

***This form accompanies a Notice of Settlement that explains your rights, but the fact that we included this form does <u>not</u> mean Plaintiffs' Counsel encourages or recommends that you submit it. You should only complete this form if you DO NOT wish to receive your settlement payment for unpaid overtime-related statutory claims. If you complete this form and thereby decline the settlement, you will NOT receive any money for unpaid overtime-related statutory claims as part of the settlement, you will be dismissed from the Action, and you will retain your right to sue Better Mortgage Corporation for your individual claims that would have been released by the settlement except to the extent they have expired by the running of the applicable statute of limitations.***

"Covered Position" means positions worked by underwriters (specifically, Underwriter, Senior Underwriter, Underwriting Team Lead, and Underwriting Associate), that were classified and paid by Better as Salaried Exempt. This definition **includes** individuals who were on the original FLSA notice lists (produced by Defendant in 2022) or contend they worked in a Covered Position for Defendant. This definition **excludes** any time worked in a position above underwriting level (such as an Underwriting Manager) or other than Underwriter, or as an employee Defendant classified and/or paid as non-exempt.

If you have decided you want to decline your settlement payment, you would need to type or write "Yes" in each box in the right column below, then print your name and sign and date the form. You would then need to return this form by mail or email to the settlement Administrator, whose address is listed on the Notice of Settlement. The deadline to return the form is [INSERT DEADLINE]. Again, do not submit this form if you want to receive your settlement payment for unpaid overtime-related statutory claims.

Please note that even if you submit this form, if you worked in a Covered Position in California during the period from September 23, 2019 to September 30, 2021, you are automatically a member of the PAGA Group subject to a separate PAGA Fund payment exclusively for PAGA civil penalty claims, and you will remain bound by the release of those separate PAGA claims. You cannot exclude yourself from the separate PAGA portion of the Settlement, but if you decline your settlement payment by submitting this form, the PAGA Group release of PAGA civil penalty claims will not release your non-PAGA unpaid overtime-related statutory claims.

Insert Claimant ID

|  | Type or Write "Yes" if (and only if) you have chosen to decline the Settlement |
|---|---|
| I have read and reviewed the Notice of Settlement in this case. |  |
| I have decided I **do not** want to receive a settlement payment. |  |
| I understand that by declining participation in the settlement, my claim will be dismissed from this case. |  |
| I understand that because I am denying my settlement payment, if I desire to pursue my non-PAGA claims I would have to take my own legal action to preserve my non-PAGA claims not otherwise expired under the running statute of limitations by filing suit within 30 days of the Effective Date to preserve tolling secured by the action, after completing this form to decline my settlement. |  |
| I understand that even if I submit this Notice of Denial I remain bound by the separate PAGA release if I worked in California and I am a member of the PAGA Group. |  |

Dated: _____

_____
Printed Name

_____
Signature

2

# EXHIBIT B

*Dominguez v. Better Mortgage Corporation,* **No. 8:20-cv-01784-MRA-KES (C.D. Cal.)**

PAYMENT FROM PAGA SETTLEMENT

On (DATE), the U.S. District Court for the Central District of California (the "Court") approved the settlement in a lawsuit entitled *Dominguez v. Better Mortgage Corporation*, Case No. 8:20-cv-01784-MRA-KES (the "Action") filed by a former employee (the "Plaintiff") against Better Mortgage Corporation ("Better"). The Action included a claim for civil penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA") alleging that underwriters were misclassified as exempt and did not receive overtime pay as required by California law.  The PAGA claim was asserted on behalf of the State of California Labor and Workforce Development Agency ("LWDA").

You are receiving this PAGA Settlement payment because Better identified you as someone who worked as an "Underwriter" (specifically, Underwriter, Senior Underwriter, Underwriting Team Lead, or Underwriting Associate), between September 23, 2019 and September 30, 2021 (the "PAGA Covered Period"), and who was classified and paid by Better as an exempt salaried employee. The definition of "Underwriter" excludes any time worked in a position above underwriting level (such as an Underwriting Manager) or other than Underwriter, or as an employee Better classified and/or paid as non-exempt. The settlement in the Action allocates $357,750 to resolve the PAGA claims, of which $89,437.50 will be paid to the PAGA Group, and $268,312.50 will be paid to the LWDA, as required by PAGA.

To avoid the time, expense, and uncertainty of continued litigation, Plaintiff and Better (the "Parties") have agreed to a Settlement of the Action. Better denies the allegations in the Action and any liability or wrongdoing, and contends it has attempted to comply in good faith at all times with applicable wage and hour laws.  Rather than continue investing in prolonged litigation, Better prefers to focus on growth and profitability in the improving U.S. mortgage market.

The settlement of the PAGA claim only involves release of your potential PAGA claims (not any underlying unpaid overtime or other wage and hour claims, unless you received a Settlement Notice and were otherwise a Participating Plaintiff in the settlement of those other non-PAGA claims in the Action). That means this PAGA settlement payment results in a release of claims for civil penalties under PAGA that were asserted against Better as set forth in the PAGA Notice submitted to the LWDA by the Named Plaintiff on September 23, 2020 (available for your review by using the search function at https://cadir.my.salesforce-sites.com/PagaSearch).

Based on the pay periods you worked as an Underwriter in the covered PAGA period (i.e. September 23, 2019 and September 30, 2021), your individual portion of the PAGA settlement payment is [$XXXX].

**Your PAGA settlement check is valid for 180 calendar days from issuance. You must deposit, cash, or otherwise negotiate your check within 180 calendar days or it will be voided and funds will be remitted to the state unclaimed property fund/department.**

For more information, you may contact the attorneys representing the employees:

NICHOLS KASTER, LLP
Matthew Helland
235 Montgomery Street, Suite 810
San Francisco, CA 94104
forms@nka.com
Telephone: 877-448-0492
Fax: 415-277-7238

HEAD LAW FIRM, LLC
C. Andrew Head
ahead@headlawfirm.com
Bethany Hilbert
bhilbert@headlawfirm.com
4422 North Ravenswood Avenue
Chicago, Illinois 60640
Telephone: (404) 924-4151
Facsimile: (404) 796-7338

Or, you may contact the Settlement Administrator for questions not requiring legal advice, at: [Contact info]

# EXHIBIT C

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*Dominguez v. Better Mortgage Corp.*
*Case No. 8:20-cv-01784-MRA-KES*

## NOTICE OF COLLECTIVE ACTION AND PAGA SETTLEMENT

***Please read this Notice carefully. It informs you about your legal rights.***
***A court approved this notice. This is not an advertisement or solicitation.***

**To:**   All current and former employees of Better Mortgage Corp. who (i) worked as an underwriter, (ii) filed a consent form to join this case, (iii) were not compelled to arbitration, and (iv) whose employment with Better began before January 1, 2021.

## 1.  What Is This Notice And Why Did I Get It?

This Notice was sent to inform you that the United States District Court for the Central District of California has preliminarily approved the terms of a collective action and PAGA settlement in a lawsuit filed against Better Mortgage Corporation ("Better") by Lorenzo Dominguez.

This notice will (1) advise you of the Settlement that has been preliminarily approved by the court; (2) advise you of how your rights may be affected by this lawsuit; and (3) instruct you on the procedure for participating in or excluding yourself from the Settlement.

You are receiving this Notice because you filed a consent form to join this case, you were not compelled to arbitration, and your employment with Better began before January 1, 2021. This means ***you are eligible to participate in the settlement of this lawsuit and receive payment under the Settlement.***

## 2.  What Is The Lawsuit About?

Plaintiff Lorenzo Dominguez filed a lawsuit against Better Mortgage Corporation in the United States District Court for the Central District of California entitled *Dominguez v. Better Mortgage Corporation*, Case No. 8:20-cv-01784-MRA-KES (the "Action"). Plaintiff alleged that Better violated the Fair Labor Standards Act and the wage and hour laws of the State of California, with respect to Plaintiff and employees who worked as underwriters, by classifying and paying underwriters as exempt from federal and California overtime laws resulting in (1) failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"); (2) failure to pay overtime compensation in violation of California law; (3) failure to provide accurate itemized wage statements; (4) failure to provide, authorize, and permit compliant meal and rest breaks and failure to pay premium compensation for noncompliant meal and rest periods; (5) failure to timely pay wages owed upon the termination of employment; (6) failure to reimburse necessary business expenses in violation of California Labor Code section 2802; (7) failure to pay civil penalties under the California Private Attorneys General Act, Labor Code section 2698,

et seq.; and (8) violation of California Business and Professions Code sections 17200, et seq. Better denied all of Plaintiff's allegations and asserted forty-two affirmative defenses.

On October 24, 2022, the Court preliminarily certified the Action as a collective action with respect to Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b). Notice was issued to Defendant's current and former mortgage underwriters across the country who were paid a salary, i.e., classified as exempt, within four years and 71 days preceding the issuance of the Court's October 24, 2022 Order. Mortgage underwriters had the opportunity to file a consent form to join the action. Those who did are referred to as Opt-in Plaintiffs.

On January 20, 2026, the Court entered an order partially denying and partially granting Better's motion to compel certain Opt-in Plaintiffs to arbitrate their claims. The Court denied Better's motion as to Opt-in Plaintiffs who were employed by Better prior to January 2021, meaning that those Opt-in Plaintiffs were allowed to remain part of the collective action in Court ("Opt-in Plaintiffs"). The Court granted Better's motion as to the individuals who filed Consents to join the case but who started with Better in January 2021 or after, meaning those individuals could not remain part of the Collective Action and were required to continue their claims in arbitration, if at all.

To avoid the time, expense, and uncertainty of continued litigation, Plaintiff and Better (the "Parties") have agreed to a Settlement of the Action. Better denies the allegations in the Action and any liability or wrongdoing, and contends it has attempted to comply in good faith at all times with applicable wage and hour laws.  Rather than continue investing in prolonged litigation, Better prefers to focus on growth and profitability in the improving U.S. mortgage market.

Only those Opt-in Plaintiffs who were permitted to remain in the Court case are included in this settlement being offered. The Settlement will resolve Participating Plaintiffs' Released Claims (described in Section 9, below) for time periods prior to September 30, 2021, the date Better began paying the underwriter positions as eligible for overtime pay. A preliminary approval hearing was set for [DATE] in the United States District Court for the Central District of California. On [DATE], the Court preliminarily approved the collective action settlement reached by the Parties and directed that you and the other Opt-in Plaintiffs receive this Notice.

The Court will hold a Final Approval Hearing concerning the proposed Settlement on [date] at X:XX AM, in Courtroom 9B of the United States District Court for the Central District of California, the Hon. Monica Ramirez Almadani presiding, located at 411 West 4th Street, Santa Ana, California 92701.

## 3. Am I Included?

You are included in the settlement offered to you as an Opt-in Plaintiff because you:

(i) worked in a Covered Position during the Covered Period, (ii) filed a consent to join form pursuant to 29 U.S.C. § 216(b), (iii) were not compelled to arbitration, and (iv) your employment with Better began before January 1, 2021.

The "Covered Positions" mean the positions worked by underwriters (specifically, Underwriter, Senior Underwriter, Underwriting Team Lead, and Underwriting Associate), that were classified and paid by Better as Salaried Exempt. This definition **includes** individuals who were on the original FLSA notice lists (produced by Defendant in 2022) or contend they worked in a Covered Position for Defendant. This definition **excludes** any time worked in a position above underwriting level (such as an Underwriting Manager) or other than Underwriter, or as an employee Defendant classified and/or paid as non-exempt.

The "Covered Periods" are September 18, 2017 to September 30, 2021 if you worked outside of California and September 18, 2016 to September 30, 2021 if you worked in California.

## 4.  Who Is Included In The PAGA Group?

The PAGA Group includes all current and former employees of Defendant who worked in a Covered Position in California between September 23, 2019 and September 30, 2021. The PAGA Group includes both Opt-in Plaintiffs who meet the definition and individuals who are not Opt-in Plaintiffs who meet the definition. Members of the PAGA Group do not have the ability to exclude themselves from the PAGA Group.

## 5.  How Does This Settlement Work?

In this lawsuit, Plaintiff sued on behalf of other underwriters who worked for Better. The settlement of this lawsuit resolves the federal overtime claims that were pled in the Action, for time periods worked in Covered Positions classified by Better as exempt (i.e., paid as if ineligible for overtime pay under the law), for those who meet the definition of "Covered Positions" outlined in Section 3 above and who participate in the settlement. Additionally, the settlement resolves California overtime, wage statement, meal and rest period, final pay, expense reimbursement, penalty claims, and unfair competition claims that were pled in the Action, for those time periods worked as an underwriter and classified as exempt, for those who worked in California as an underwriter for Better, who meet the definition outlined in Section 3 above, and who participate in the settlement.

As outlined in Section 6 below, you are included in the settlement and will receive your settlement payment as long as you do not affirmatively exclude yourself. You may, however, exclude yourself from the settlement by submitting a Notice of Denial. If you do not submit a Notice of Denial, and the Court grants final approval to the settlement, you will be eligible to

receive the settlement amount noted in Section 7. The Opt-in Plaintiffs who meet the definition in Section 3 above and who do not submit a Notice of Denial are referred to in this Notice as Participating Plaintiffs, and they will receive their settlement payments.

The total Gross Settlement Amount is $7,185,000. Better will receive credit for $485,000 which was already paid to certain Opt-in Plaintiffs in 2020 for signing Release Agreements, leaving $6,700,000 for Better to now pay into the settlement. From this amount, Plaintiffs' Counsel is requesting up to $2,371,050 in attorneys' fees and up to $70,000 in litigation costs, subject to Court approval. Plaintiffs' Counsel also requests an Enhancement Payment of $12,500 for the Named Plaintiff who brought and maintained this case for five years, which is also subject to Court approval. Separate from this amount, Better will pay the Settlement Administrator $13,800 to administer the settlement and payment distribution. Better will also pay the employer's share of payroll related taxes on the wage portions of your settlement payment, separately and in addition to the total settlement amount.

The settlement allocates $357,750 for separate claims under California's Private Attorney General Act ("PAGA"), of which $89,437.50 will be paid to members of the PAGA Group (defined in section 4, above), and $268,312.50 will be paid to the California Labor and Workforce Development Agency ("LWDA").

If the Court approves the payments outlined above, $X,XXX,XXX.XX will remain for payments to Participating Plaintiffs (this amount includes the $485,000 credit for Better's previous payments). The funds will be allocated on a pro rata basis as follows:

i.   Each Participating Plaintiff shall be assigned settlement shares based on their Work Weeks in a Covered Position during the applicable Covered Periods. Each Non-California Opt-In Plaintiff shall receive one (1) settlement share for each FLSA Work Week worked in a Covered Position in any state in the United States, excluding California, during the FLSA Covered Period. Each California Opt-In Plaintiff shall receive three (3) settlement shares for each California Work Week worked in a Covered Position in California during the California Covered Period, reflecting the additional California-specific claims and remedies being released.

ii.  The total number of settlement shares for all Participating Plaintiffs shall be aggregated, and the amount available for distribution to Participating Plaintiffs shall be divided by that total to determine a per-share value. Each Participating Plaintiff's Individual Settlement Payment shall then be calculated by multiplying the per-share value by the total number of settlement shares assigned to that Participating Plaintiff.

iii. The Parties shall then identify those Participating Plaintiffs who received Release Agreement payments in 2020 ("Release Recipients"). The Individual Settlement Payment for each Release Recipient shall then be reduced by the $5,000 Release Agreement

payment that individual already received from Better in exchange for signing a release of the claims brought in this action.

iv. Notwithstanding the foregoing, no Participating Plaintiff's Individual Settlement Payment amount shall be less than $1,000.

Any Opt-in Plaintiff who affirmatively submits a Notice of Denial will thereby exclude themselves and will not receive any payment from the allocation above. They will also not be bound by the release of Released Claims under this Settlement, except any Plaintiff who worked in California will receive their pro rata share of the PAGA Payment (discussed in Section 7 below) and will be bound by the release with respect to only the PAGA claims, for which they do not have the right to exclude themselves.

The Court must review the terms of the Settlement and make a final determination as to whether it is fair, adequate and reasonable. A hearing will be held ("Final Approval Hearing"), at which time the Court will decide these issues. See Section 14 below for more information.

## 6. What Are My Options?

The purpose of this Notice is to inform you of the proposed Settlement and of your options. If you choose to participate in the settlement you do not need to take any action. If you wish to exclude yourself from the settlement by submitting a Notice of Denial, you must act by **[DATE 30 CALENDAR DAYS AFTER NOTICE IS MAILED]**.

**ACCEPT SETTLEMENT:** **If you do nothing in response to this notice, you will take part in the settlement and receive a settlement payment based on the formulas described above.** In exchange, you give up the right to bring your own lawsuit against Better for the Released Claims, which are defined in Section 9, below. To ensure you receive your settlement payment, all you need to do is keep the Settlement Administrator informed of your current mailing address. If the Court grants final approval of the settlement, the Settlement Administrator will mail your payment to the address on file. **You will then have 180 calendar days to cash or otherwise negotiate your check.**

**DECLINE SETTLEMENT:** If you decline the settlement by submitting a Notice of Denial by **[date 30 calendar days after notice mailing]**, and if the Court grants final approval of the Settlement, you will not receive any payment under the Settlement (except for your share of the Settlement attributable to the PAGA claim, if you are eligible) and you will be dismissed from this case, but you will retain any rights

you might have to bring your own lawsuit against Better for the non-PAGA Released Claims resolved through this Settlement; however, you will lose any tolling of the statute of limitations on your claims if they are not re-filed in a new, separate action within 30 days. You will be bound by the release with respect to the PAGA claims, if applicable, for which you do not have the right to exclude yourself.

## 7.  How Much Will My Individual Settlement Payment Be?

The formulas for calculating Individual Settlement Payments are described above.

**CALIFORNIA WORK WEEKS:** According to Better's records, you worked in a Covered Position for [#] work weeks between September 18, 2016 to September 30, 2021 in California. Based on the above criteria, your estimated total Individual Settlement Payment is $XXX. Please note that this is just an estimate, and your final Individual Settlement Payment may be somewhat different.

If the settlement is approved, even if you submit a valid and timely request for exclusion, you will also receive an individual share of the PAGA Civil Penalty Payment, estimated to be $XXX.

**NON-CALIFORNIA WORK WEEKS:** According to Better's records, you worked in a Covered Position for [#] work weeks between September 18, 2017 to September 30, 2021 in a state other than California. Based on the above criteria, your estimated total Individual Settlement Payment is $XXX. Please note that this is just an estimate, and your final Individual Settlement Payment may be somewhat different.

You are responsible for the taxes arising from your receipt of an Individual Settlement Payment or an individual share of the PAGA Civil Penalty Payment, other than the employer's share of payroll taxes on the wage portions of your Individual Settlement Payment. The Administrator will withhold and remit employee-owed payroll taxes on the wage payment portion of your Individual Settlement Amount and issue any required W-2 and 1099 tax forms to Participating Plaintiffs. No opinion regarding the taxation of this settlement is being given, or will be given, by Better, counsel for Better, any Released Party, or Plaintiff's Counsel. Participating Plaintiffs should consult their own tax advisors regarding the taxation of this settlement, including but not limited to any payments provided or tax reporting obligations.

If you believe that the number of work weeks credited to you, as stated above, is not correct, please see Section 8, below.

## 8.  What If I Believe My Work Weeks or Pay Periods Are Inaccurate?

If you believe your number of work weeks or pay periods is inaccurate, you may dispute it by emailing [settlement administrator email] by [date], and the Settlement Administrator shall consult with the Parties to determine whether an adjustment is warranted.

## 9.  How Does This Settlement Affect My Rights?

If you do not submit a Notice of Denial and the Settlement is approved by the Court, you will release the claims resolved by the Settlement. This means you will not be able to sue, continue to sue, or be part of any other lawsuit against the Releasees that involves the same legal claims as those resolved through this Settlement. Specifically, you will be giving up or "releasing" the "Released Claims" described below:

> All claims, rights, demands, liabilities, and causes of action that were pled in the Action against Defendant by the Operative Complaint, based on the identical factual predicate therein, through September 30, 2021, for time worked for Defendant as an Underwriter classified by Defendant as exempt from the overtime laws ("exempt"), including, without limitation, all claims for alleged violation of the Fair Labor Standards Act for failure to pay overtime compensation, and California law claims for failure to pay overtime compensation; failure to provide accurate itemized wage statements; failure to provide, authorize, and permit meal and rest periods and failure to pay meal and rest period premiums; failure to timely pay wages upon separation of employment; failure to reimburse necessary business expenses under California Labor Code section 2802; and unfair competition under California Business and Professions Code section 17200, et seq., together with claims for civil penalties under the California Private Attorneys General Act ("PAGA") to the extent asserted in the Action, and including all attorneys' fees and costs incurred by Plaintiffs' counsel in the Action; provided, however, that: (a) the release is limited to Participating Plaintiffs; (b) for Participating Plaintiffs, the release covers FLSA overtime claims for time worked as an Underwriter classified by Defendant as exempt, plus California claims as pled for individuals who opted in and worked in California as an Underwriter classified by Defendant as exempt; (c) no Rule 23 class claims are released, and such putative class claims are expressly excluded from this settlement and shall be dismissed without prejudice; (d)  this release does not apply to members of the PAGA Group who are not Participating Plaintiffs, and as to those individuals, this Settlement releases only the PAGA claims set forth in the separate PAGA Release of Claims provision and does not release any underlying non-PAGA claims; (e) no claims are released for any time period after September 30, 2021; and (f) the release of claims shall become effective only upon the Effective Date of the settlement.

The "Releasees," or entities and people against whom you are giving up claims, are described below:

Better Mortgage Corporation and its present and former parent companies, subsidiaries, affiliates, divisions, and joint ventures, and all of their past and present shareholders, officers, directors, employees, agents, servants, owners, members, investors, executors, administrators, general partners, limited partners, real or alleged alter egos, predecessors, successors, transferees, assigns, registered representatives, attorneys, insurers, partners, profit sharing, savings, health and other employee benefit plans of any nature, the successors of such plans and those plans' respective trustees, administrators, agents, employees, attorneys, fiduciaries, and other persons acting on their behalf, and each of them, and the predecessors and successors, assigns and legal representatives of all such entities and individuals.

## 10. How Do I Exclude Myself From This Settlement?

If you want to decline your settlement, and thereby dismiss yourself from this settled case, you would have to exclude yourself by submitting a Notice of Denial. We have included a form Notice of Denial with this Notice, but the fact that we included it does **_not_** mean we are encouraging or recommending that you submit one. **You should only return this Notice of Denial form if you _do not want to participate_ in the settlement and _do not want_ to receive the settlement payment.** If you decide to exclude yourself, you would have to return the Notice of Denial by [30 calendar days after mailing].

If you send a Notice of Denial to the Settlement Administrator, then: (a) you will not be a Participating Plaintiff, and you will be dismissed from this case; (b) you will not receive an Individual Settlement Payment, and (c) if the Court approves the Settlement, the only payment you receive will be your individual share of the PAGA Civil Penalty Payment (if applicable). By excluding yourself from the Settlement, you will retain whatever rights or claims you may have against Better and Releasees (with the exception of the release as to Plaintiffs' PAGA claim, which shall remain binding), and you will be free to pursue them, at your own cost, if you choose to do so. However, if you do not re-file your claims within 30 days in a new, separate action, you would lose any tolling of the statute of limitations that Plaintiff's Counsel had secured for you in this case.

## 11. How Do I Make Sure I Receive My Individual Settlement Payment?

If the Settlement is approved and you have not returned a Notice of Denial, you will receive your Individual Settlement Payment via a check mailed to you at the address on file with the Settlement Administrator.

You may contact the Settlement Administrator via email [email address] or through the Settlement Administrator's website [website with link]. If emailing, be sure to provide the name of this case (*Dominguez v. Better Mortgage Corp.*, Case No. 8:20-cv-01784-MRA-KES), your full

name, and the specifics of your request. The Settlement Administrator will require additional information from you in order to verify your identity.

**Your settlement check will be valid for 180 calendar days from issuance. You must deposit, cash, or otherwise negotiate your check within 180 calendar days OR IT WILL BECOME VOID, YOU WILL REMAIN BOUND BY THE SETTLEMENT, AND YOUR PAYMENT WILL BE SUBMITTED TO THE APPLICABLE STATE GOVERNMENT UNCLAIMED PROPERTY FUND/DEPARTMENT.**

## 12.   Who Are The Attorneys Representing Me And The Other Opt-in Plaintiffs?

The lawyers for the Opt-in Plaintiffs who represent you in this action are:

NICHOLS KASTER, LLP
Matthew Helland
235 Montgomery Street, Suite 810
San Francisco, CA 94104
forms@nka.com
Telephone: 877-448-0492
Fax: 415-277-7238

HEAD LAW FIRM, LLC
C. Andrew Head
ahead@headlawfirm.com
Bethany Hilbert
bhilbert@headlawfirm.com
4422 North Ravenswood Avenue
Chicago, Illinois 60640
Telephone: (404) 924-4151
Facsimile: (404) 796-7338

## 13.   How Will Plaintiffs' Counsel Be Paid?

Plaintiffs' Counsel will be paid from the Gross Settlement Amount. Plaintiffs' Counsel will ask for up to 33% of the Gross Settlement Amount (or $2,371,050) as attorneys' fees and for reimbursement of actual litigation costs and expenses in the amount of up to $70,000. The actual amounts awarded shall be determined by the Court.

Plaintiffs' Counsel will also request that the Court approve an Enhancement Payment to Plaintiff Dominguez of up to Twelve Thousand Five Hundred Dollars ($12,500) to be paid from the Gross

Settlement Amount for his service on behalf of the Opt-in Plaintiffs. Plaintiffs' Counsel will petition the Court for an award of attorneys' fees by motion to be filed with the Court and will be available at the website listed in Section 15, below.

## 14.    Notice of hearing on Final Approval

You are hereby notified that a Final Approval Hearing will be held on [date] at [time], in Courtroom 9B of the United States District Court for the Central District of California, the Hon. Monica Ramirez Almadani presiding, located at 411 West 4th Street, Santa Ana, California 92701, to determine whether the proposed Settlement should be finally approved by the Court. The Court may change the date and time of the Final Approval Hearing without further notice. You are advised to check the settlement website or the Court's Public Access to Court Electronic Records (PACER) site to confirm that the date has not been changed.

If final approval is granted by the Court, the Court will enter judgment pursuant to the Settlement, and all Participating Plaintiffs will be deemed to have waived and released the Released Claims against the Releasees, as defined in Section 9, above.

## 15.    How Do I Get More Information?

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at [website], contact the Settlement Administrator, or access the Court docket in this case, for a fee, through the Court's PACER system at https://ecf.cacd.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Central District of California, 411 West 4th Street, Santa Ana, California 92701, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. Please confirm the Court is open before visiting.

If you have any additional questions about the Settlement, you may contact Plaintiffs' Attorneys, or you may contact the Settlement Administrator:

**[SETTLEMENT ADMINISTRATOR CONTACT INFORMATION]**

**PLEASE DO NOT TELEPHONE OR EMAIL THE COURT OR CLERK'S OFFICE FOR INFORMATION ABOUT THIS SETTLEMENT.**

10